## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| UNICORN GLOBAL, INC., HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., AND SHENZEN UNI-SUN ELECTRONIC CO., LTD., <br><br> *Plaintiffs*, <br><br> **v.** <br><br> GOLABS, INC., d/b/a GOTRAX, WALMART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC, <br><br> *Defendants*. | CIVIL ACTION NO. 3:19-CV-00754-N <br><br><br><br> JURY TRIAL DEMANDED |
| GOLABS, INC., d/b/a GOTRAX, WALMART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC, <br><br> *Counterclaimants*, <br><br> **v.** <br><br> UNICORN GLOBAL, INC., HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., AND SHENZEN UNI-SUN ELECTRONIC CO., LTD., <br><br> *Counterdefendants*. | |

## DEFENDANTS GOLABS'S AND WALMART'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendants and Counterclaimants Golabs, Inc., d/b/a Gotrax ("Golabs") and Walmart Inc., Wal-mart Stores Texas, LLC, and Wal-mart.com USA LLC (collectively "Walmart") hereby provide their Answer, Affirmative Defenses and Counterclaims to the First Amended First Amended Complaint of Plaintiffs and Counterdefendants Unicorn Global, Inc. ("Unicorn

Global"), Hangzhou Chic Intelligent Technology Co., Ltd. ("Hangzhou Chic"), and Shenzhen Uni-Sun Electronic Co., Ltd. ("Shenzhen Uni-Sun") as follows:

## INTRODUCTION

1.      Golabs and Walmart admit that the First Amended Complaint purports to state a claim for patent infringement and that 35 U.S.C. §101 et seq. relate to the patent laws of the United States. Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 1 of the First Amended Complaint.

2.      Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 2 of the First Amended Complaint, and on that basis deny the same.

3.      Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 3 of the First Amended Complaint, and on that basis deny the same.

4.      Denied.

## PARTIES

5.      Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 5 of the First Amended Complaint, and on that basis deny the same.

6.      Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 6 of the First Amended Complaint, and on that basis deny the same.

7.    Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 7 of the First Amended Complaint, and on that basis deny the same.

8.    Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 8 of the First Amended Complaint, and on that basis deny the same.

9.    Admitted.

10.    Paragraph 10 of the First Amended Complaint requires no response.

11.    Paragraph 11 of the First Amended Complaint requires no response.

12.    Paragraph 12 of the First Amended Complaint requires no response.

13.    Paragraph 13 of the First Amended Complaint requires no response.

14.    Admitted.

15.    Admitted.

16.    Admitted.

17.    Admitted.

## JURISDICTION AND VENUE

18.    Golabs and Walmart admit subject matter jurisdiction.

19.    Golabs admits that there is personal jurisdiction over Golabs in that its principal place of business is in this district.  Walmart is without knowledge or information sufficient to form a belief as to whether there is personal jurisdiction over Golabs.  Except as expressly admitted by Golabs, Golabs and Walmart deny each and every allegation contained in paragraph 19 of the First Amended Complaint.

20.    Paragraph 20 of the First Amended Complaint requires no response.

21.     Walmart admits that there is personal jurisdiction over Walmart, that Walmart has multiple stores in this District and in Texas, that Walmart has transacted business in this District involving the Hoverfly Eco,  Hoverfly Ion, SRX, SRX Pro, and Hoverfly XL products, that Walmart has employees in this District and that Walmart has offered products, including the Hoverfly Eco, Hoverfly Ion, SRX, SRX Pro, and Hoverfly XL products, for sale to customers and potential customers in this District and in Texas.  Except as expressly admitted by Walmart, Golabs and Walmart deny each and every allegation contained in paragraph 21 of the First Amended Complaint.

22.    Golabs, Walmart Inc. and Wal-mart Stores Texas, LLC admit venue is proper.  Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 22 of the First Amended Complaint.

## FACTUAL BACKGROUND AND PRODUCTS

23.    Golabs and Walmart admit that a patent that is issued by the United States Patent & Trademark Office is entitled to the presumption of validity under 35 U.S.C. §282.  Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 23 of the First Amended Complaint.

24.    Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 24 of the First Amended Complaint, and on that basis deny the same.

25.    Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 25 of the First Amended Complaint, and on that basis deny the same.

26.    Golabs and Walmart admit that the title of the asserted '155 and '802 patents is "Electric Balance Vehicle."   Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 26 of the First Amended Complaint.

27.    Denied.

28.    Denied.

29.    Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 29 of the First Amended Complaint, and on that basis deny the same.

30.    Denied.

31.    Golabs and Walmart admit that drawing Figures 1 through 8 in paragraph 31 appear to be the same Figures 1 through 8 disclosed in the asserted D'723 patent and that the Claim in the asserted D'723 patent recites "The ornamental design for a self-balancing vehicle, as shown and described."   Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 31 of the First Amended Complaint.

32.    Denied.

33.    Golabs admits that it sells and offers to sell the Hoverfly Eco,  Hoverfly Ion, SRX, SRX Pro, and Hoverfly XL products to customers through its website.  Walmart admits that it sells and offers to sell such products to customers and Golabs and Walmart admit that they sell and offer to sell such products  to customers in the United States, including Texas.   Except as expressly admitted by Golabs and/or Walmart, Golabs and Walmart deny each and every allegation contained in paragraph 33 of the First Amended Complaint.

34.    Golabs admits that it had knowledge of the asserted patents prior to the filing of the Original First Amended Complaint on March 26, 2019.  Walmart is without knowledge or information

sufficient to form a belief as to whether Golabs had knowledge of the asserted patents prior to the filing of the Original First Amended Complaint.  Except as expressly admitted by Golabs, Golabs and Walmart deny each and every allegation contained in paragraph 34 of the First Amended Complaint.

35.   Golabs and Walmart deny patent infringement. Walmart admits that it had knowledge of the asserted patents prior to the filing of the First Amended First Amended Complaint on May 9, 2019.  Golabs is without knowledge or information sufficient to form a belief as to whether Walmart had knowledge of the asserted patents prior to the filing of the First Amended Complaint. Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35 of the First Amended Complaint, and on that basis deny the same.

36.   Golabs and Walmart admit knowledge of the asserted patents from service of the Original First Amended Complaint on April 18, 2019.  Except as expressly admitted, Golabs and Walmart deny each and every allegation contained in paragraph 36 of the First Amended Complaint.

37.    Golabs and Walmart are without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 37 of the First Amended Complaint, and on that basis deny the same.

## COUNT ONE

### Alleged Infringement of the '155 Patent

38.   In response to paragraph 38 of the First Amended Complaint, Golabs and Walmart reallege and incorporate herein by reference all the allegations contained in paragraphs 1 to 37 of this Answer, inclusive, as though set forth herein in full.

39.   Denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Denied.

## COUNT TWO

### Alleged Infringement of the '802 Patent

45.    In response to paragraph 45 of the First Amended Complaint, Golabs and Walmart reallege and incorporate herein by reference all the allegations contained in paragraphs 1 to 44 of this Answer, inclusive, as though set forth herein in full.

46.    Denied.

47.    Denied.

48.    Denied.

49.    Denied.

50.    Denied.

51.    Denied.

## COUNT THREE

### Alleged Infringement of the D723 Patent

52.    In response to paragraph 52 of the First Amended Complaint, Golabs and Walmart reallege and incorporate herein by reference all the allegations contained in paragraphs 1 to 51 of this Answer, inclusive, as though set forth herein in full.

53.    Denied.

54.    Denied.

55.   Denied.

56.   Denied.

57.   Denied.

58.   Denied.

59.   Denied.

60.   Denied.

61.   Denied.

62.   Denied.

## JURY DEMAND

63.   Golabs and Walmart admit that Plaintiffs and Counterdefendants purport to have requested a jury trial of this action.

## PRAYER FOR RELIEF

64.   Golabs and Walmart deny any and all allegations contained in the remainder of the First Amended Complaint and deny that Plaintiffs and Counterdefendants are entitled to any of the relief requested in paragraphs (A) through (H) of the prayer for relief or to any other relief in any form whatsoever.

## AFFIRMATIVE DEFENSES

As separate affirmative defenses to the First Amended Complaint, Golabs and Walmart allege as follows:

## FIRST AFFIRMATIVE DEFENSE – NONINFRINGEMENT

65.   Golabs and Walmart do not make, use, sell, offer for sale, or import into the United States, and have not made, used, sold, offered for sale or imported into the United States any products that

infringe any valid and enforceable claim of the '155, '802 and D'723 patents, either willfully, directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise.

## SECOND AFFIRMATIVE DEFENSE – INVALIDITY

66.   The claims of the '155, '802 and D'723 patents are invalid for failure to comply with one or more of the requirements of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, 112 and 171.

## THIRD AFFIRMATIVE DEFENSE – INEQUITABLE CONDUCT

67.   The '155, '802 and D'723 patents are unenforceable under the doctrine of inequitable conduct because Hangzhou Chic's Chair and General Manager, Jiawei Ying, who is listed as a co-inventor on the '155, '802 and D'723 patents, committed fraud before the United States Patent and Trademark Office ("USPTO") during the prosecution of the '155, '802 and D'723 patents to obtain patent issuance.

68.   During prosecution of the '155, '802 and D'723 patents, Mr. Ying, as a listed inventor and representative of the applicant Hangzhou Chic, had a duty of candor and was obligated to disclose material information to the Patent Examiner.  Mr. Ying was fully aware of this duty of candor.  In an interview published on March 18, 2016 on a Chinese website, available at http://www.aiweibang.com/yuedu/98972239.html, Mr. Ying acknowledged this duty:   "As required by U.S. law, if you want to apply for a patent in the U.S. Patent Office, you need to tell the U.S. Patent Office whether there were similar patented technologies in other countries prior to your invention.  A patent must have characteristics not present in similar patented technologies; or else the patent may be invalidated."

69.    Yet, Mr. Ying failed to disclose material information, as further elaborated below, to the USPTO with the intent to deceive.  But for Mr. Ying's nondisclosure of material information, the USPTO would not have issued the '155, '802 and D'723 patents.

## The '155 and '802 Patents

70.    The application that issued as the '155 patent ("the '155 application") was filed in the United States on December 9, 2015 in a national stage of a PCT application filed on December 2, 2014.  The application that issued as the '802 patent ("the '802 application") is a continuation of the '155 application, and therefore the '802 patent includes the same patent disclosure as the '155 patent and the prosecution history of the '802 patent includes the prosecution history of the '155 patent.  Both the '155 application and the '802 application claim priority to a Chinese patent application 201410262353 ("the CN '353 application") filed on June 13, 2014.  In other words, the CN '353 application describes  the same alleged invention as the '155 application and the '802 application.

71.    During prosecution of the '155 and '802 patents, despite being fully aware of his duty of candor, Mr. Ying breached his duty of candor to the USPTO in at least **three** separate instances by misrepresenting the prior art and intentionally withholding material information in at least two separate instances with the intent to deceive the USPTO.  The Patent Examiner would not have allowed the '155 and '802 patents if he was not misled by Mr. Ying's material misrepresentation and was made aware of any of this material information.

72.    Mr. Ying failed to disclose to the USPTO, with the intent to deceive, that another individual, Shane Chen is the inventor of the hoverboard called "Hovertrax" manufactured by his company Inventist, Inc. in the United States more than one year before the effective filing date of the '155 and '802 patents.  Mr. Chen was issued the hoverboard patent – U.S. Patent No. 8,738,278

(the "'278 patent") – based on a provisional application that he filed on February 12, 2012. He displayed prototypes of his invention at a toy fair in New York in February 2012 and again in February 2013. He disclosed information about his invention in a Kickstarter fundraising campaign beginning in April 2013. Mr. Ying's '155 patent application was filed much later on June 13, 2014. Mr. Ying knew about Mr. Chen's invention and failed to accurately and fully disclose what he knew to the USPTO to mislead the USPTO into issuing the '155 patent.

73.   The '278 patent, among other things, claims a two-wheel, self-balancing vehicle with two foot placement sections that are "rotatably coupled." Although the '278 patent was disclosed as prior art during prosecution of the '155 and '802 patents, the Related Art Section of the '155 and '802 patent specification only mentions existing electric balancing vehicles operating via a manually controlled steering rod. Even though the '278 patent claims and discloses "rotatably coupled" foot placement sections, Mr. Ying in the '155 and '802 patent applications falsely stated that the foot platforms of existing prior art balance vehicles "is always kept in a horizontal state during use and cannot rotate relatively" and "[t]herefore, the user cannot control the balance vehicle merely through the feet." '155: Col. 1. lns.19-27; '802 Col. 1, lns. 30-33. However, Mr. Ying knew that statement was not true, since he knew about Mr. Chen's hoverboard which did exactly that - it allowed relative rotation of the foot platforms permitting user control of the balance vehicle "merely through the feet," consistent with the disclosure in the '278 patent.

74.   Mr. Ying's misrepresentation was material because the Examiner focused on the issue of the two platforms being "rotatable relative to each other" in the '155 patent and he would not have allowed the patent otherwise. Specifically, Kevin Hurley, Primary Examiner, Art Unit 3611, of the '155 patent application stated the following in the April 12, 2016 Examiner's Statement of Reasons for Allowance of the claims of the '115 patent application (emphasis added) (**Exhibit 1**):

> The reason for the allowance of claim 1 is that the prior art fails to disclose an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and **rotatable relative to each other**; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover, respectively.

But for Mr. Ying's misrepresentation, the '155 patent would not have issued.

75.    In addition to misrepresenting the prior art, during prosecution of the '155 and '802 applications, Mr. Ying also breached his duty of candor to the USPTO by intentionally withholding material information by at least (a) not disclosing the "Hovertrax" prototype and (b) not disclosing that the Chinese Patent Office rejected the CN '353 application claims.  The Patent Examiner would not have allowed the '155 application if he was aware of any of this material information.

76.    Hangchou Chic has also asserted the '155 patent against Razor USA LLC in the Central District of California, Civil Action No. C.D. California, Civil Action No. 2:16-cv-06359-RGK-AJW.  Razor asserted a similar affirmative defense and counterclaim of inequitable conduct in that case with respect to the '155 patent.  A copy of Razor's Amended Answer to First Amended Complaint and Counterclaims is attached as **Exhibit 2**.  In that case, Hangzhou Chic filed a Motion to Dismiss Razor's Inequitable Conduct Claim and Strike Razor's Inequitable Conduct Affirmative Defense and Razor filed an Opposition Memorandum.  The Honorable R. Gary Klausner, United States District Judge Central District of California, issued an Order denying Hangzhou Chic's motion to dismiss finding that Razor's "pleading is sufficient to support an inference of intent to deceive, as well as knowledge and materiality of the omitted information. The Answer's inequitable conduct claim is plausible."  A copy of Judge Klausner's Order is attached as **Exhibit 3**.  On information and belief, the case ultimately was dismissed based on settlement by the parties.

77.   Hangzhou Chic has also asserted the '155 and D'723 patents against Swagway, LLC ("Swagway") in the Northern District of California, Civil Action No. 3:16-cv-04804-HSG transferred to the Northern District of Indiana, Civil Action No 3:16-cv-00567-PPS-MGG. Swagway asserted a similar affirmative defense and counterclaims of inequitable conduct in that case with respect to the '155 and D'723 patents.  A copy of Swagway's Answer, Affirmative Defenses, and Counterclaims is attached as **Exhibit 4**.  In that case, Hangzhou Chic answered Swagway's counterclaims and did not move to dismiss or strike.  The case ultimately was dismissed based on settlement by the parties.

78.   Hangzhou Chic has also asserted the '155, '802 and D'723 patents against Hillo America, Inc. in the Central District of California, Civil Action No. 2:19-cv-03028-JAK (AFMx).  On May 20, 2019, Hillo asserted a similar affirmative defense and counterclaims of inequitable conduct in that case with respect to the '155, '802 and D'723 patents.  A copy of Defendant Hillo America, Inc.'s Answer is attached as **Exhibit 5**.  This case is pending and at the same stage as the instant case.

## **HOVERTRAX PROTOTYPE**

### **The Hovertrax Prototype Was Material To The Patentability Of The '155 Patent**

79.   As explained above, Mr. Ying knew the Chen invention claims "rotatably-coupled" foot placement sections but falsely claimed otherwise.  Compounding this misrepresentation was a failure to disclose information about the prototype hoverboards disclosed by Mr. Chen in 2012, 2013, and in connection with his Kickstarter campaign.

80.   Mr. Ying failed to disclose to the USPTO, with the intent to deceive, that Mr. Chen had publicly disclosed a prototype of a hoverboard called "Hovertrax" in the United States more than one year before the effective filing date of the '155 patent.

81.  Mr. Chen introduced the Hovertrax at the February 2012 Annual American International Toy Fair in New York City and again the following year at the February 2013 Annual American International Toy Fair.  After receiving interest in the Hovertrax, Mr. Chen launched a Kickstarter campaign in April 2013 to raise funding to further develop and to commercialize the Hovertrax.

82.  This timeline is supported by a video posted on YouTube on February 10, 2013, regarding the 2013 Toy Fair, at https://www.youtube.com/watch?v=w8rHKCjLAWI, and the timeline on Mr. Chen's Kickstarter webpage, at:

https://www.kickstarter.com/projects/687658339/hovertrax/updates.    Mr.  Chen's  Kickstarter webpage shows the prototype as follows:



83.  Mr. Chen's Kickstarter page also contains a 2013 video of the Hovertrax prototype in use, at https://www.kickstarter.com/projects/687658339/hovertrax/description.

84.  On May 27, 2014, the USPTO issued the '278 patent to Mr. Chen.  The '278 patent, issued two years before the '155 patent, contains similarities to the '155 patent.  For example, claim 1 of the '278 patent recites "A two-wheel, self-balancing vehicle device, comprising: a first foot placement section and a second foot placement section that are coupled to one another and are

independently movable with respect to one another."  Similarly, claim 1 of the '155 patent recites "An electric balance vehicle, comprising: . . . a first top cover and a second top cover disposed symmetrically and rotatable relative to one another." Claim 1 of both patents also recites parallel wheels on each side of the platforms, motors fixed to each wheel, sensors under each foot platform, and a control system that communicates between the sensors, motors, and wheels to make the device drive.  Claim 2 of the '278 patent is a dependent claim from Claim 1 and recites "wherein the first foot placement section and the second foot placement section are rotatably coupled to one another."

85.   The Hovertrax prototype embodies all of the elements claimed in the '278 patent and all of the elements claimed in the '155 patent.  Like the claims of the '278 and '155 patents, the Hovertrax is comprised of two independently movable foot platforms, wheels, motors, sensors, and a control system that allows for self-balancing.

86.   The Hovertrax Kickstarter webpage has prominently displayed photos, video, schematics, and a narrative description of the Hovertrax prototype, as seen at https://www.kickstarter.com/projects/687658339/hovertrax/description.  This webpage originated in and is accessible in the United States.  Thus, these photographs, videos, and schematics constitute a public display of the prototype in the United States.  Attached as **Exhibit 6** is a screenshot of the Hovertrax Kickstarter webpage as it appeared on May 4, 2013.

87.   Mr. Chen's Kickstarter page shows a computer aided design of the Hovertrax while in development as follows:



88.  The webpage also displays a 3D rendering of the Hovertrax as follows:



89.  These images, which have been available on the webpage since 2013, show that the

Hovertrax prototype contains an inner cover fixed between a top cover and a bottom cover, the

inner cover comprises a first inner cover and a second inner cover disposed symmetrically and

rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the

second inner cover; and two wheels rotatably fixed at two sides of the inner cover, respectively.

*See* Judge Klausner's Order (**Exhibit 3**) ("The image, understood in light of other images in the

Kickstarter campaign information or the '278 patent, reveals 'an inner cover fixed  between a top

cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover

disposed symmetrically.'")





90.   These features are material because the very basis for Examiner Hurley's determination that the '155 application was not obvious over prior art was the incorrect belief that prior art did not contain the "inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotable relative to each other." Had Mr. Ying disclosed the Hovertrax prototype or drawings or pictures of the prototype, the Examiner would have seen that a product publicly displayed more than a year prior to the '155 application contained an inner cover. As a result, the Examiner would have denied the '155 application as anticipated or obvious over the prior art. But for Mr. Ying's failure to disclose the Hovertrax product, the Examiner would not have issued the '155 patent. Judge Klausner's Order (**Exhibit 3**) (The Hovertrax "is but for material.")

91.   The Hovertrax prototype is not cumulative of the '278 patent because it provides additional detail. Even though the prototype practices the '278 patent, it also contains the inner cover features

described above which are not explicitly disclosed in the '278 patent.  This non-cumulative portion of the prototype is therefore material.  Judge Klausner's Order (**Exhibit 3**) (The Hovertrax "is not cumulative.")

92.   The Hovertrax prototype is also not cumulative of the '278 patent because it is not subject to any of the exceptions set forth in 35 U.S.C. § 102(b) that could theoretically remove the '278 patent as prior art.  The '155 patent claims an earliest effective priority date of June 13, 2014.  The public use or sale of the Hovertrax prototype at the New York toys fair in February 2012 and February 2013, and in the Hovertrax Kickstarter page in March 2013, are prior art to the '155 patent under 35 U.S.C. §102(a)(1).  Because all of those dates are more than a year before the earliest effective filing date claimed by the '155 patent, the Section 102(b)(1) exception for disclosures made less than a year before the effective filing date of a patent does not apply.  Nor do the exceptions of Section 102(b)(2), which apply only to patents cited as prior art.  Thus, Plaintiffs and Counterdefendants cannot remove the Hovertrax prototype as prior art.  In contrast, if the '278 patent (issued May 27, 2014) is cited as prior art under Section 102(a)(1), the less than one year exception of Section 102(b)(1) might apply if Plaintiffs and Counterdefendants could prove that Mr. Chen obtained the subject matter from Mr. Ying.  Similarly, if the '278 patent is cited as prior art under Section 102(a)(2), it could potentially be removed as a reference pursuant to Section 102(b)(2) if Plaintiffs and Counterdefendants could prove that Mr. Chen obtained the subject matter from Mr. Ying or that the '278 and '155 patent applications were commonly owned.  However, on information and belief, Mr. Chen did not obtain the subject matter from Mr. Ying; rather Mr. Ying obtained the subject matter from Mr. Chen and the patent applications are not commonly owned.

**Mr. Ying Knew Of The Hovertrax Prototype, Knew It Was Material, And Made A
Deliberate Decision To Withhold It From The USPTO**

93.   Mr. Ying knew of the Hovertrax prototype and the material information contained therein before the '155 patent issued.  Judge Klausner Order (**Exhibit 3**) ("it is plausible that Ying knew about the Kickstarter information"; "Ying plausibly had knowledge of the Hovertrax by the time he filed the CN application").   Mr. Chen (along with his licensee Razor) filed a First Amended Complaint against Hangzhou Chic and other respondents with the United States International Trade Commission ("ITC") in Inv. No. 337-TA-1000, *Certain Motorized Self-Balancing Vehicles* ("ITC 1000"), on March 21, 2016.  Paragraph 56 of the First Amended Complaint states:

> Mr. Chen introduced the Hovertrax at the February 2012 Annual American International Toy Fair in New York City and again the following year at the February 2013 Annual American International Toy Fair.  After receiving significant interest in the Hovertrax at the New York Toy Fair, Mr. Chen and Inventist launched a Kickstarter campaign in April 2013 to raise funding to support the further development and commercialization of the Hovertrax.

94.   Mr. Ying was aware of this allegation as demonstrated by the fact that he verified Hangzhou Chic's response to the ITC First Amended Complaint on June 15, 2016.

95.   Mr. Ying was aware of the Hovertrax Kickstarter page and the Hovertrax prototype.  The Kickstarter page clearly shows that the Hovertrax prototype contains features similar to those accused of infringement in this case, including what Hangzhou Chic has characterized as an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover.

96.   Mr. Ying was also familiar with Mr. Chen's Hovertrax product independently of the ITC First Amended Complaint.  In an interview published in a Chinese-language newspaper, Sino US Times, on January 26, 2016, available on Chic's website at http://www.chic-robot.com/index.php/news/info/54, Mr. Ying stated that he believed Mr. Chen copied Chic's design in 2013 (which was before Mr. Ying filed his own application and after Mr. Chen filed his application).  Specifically, Mr. Ying claimed, based on a translation, that Mr. Chen's product "was originated from us [Hangzhou Chic]."  Thus, Mr. Ying was familiar with Mr. Chen's Hovertrax and recognized that it contained the same features as in the '155 application.

97.   Mr. Ying had met Mr. Chen and discussed Mr. Chen's invention.  They were not strangers.

98.   In addition to knowing that the prototype contained an inner cover, Mr. Ying was aware that the Hovertrax prototype was first displayed in February 2012, and thus, cannot be removed as prior art, while the '278 patent can theoretically only be removed as prior art under the Section 102(b)(1) and 102(b)(2) exceptions, if Mr. Chen obtained the subject matter from Mr. Ying or the '155 and '278 patent applications were commonly owned, which, on information and belief is not the case in both instances.

99.   Even though Mr. Ying was aware of Mr. Chen's Hovertrax prototype and its public use in the United States, he failed to disclose it to the USPTO during the prosecution of the '155 patent.  Mr. Ying was aware, as of April 12, 2016, that the patentability of the '155 patent was reliant on the Examiner's conclusion that the prior art failed to disclose an inner cover and rotatable coupling.

100.  Once Mr. Ying became aware of the Hovertrax Kickstarter, he would have easily been able to recognize that disclosing the Hovertrax prototype would preclude Chic from securing the '155 patent.  As a result, Mr. Ying deliberately chose not to disclose the Hovertrax and allowed the

Examiner to base his determination on incomplete information. Mr. Ying's affirmative misrepresentation of the prior art further demonstrates Mr. Ying's intent to deceive the USPTO.

## REJECTION OF CN '353 APPLICATION CLAIMS

## Rejection Of CN '353 Application Claims Was Material To The Patentability Of The '155 and '802 Patents

101. Mr. Ying also failed to disclose to the USPTO, with the intent to deceive, that Mr. Ying and Hangzhou Chic had withdrawn and abandoned the CN '353 application on or before September 2, 2015, after the Chinese Patent Office rejected the claims of the CN '353 application as being obvious over prior art Chinese patent application nos. CN 203158157U and CN 203381739U around April 2015.

102. Although Mr. Ying disclosed CN 203158157U and CN 203381739U to the USPTO (without providing a translation of each reference), the rejection itself is also material because the CN '353 application is the priority application of the '155 and '802 patent applications and has the same disclosure, and thus is not cumulative to the prior art on which the rejection is made. *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 919 (Fed. Cir. 2007). The Examiner would not have allowed the '155 and '802 patents if he had known of the Chinese Patent Office's claim rejections and the reasons stated therein.

## Mr. Ying Knew Of The Rejection Of CN '353 Application Claims, Knew It Was Material, And Made A Deliberate Decision To Withhold It From The USPTO

103. Mr. Ying intentionally withheld the Chinese Patent Office's claim rejections with the intent to deceive the USPTO. Mr. Ying and Hanzhou Chic made references to the CN '353 App throughout the prosecution of the '155 and '802 applications. In fact, Mr. Ying relied on the CN '353 application priority date for the '155 and '802 patent applications and to seek participation in

the Patent Prosecution Highway for the '155 application. For these reasons, and because Mr. Ying was a named inventor on the CN '353 application, Mr. Ying knew about the Chinese Patent Office's claim rejections, knew it was material and made a deliberate decision to withhold the rejections from the USPTO .

### The D'723 Patent

104. The application that issued as the D'723 patent ("the D'723 application") was filed in the United States on December 15, 2014, claiming priority to a Chinese patent application 201430180556 ("the CN '556 application") filed on June 13, 2014. In other words, the CN '556 application discloses the same alleged invention as the D'723 application.

105. During prosecution of the D'723 patent, despite being fully aware of his duty of candor, Mr. Ying breached his duty of candor to the USPTO by intentionally withholding material information regarding inventorship and filing a false declaration with the intent to deceive. The Patent Examiner would not have allowed the D'723 application if he was aware of such material information.

106. Specifically, Mr. Ying failed to disclose that he was listed as the sole inventor on the CN '556 application. Instead, Mr. Ying affirmatively filed a false declaration declaring that he is "an original joint inventor of a claimed invention in the application" (emphasis supplied) with Mr. Shaojun Cao on December 10, 2014. Mr. Ying's declaration is contradicted by the listed inventorship on the CN '556 application, which describes the same alleged invention. The Patent Examiner would not have allowed the D'723 patent if he had known of this inventorship issue, because a patent is invalid if it has improper inventorship.

## FOURTH AFFIRMATIVE DEFENSE – PATENT MISUSE

107.  Because the asserted '115, '802 and D'723 patents were obtained through knowing, willful fraud on the USPTO, the asserted patents are unenforceable.  Plaintiffs  and Counterdefendants knew that the '115, '802 and D'723 patents are unenforceable, and that, as such, Golabs Hoverfly XL, Hoverfly Eco, Hoverfly Ion, SRX and SRX Pro products could not infringe the claims of those patents.  Plaintiffs and Counterdefendants also knew that the asserted claims of the '115 and '802 patents are invalid as anticipated or obvious over Shane Chen's Hovertrax hoverboard with an inner cover and rotataby coupled foot placement sections which Mr. Ying failed to disclose to the USPTO during prosecution of the '115 and  '802 patents.

108.  Plaintiffs and Counterdefendants have been made aware that their asserted patents are invalid and unenforceable in every litigation in which they have been asserted, namely Hangzhou Chic's litigation against Swagway in the Northern District of Indiana, Civil Action No. 3:16-cv-00567-PPS-MGG; Hanzhou Chic's litigation against Razor in the Central District of California, Civil Action No. 2:16-cv-06359-RGK-AJW where Judge Klausner found Razor's inequitable conduct allegations to be "plausible";  Plaintiffs' and Counterdefendants' litigation against  Hillo in Central District of California, Civil Action No. 2:19-cv-03028-JAK (AFMx); and now in the instant litigation.

109.  Nonetheless, Plaintiffs and Counterdefendants filed this suit asserting infringement of the '115, '802 and D'723 patents with no reasonable basis for doing so and with no purpose other than to  impermissibly  extend  the  scope  of  the  '115,  '802  and  D'723  patents  with  intended anticompetitive effect.  As such, the claims of the '115, '802 and D'723 patents are unenforceable for patent misuse.

## FIFTH AFFIRMATIVE DEFENSE – LICENSE AND PATENT EXHAUSTION/FIRST SALE DOCTRINE

110.  Plaintiffs' and Counterdefendants' claims are barred, in whole or in part, pursuant to an express and/or implied license, and/or patent exhaustion.   Upon information and belief, and subject to further discovery, Plaintiffs' and Counterdefendants' claims are barred in whole or in part, because at least Golabs' Hoverfly Eco and Hoverfly XL products are the subject of an express license, sublicense and/or implied license to the '155, '802 and D'723 patents, because those products were purchased from Zhejiang taotao vehicle Co. Ltd., a manufacturer that holds a patent license from Hangzhou Chic, and are subject to patent exhaustion.

## SIXTH AFFIRMATIVE DEFENSE

## (FULL COMPENSATION RULE AND PRIOR PAYMENT)

111. On information and belief and subject to further discovery, Plaintiffs' and Counterdefendants' claims are barred by prior payment and the full compensation rule.  Plaintiffs and Counterdefendants have been fully compensated by Zhejiang taotao vehicle Co. Ltd., a manufacturer that holds a patent license from Hangzhou Chic, for the manufacture of at least Golabs' Hoverfly Eco and Hoverfly XL products purchased by Golabs from Zhejiang taotao vehicle Co. Ltd., and Plaintiffs and Counterdefendants are therefore precluded  from claiming any damages for alleged infringement of the '155, '802 and D'723 patents by Golabs in connection with such products purchased by Golabs from Zhejiang taotao vehicle Co. Ltd.

## SEVENTH AFFIRMATIVE DEFENSE – FAILURE TO MARK

112.  Upon information and belief, Plaintiffs and Counterdefendants or their licensee(s), or both, failed to follow   the marking requirements set forth in 35 U.S.C. §287.  Plaintiffs   and

Counterdefendants therefore cannot recover damages for any period prior to receiving notice of the asserted patents.

### EIGHTH AFFIRMATIVE DEFENSE – UNCLEAN HANDS

113.  Plaintiffs' and Counterdefendants' claims are barred, in whole or in part, by the doctrine of unclean hands.

### NINTH AFFIRMATIVE DEFENSE – NO INJUNCTIVE RELIEF

114.  Plaintiffs and Counterdefendants are not entitled to injunctive relief because any alleged injury to Plaintiffs and Counterdefendants is not immediate and/or irreparable, and Plaintiffs and Counterdefendants have an adequate remedy at law.

### TENTH AFFIRMATIVE DEFENSE

### (RESERVATION OF RIGHT TO ASSERT FUTURE AFFIRMATIVE DEFENSES)

115.  Golabs and Walmart assert all other affirmative defenses that may become available as a result of information developed through discovery, trial, or otherwise, and reserve the right to seek leave to amend their Answer to plead additional defenses, or to supplement existing defenses, as such information becomes known throughout the course of discovery and this litigation.

### PRAYER FOR RELIEF

WHEREFORE, in view of the foregoing answer, Golabs and Walmart pray for judgment against

Plaintiffs and Counterdefendants as follows:

A.  That Plaintiffs and Counterdefendants take nothing by reason of this First Amended First Amended Complaint and that judgment be rendered in favor of Golabs and Walmart;

B.  That Plaintiffs and Counterdefendants be awarded costs of suit incurred  in defense of this action; and

C.  For such other relief as the Court deems proper.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Golabs and Walmart file these counterclaims against Plaintiffs and Counterdefendants and allege:

## PARTIES

1. Golabs is a privately-held Texas corporation with its principal place of business at 2201 Luna Rd., Carrolton, TX 75006.

2. Walmart Inc. is a Delaware corporation headquartered at 702 S.W. 8th Street, Bentonville, Arkansas 72716.

3. Wal-Mart Stores Texas, LLC, Inc. is a Delaware corporation headquartered at 702 S.W. 8t Street, Bentonville, Arkansas 72716.

4. Wal-Mart.com USA LLC is a California corporation headquartered at 702 S.W. 8th Street, Bentonville,  Arkansas 72716.

5. Hangzhou Chic Intelligent Technology Co. Ltd. ("Hangzhou  Chic") alleges in paragraph 1 of its First Amended Complaint that it is a Chinese company organized and existing under the laws of the People's Republic of China with a principal place of business located at 2/F, No. 2 Building, Liangzhu University, Science and Technology Park, No. 1 Jingyi Road, Liangzhu, Hangzhou, 311112, People's Republic of China.

6. Unicorn Global, Inc. ("Unicorn") alleges in paragraph 7 of its First Amended Complaint that it is a California corporation with its principal place of business located at 18333 Gale Ave., City of Industry, California 91748.

7. Shenzhen Uni-Sun Electronic Co., Ltd. ("Uni-Sun") alleges in paragraph 8 of its First Amended Complaint that it is a company organized and existing under the laws of the People's

Republic of China with a principal place of business located at No. 43 Lan Second Road, Longxin Area, Longgang District, Shenzhen Guangdong, 518000, People's Republic of China.

## JURISDICTION AND VENUE

8.   The  First through Sixth Counterclaims are actions arising under, and this Court has jurisdiction pursuant to, 28 U.S.C. §§1331, 1338(b) and 1367.

9.   The Seventh through Fourteenth Counterclaims are actions for a declaration that each and every claim of U.S. Patent Nos. 9,376,155 ("the '155 patent"), 9,452,802 ("the '802 patent"), and/or D737,723 ("the D'723 patent") (collectively "Patents-in-Suit" or "asserted patents") are invalid, unenforceable, and/or not infringed pursuant to the Patent Laws of the United States, 35 U.S.C. § 101, et seq.  Accordingly, subject matter jurisdiction of this Court exists under the Federal Declaratory Judgment Act, Title 28, United States Code §§ 2201 and 2202, and under Title 28, United States Code §§ 1331 and 1338(a).

10.   An actual, substantial, and continuing justiciable controversy exists between Golabs and Walmart and Plaintiffs and Counterdefendants with respect to which Golabs and Walmart require a declaration of their rights by this Court.  Specifically, the controversy relates to the invalidity, unenforceability, and noninfringement of the Patents-in-Suit and to Plaintiffs' and Counterdefendants' right to threaten and/or maintain a suit for infringement of Patents-in-Suit.

11.   This Court has personal jurisdiction over Plaintiffs and Counterdefendants.  By filing their First Amended Complaint in this case, Plaintiffs and Counterdefendants have consented to personal jurisdiction in the Northern District of Texas.

12.   The claims for declaratory judgment of invalidity, unenforceability, and noninfringement are compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure.

13.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b).

## FACTUAL BACKGROUND

## Plaintiff And Counterdefendant Hangzhou Chic Is Among The Top Players And Manufacturers In The Expanding Hoverboard Market

14.    A hoverboard is a two-wheeled, battery operating self-balancing vehicle which is used for personal, business and recreational purposes.  The demand for hoverboards has increased considerably owing to the rising use of hoverboards for recreational activities as well as for personal mobility and is gaining popularity across the globe.  Moreover, increasing interest of consumers towards self-balancing and battery operated hoverboards along with the rising population of youngsters are some of the key factors for the expected boost in the demand for hoverboards, thus driving the growth of the global hoverboard market.  "*Hoverboard Market (By Product – 6.5 inch, 8 inch, 10 inch,; By Application – Recreational activities, Business Purposes, Personal Mobility, Others) – Global Industry, Size, Share,, Trends and Forecasts, 2018 – 2026*", Acumen Research and Consulting (hereinafter "ARC article").

15.    The U.S. is the largest consumer market for hoverboards and the worldwide market for hoverboards is expected to grow roughly 12.3% over the next five years to reach $1.2 billion in 2024 from $600 million in 2019.  "*Hoverboard Scooter Market 2019 By Key Players, Product and Production from Information Analysis And Forecast To 2024 With Geographic Segmentation, Statistical Forecast, and Competitive Landscape*", World Market Reports (March 22, 2019) (hereinafter "WMR article").  According to TechSci Research report, "Global Hoverboard Market By Type, By Application, By Region, Competitor Forecast and Opportunities, 2015-2021," the growth in the global hoverboard market is projected to be even higher, surpassing $1.8 billion by 2021 "on account of rising demand for hoverboards from several countries in European, Asia-Pacific and Americas.  Moreover, about 30% of Chinese population, 31% of the United States,

22% of German population, 30% of French population, and 38% of Brazilian population fall in the age group of 0-25 years, thus expanding youth population across the globe is further anticipated to fuel demand for hoverboards during this forecast period."

16.    Hangzhou Chic is in every reported list of the top players and manufacturers in the industry. *See, e.g.,* ARC article; WMR article.

17.    On information and belief, Hangzhou Chic controls a substantial amount of products in the 6.5-inch hoverboard category on amazon.com, and is attempting to monopolize at least that category.

### Plaintiffs And Counterdefendants Are Asserting Their Patents Against Hoverboard Competitors Without Regard To Patent Validity, Enforceability And Infringement In An Anticompetitive Attempt To Expand Their Market Position

18.    In order to capitalize on this growing hoverboard market, and improperly attempt to monopolize and control the pricing in this market, Plaintiffs and Counterdefendants have embarked on an anticompetitive scheme to interfere with their competitors' business relations with customers and prospective customers.  Hangzhou Chic, using Shenzhen Uni-Sun as the "exclusive licensee" and directly or indirectly through Unicorn as its self-identified "enforcement agent," has asserted its patents without regard to their validity, enforceability and infringement, pressing and causing Amazon.com to terminate its competitors' listings.

### Plaintiffs And Counterdefendants First Asserted Their Frivolous Patents  In Litigation With Their Major Competitors Razor And Swagway Resulting In Settlements

19.    Golabs and Walmart repeat and reallege, as if fully set forth herein, the averments contained in paragraphs 67-106 of their Third Affirmative Defense (Unenforceability of the asserted '155, '802 and D'723 patents due to inequitable conduct and include averments that the

asserted claims of the '115 and '802 patents are invalid as anticipated or obvious over Shane Chen's Hovertrax hoverboard with an inner cover and rotataby coupled foot placement sections) in support of these Counterclaims.

20.    Hangzhou Chic first asserted the '155, '802 and/or D'723 patents in litigation against its major competitors Razor and Swagway, also listed among the top players and manufacturers in the hoverboard market.

21.    Hangzhou Chic asserted the '155 patent against Razor in the Central District of California, Civil Action No. C.D. California, Civil Action No. 2:16-cv-06359-RGK-AJW.  Razor asserted a similar affirmative defense and counterclaim of inequitable conduct in that case with respect to the '155 patent.  The Honorable R. Gary Klausner presiding in that case issued an opinion finding that Razor's "pleading is sufficient to support an inference of intent to deceive, as well as knowledge and materiality of the omitted information.  The Answer's inequitable conduct claim is plausible."

22.    Hangzhou Chic asserted the '155 and D'723 patents against Swagway in the Northern District of California, Civil Action No. 3:16-cv-04804-HSG, transferred to the Northern District of Indiana, Civil Action No 3:16-cv-00567-PPS-MGG.  Swagway asserted a similar affirmative defense and counterclaims of inequitable conduct in that case with respect to the '155 and D'723 patents.

23.    Before asserting the '155, '802 and D'723 patents in this litigation, Plaintiffs and Counterdefendants knew that the '115, '802 and D'723 patents are unenforceable, and that, as such, Golabs Hoverfly XL, Hoverfly Eco, Hoverfly Ion, SRX and SRX Pro products could not infringe the claims of those patents.  Plaintiffs and Counterdefendants also knew that the asserted claims of the '115 and '802 patents are invalid as anticipated or obvious over Shane Chen's

Hovertrax hoverboard with an inner cover and rotataby coupled foot placement sections which Mr. Ying failed to disclose to the USPTO during prosecution of the '115 and '802 patents.

24.    In Hangzhou Chic's litigation with Razor, Razor also asserted that Hangzhou Chic has embarked on a plan to disrupt the market for Razor's hoverboard product by making statements about Razor's product and Hangzhou Chic's product to customers and prospective customers. Razor asserted that the false statements included:  representing that the Razor product is no longer available when it is; representing that the U.S. patent licensed by Razor had been invalidated when it had not; representing that only Hangzhou Chic is selling patented and safety-certified hoverboards when Razor is selling patented and safety-certified hoverboards; representing that Hangzhou Chic has a judgment that has been served on Razor when that is not true; representing that only Hangzhou Chic can deliver product and other companies (such as Razor) cannot deliver product; representing that Hangzhou Chic holds the only hoverboard patent when Shane Chen holds a U.S. hoverboard patent that predates Hangzhou Chic's patent; and representing that the legal departments of retailers agree with Hangzhou Chic, which, on information and belief, is not true.  Upon information and belief, and subject to further discovery, such allegations will be proven.

25.    Hangzhou Chic settled its litigation with Swagway, and, on information and belief, also settled its litigation with Razor.  Upon information and belief, and subject to further discovery, the settlement agreements will support Plaintiffs' and Counterdefendants' scheme to settle with their major competitors and then eliminate smaller competitors from the hoverboard market.

**Plaintiffs And Counterdefendants Are Now Asserting The Same Frivolous Patents To Eliminate Smaller Competitors From The Hoverboard Market**

26.   Today, Plaintiffs and Counterdefendants have focused their plan on sweeping the smaller players off the field with their present actions against Golabs and Walmart in the instant case and against Hillo America, Inc. in *Unicorn Global, Inc. v. Hillo America, Inc.*, Civil Action No. 2:19-cv-03028-JAK (AFMx).

**Plaintiffs and Counterdefendants Have Engaged In Anticompetitive Cyber Warfare Asserting Their Frivolous Patents Against Smaller Hoverboard Competitor Golabs And Their Customers And Prospective Customers**

27.   GoLabs, Inc. d/b/a Gotrax was formed in or about May 2017.

28.   Golabs occupies a Wearhouse in Carrollton, Texas. Of the 24 employees that GoLabs employs, 21 employees work out of the Carrollton facility.

29.   GoLabs, Inc. sells hoverboards, as well as other mechanical devices, through online retailers like WalMart and Amazon as well as through its own website.

30.   In 2018, 48% of GoLabs's gross sales were hoverboards sold through Amazon.com. Having the source of 48% of sales cut off would be devastating for GoLabs.

31.   The 2019 sales of hoverboards through Amazon.com were expected to substantially increase.

32.   On October 28, 2018, both Hangzhou Chic and its enforcer Unicorn began improper, systematic complaints by email to Amazon.com regarding Defendant GoLabs's hoverboard and other products, alleging patent infringement.

33.   Upon information and belief, the following Table breaks down some of the numerous cyber complaints lodged by Hangzhou Chic, its enforcer Unicorn, and/or its counsel, identifying the date of communication with Amazon, the Complaint ID generated by Amazon, the patent asserted by

Chic or Unicorn, the accused product(s), and the date when GoLabs received confirmation from Amazon that it cleared the complaint:

| Date | Complaint ID | Patent | Accused Product(s) | Clearance Date |
|---|---|---|---|---|
| 10/22/2018 | 5457069551 | 9,376,155 | 1. Hoverfly Eco | 11/27/2018 |
| 1/3/2019 | 5671275681 | D737,723S | 1. Hoverfly Eco | None |
| 1/3/2019 | 5670542371 | D738,256 | 1. ION | 1/8/2019 |
| 1/22/2019 | 5719652231 | D785,112S | 1. ION | 2/21/2019 |
| 2/22/2019 | 5821326431 | D738,256 (2)[1] | 1. SRX | 3/1/2019 |
| 4/19/2019 | 6000563831 | D785,112S (2) | 1. ION | 4/30/2019 |
| 4/23/2019[2] | 5999185211 | 9,376,155 (2)<br>9,452,802<br>D737,723 (2) | 1. ION<br>2. SRX<br>3. Hoverfly XL (no longer sold) | 4/30/2019 for ION only |
| 6/2/2019 | 6125244711 | 9,376,155 (3)<br>9,452,802 (2)<br>D737,723 (3) | 1. ION<br>2. SRX PRO<br>3. SRX<br>4. Fluxx3, Fluxx Watt, and Fluxx Watt + (all Fluxx hoverboards are not accused in the litigation) | None |

34.    As shown above, Plaintiffs' and Counterdefendants' bad faith conduct is revealed by their (1) continued assertion of patents that have already been cleared by Amazon, and (2) repeated attack on GoLabs with an improper and unjustified trial and error approach of patent assertion until the desired outcome of a delisting is achieved.  Plaintiffs' and Counterdefendants' activity with regard to the ION hoverboards illustrates these two points.  The ION product line was delisted on January 3, 2019, but GoLabs persuaded Amazon to relist the products on January 8, 2019 after providing information to Amazon to demonstrate that Plaintiffs' and Counterdefendants' infringement assertion was baseless.  Undeterred, Plaintiffs and Counterdefendants came back on

---

[1] The number in the parentheses indicates the number of times a patent has been asserted.  For example, "D738,256 (2)" is the second time the D'256 patent was asserted by Plaintiffs.

[2] This complaint appears to have been made by Plaintiffs and Counterclaimdefendants' counsel in this litigation.  The email associated with this notice is wdunwoody@munckwilson.com.

January 22, 2019, accusing the ION products again of patent infringement. This time, however, Plaintiffs and Counterdefendants asserted a new patent, the D'112 patent. After receiving this notice, GoLabs cleared the complaint with Amazon, and got the ION products relisted on amazon.com on February 21, 2019. Having failed in its two attempts of permanently delisting the ION hoverboards, Plaintiffs and Counterdefendants sent a third complaint regarding the ION products on April 19, 2019, accusing the ION products of infringing the same D'112S patent that had already been cleared. A fourth Amazon complaint followed on April 23, 2019 regarding the ION, and Plaintiffs and Counterdefendants accused the ION of infringing the patents-in-suit. The ION was relisted on April 30, 2019 based on non-infringement evidence submitted by GoLabs in response to the April 19 complaint.

35. Furthermore, Plaintiffs' and Counterdefendants' bad faith conduct is also demonstrated by the fact that although they have filed complaints with Amazon with respect to other GoLabs' products, such as the Fluxx line of products, they choose to ignore those products for the purpose of litigation. Instead, they rely on Amazon again to delist GoLabs' products, shielding the assertion of those products from potential adjudication.

36. And finally, as a demonstrated above (Third Aff, Def. ¶¶67-106) and further below (Sixth through Fourteenth Counterclaims ¶¶87-203), Plaintiffs and Counterdefendants continue to assert the '155, '802 and D'723 patents that they know are not infringed, invalid, and/or unenforceable.

37. The improper, systematic, cyber complaints caused significant harm to Golabs as they caused intermittent delistings of Golabs's hoverboards from Amazon's website until the complaints were cleared and damaged Golabs's reputation with Amazon.

38. Ultimately, at or about the time when Amazon was dismissed by Golabs from the current lawsuit, Amazon permanently delisted Golabs hoverboard products. On information and belief,

and as further discovery will show, this delisting was an anticompetitve quid pro quo for Golabs agreement to dismiss Amazon from this lawsuit designed to eliminate a competitor from the market.

39.   This substantial loss in sales will result in substantial losses for Golabs. Without Amazon.com sales, Golabs may fold or at the very least begin cutting operating costs and laying off employees.

40.   Should Plaintiffs and Counterdefendants draw out this litigation, which is likely, given that the Razor and Swagway litigations continued for more than eight months before settling (on information and belief with respect to the case brought against Razor), then they will devastate GoLabs's business in the hoverboard market.

41.   Hangzhou Chic also in bad faith contacted Golab's customer Walmart on April 9, 2019, asserting that Golabs's Hoverfly Eco and Hoverfly Ion products infringe Hangzhou Chic's '155 and '802 patents, known by Hangzhou Chic to be invalid and unenforceable, and requested Walmart to stop selling these products.  Walmart investigated this claim and directed the third party seller on Walmart Marketplace to resolve the claim with Plaintiff.

42.   There is a pending Civil RICO, Tortious Interference (bad faith), and declaratory judgment action against some of the Plaintiffs and Counterdefendants pending in the Northern District of Texas under Civil Cause No. 3:19-CV-1019, and styled as GoLabs, Inc. d/b/a Gotrax v. Hangzhou Chic Intelligent Technology Co. LTD., AND Shenzen Hongyi Intelligent Electronic Technology Co., LTD d/b/a Flying-Ant, Unicorn Global, Inc. Hongrong Yu, and Jing Cui.

**Plaintiffs And Counterdefendants Have Also Asserted Their Frivolous Patents Against At Least Smaller Hoverboard Competitor Hillo**

43.   On information and belief, Hillo is a small distributor of hoverboards as well as other retail products with 28 employees, and is located in Temple City, California.

44.   Plaintiffs and Counterdefendants have also asserted the '155, '802 and D'723 patents against Hillo America, Inc. in the Central District of California, Civil Action No. 2:19cv-03028-JAK (AFMx).   On May 20, 2019, Hillo asserted a similar affirmative defense and counterclaims of inequitable conduct in that case with respect to the '155, '802 and D'723 patents.

45.   In the Central District of California case, Hillo asserts that Hangzhou Chic has controlling monopoly power, that Hangzhou Chic control substantial amount of products in the 6.5-inch hoverboard category on amazon.com ("Relevant Market"), and that it is attempting to monopolize at least that category.   In order to illegally control the monopoly power and further manipulate the predatory pricing scheme in the Relevant Market, Plaintiffs and Counterdefendants started by demanding that Hillo grant Plaintiffs and Counterclaim defendants immediate and continuous access to Hillo's computer systems and Hillo's 6.5 [inch] Hoverboard Electric Self-balancing Scooter sales data and pricing information at any given time, and then using the access to collect sales data and manipulate the pricing system in the Relevant Market.   Upon Hillo's rejection and refusal to collaborate, Plaintiffs and Counterdefendants intentionally, maliciously, and oppressively launched their illegal *anticompetitive* scheme to *foreclose competition* in the Relevant Market, used Shenzhen Uni-Sun as the *exclusive* licensee and Unicorn as "enforcement agent" in the U.S., pressed Amazon.com to *terminate defendant's listings* on Hoverboard products … and filed this retaliatory lawsuit on April 23, 2019…."   *See* Defendant Hillo America, Inc.'s Answer (**Exhibit 5**).   Upon information and belief, and subject to further discovery, such allegations will be proven.

## FIRST COUNTERCLAIM: LANHAM ACT § 43(a)

46.  Golabs and Walmart incorporate paragraphs 1 through 45 as though set forth here in full.

47.  Plaintiffs and Counterdefendants or their agents are making false and misleading statements in communications with at least Amazon and Walmart about Golabs's products that are in commerce in the United States.

48.  The false and misleading statements have harmed or are likely to cause significant economic harm to Golabs and damage to its reputation.

49.  Golabs is entitled to damages and injunctive relief as provided for by law, including treble damages.

### SECOND COUNTERCLAIM: COMMON LAW UNFAIR COMPETITION

50.   Golabs and Walmart incorporate paragraphs 1 through 49 as though set forth here in full.

51.  Plaintiffs' and Counterdefentants' misconduct as alleged herein constitutes unfair and unlawful competition and/or unfair business practices in violation of the common law of the State of Texas because Plaintiffs and Counterdefendants or their agents have made false and misleading statements about Golabs's products in communications with at least Amazon and Walmart that have deceived Amazon and Walmart.

52.  Golabs is informed and believes, and therefore alleges, that Plaintiffs and Counterdefendants or their agents continue these unfair practices to this day.

53.   As a direct, proximate, and foreseeable result of Plaintiffs' and Counterclaim Defentants' unfair business practices, Golabs has suffered or is likely to suffer significant economic damages and damage to its reputation.

54.  Golabs is informed and believes, and therefore alleges, that Plaintiffs and Counterdefentants or their agents will continue to harm Golabs by making false representations

about Golabs' products unless and until the Court orders Plaintiffs and Counterdefendants to cease and desist.

55.   Golabs is entitled to all remedies available under law.

### THIRD COUNTERCLAIM: TORTIOUS INTERFERENCE WITH CONTRACT

56.   Golabs and Walmart incorporate paragraphs 1 through 55 as though set forth here in full.

57.   Plaintiffs' and Counterdefendants' cyber complaints to Amazon, made with the knowledge that the asserted patents are invalid, unenforceable and/or not infringed, are bad faith representations vitiating the patent law preemption that would bar liability under state law unfair competition and related tort claims.

58.   At the time Plaintiffs and Counterdefendants made these systematic misrepresentations, they were aware that Golabs has a valid contractual relationship with Amazon.

59.   Plaintiffs' and Counterdefendants' systematic misrepresentations were an intentional and unjustifiable attempt to induce Amazon to breach or disrupt their contractual relationship with Golabs by delisting Golabs's products.

60.   Golabs has incurred and will incur significant economic costs and damage to its reputation as a direct result of Amazon's delisting Golabs products.

61.   Golabs is entitled to recover compensatory and punitive damages.

### FOURTH COUNTERCLAIM:

### (Walker Process Fraud, Attempted Monopolization under 15 U.S.C. § 2)

62.   Golabs and Walmart repeat and incorporate by reference the allegations in their Inequitable Conduct and Patent Misuse Affirmative Defenses (e.g., Aff. Def. paragraphs 67-106 and 107-109) as well as paragraphs 1-61 of these Counterclaims as if fully set forth herein.

63.     During prosecution of the '155 and '802 patents, Mr. Ying knowingly breached his duty of candor to the USPTO in at least three separate instances by misrepresenting the prior art and intentionally withholding material information in at least two separate instances with the intent to deceive the USPTO.  The Patent Examiner would not have allowed the '155 and '802 patents if he was not misled by Mr. Ying's material misrepresentation and was made aware of any of this material information.

64.     Mr. Ying failed to disclose to the USPTO, with the intent to deceive, that another individual, Shane Chen is the inventor of the hoverboard called "Hovertrax" manufactured by his company Inventist, Inc. in the United States more than one year before the effective filing date of the '155 and '802 patents.  Mr. Chen was issued the hoverboard patent – U.S. Patent No. 8,738,278 (the "'278 patent") – based on a provisional application that he filed on February 12, 2012.  He displayed prototypes of his invention at a toy fair in New York in February 2012 and again in February 2013.   He disclosed information about his invention in a Kickstarter fundraising campaign beginning in April 2013.  Mr. Ying's '155 patent application was filed much later on June 13, 2014.  Mr. Ying knew about Mr. Chen's invention and failed to accurately and fully disclose what he knew to the USPTO to mislead the USPTO into issuing the '155 patent.

65.     The '278 patent, among other things, claims a two-wheel, self-balancing vehicle with two foot placement sections that are "rotatably coupled."  Although the '278 patent was disclosed as prior art during prosecution of '155 and '802 patents, the Related Art Section of the '155 and '802 patent specification only mentions existing electric balancing vehicles operating via a manually controlled steering rod.  Even though the '278 patent claims and discloses "rotatably coupled" foot placement sections, Mr. Ying in the '155 and '802 patent applications falsely stated that the foot platform of existing prior art balance vehicles "is always kept in a horizontal state during use and

cannot rotate relatively" and "[t]herefore, the user cannot control the balance vehicle merely through the feet." '155: Col. 1. lns.19-27; '802 Col. 1, lns. 30-33.  However, Mr. Ying knew that statement was not true, since he knew about Shane Chen's hoverboard which did exactly that - it allowed relative rotation of the foot platforms permitting user control of the balance vehicle "merely through the feet."  This misrepresentation was material because the Examiner focused on the issue of the two platforms being "rotatable relative to each other" in the '155 patent and he would not have allowed the patent otherwise.  But for this misrepresentation, the '155 patent would not have issued.

66.    In addition to misrepresenting the prior art, during the prosecution of the '155 and '802 applications, Mr. Ying also breached his duty of candor to the USPTO by intentionally withholding material information by (a) not disclosing the "Hovertrax" prototype and (b) not disclosing the Chinese Patent Office's rejection of the CN '353 application claims.  The Patent Examiner would not have allowed the '155 application if he was aware of any of this material information.

67.    During prosecution of the D'723 patent, despite being fully aware of his duty of candor, Mr. Ying breached his duty of candor to the USPTO by intentionally withholding material information regarding inventorship and filing a false declaration with the intent to deceive.  The Patent Examiner would not have allowed the D'723 application if he was aware of such material information.

68.    Specifically, Mr. Ying failed to disclose that he was listed as the sole inventor on the CN '556 application.  Instead, Mr. Ying affirmatively filed a false declaration declaring that he is "an original *joint inventor* of a claimed invention in the application" (emphasis supplied) with Mr. Shaojun Cao on December 10, 2014.  Mr. Ying's declaration is contradicted by the listed inventorship of the CN '556 application, which describes the same alleged invention.  The Patent

Examiner would not have allowed the D'723 patent if he had known of this inventorship issue because a patent is invalid if it has improper inventorship.

69.    Plaintiffs and Counterdefendants knew that the '115, '802 and D'723 patents are unenforceable, and that, as such, Golabs's Hoverfly XL, Hoverfly Eco, Hoverfly Ion, SRX and SRX Pro products could not infringe the claims of those patents.  Plaintiffs and Counterdefendants also knew that the asserted claims of the '115 and '802 patents are invalid as anticipated or obvious over Shane Chen's Hovertrax hoverboard with an inner cover and rotataby coupled foot placement sections which Mr. Ying failed to disclose to the USPTO during prosecution of the '115 and '802 patents.

70.    Plaintiffs and Counterdefendants have been made aware that their asserted patents are invalid and unenforceable in every litigation in which they have been asserted, namely Hangzhou Chic's litigation against Swagway in the Northern District of Indiana, Civil Action No. 3:16-cv-00567-PPS-MGG; Hanzhou Chic's litigation against Razor in the Central District of California, Civil Action No. 2:16-cv-06359-RGK-AJW where Judge Klausner found Razor's inequitable conduct allegations to be "plausible";  Plaintiffs' and Counterdefendants' litigation against  Hillo in Central District of California, Civil Action No. 2:19-cv-03028-JAK (AFMx); and now in the instant litigation.

71.    Nonetheless, Plaintiffs and Counterdefendants filed this suit asserting infringement of the '115, '802 and D'723 patents with no reasonable basis for doing so and with no purpose other than to impermissibly extend the scope of the '115, '802 and D'723 patents with intended anticompetitive effect.

72.    Through this fraud and the filing of this lawsuit based upon fraudulently obtained patents, Plaintiffs and Counterdefendants engaged in anticompetitive or predatory conduct and filed this

and other lawsuits with the specific intent to monopolize in violation of 15 U.S.C. § 2.  As to the allegations contained in these Counterclaims, the relevant geographic market is the United States.

73.   There is a dangerous probability that Plaintiffs and Counterdefendants will achieve monopoly power in the personal transporter market.  Eliminating Golabs from the hoverboard market would remove one of the few remaining competitors in this market and assist Plaintiffs and Counterdefendants in achieving monopolistic power over the market.  This is especially true in light of Plaintiffs and Counterdefendants' current market position, prior settlement of litigations against major players Razor and Swagway and their pending lawsuits in this District and in the Central District of California to eliminate small players Golabs and Hillo from the hoverboard market.

74.   As a result of Plaintiffs and Counterdefendants' unlawful, anticompetitive acts, Golabs and Walmart have suffered and will continue to suffer antitrust injury in an amount to be determined at trial.  Golabs and Walmart have already had to expend a substantial amount of resources defending this action, and will continue to do so if Plaintiffs and Counterdefendants continue to assert the fraudulently obtained '155, '802 and D'723  patents.

75.   As such, Golabs and Walmart have suffered injury of the type forbidden under the antitrust laws of the United States.  Thus, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Golabs and Walmart may assert a private right of action for actual and treble damages as well as reasonable attorneys' fees.

## **FIFTH COUNTERCLAIM:**

## **(Sham Litigation, Attempted Monopolization under 15 U.S.C § 2)**

76.    Golabs and Walmart repeat and incorporate by reference the allegations in their Affirmative Defenses Paragraphs 65-115 and Paragraphs 1-75 of these Counterclaims as if fully set forth herein.

77.    Upon information and belief, Plaintiffs and Counterdefendants knew that the '115 and '802 patents were invalid and unenforceable when they filed this lawsuit, and that the D'723 patent was unenforceable.

78.    Plaintiffs and Counterdefendants knew that the '115, '802 and D'723 patents are unenforceable, and that, as such, Golabs's Hoverfly XL, Hoverfly Eco, Hoverfly Ion, SRX and SRX Pro products could not infringe the claims of those patents. Plaintiffs and Counterdefendants also knew that the asserted claims of the '115 and '802 patents are invalid as anticipated or obvious over Shane Chen's Hovertrax hoverboard with an inner cover and rotataby coupled foot placement sections which Mr. Ying failed to disclose to the USPTO during prosecution of the '115 and '802 patents.

79.    Plaintiffs and Counterdefendants have been made aware that their asserted patents are invalid and unenforceable in every litigation in which they have been asserted, namely Hangzhou Chic's litigation against Swagway in the Northern District of Indiana, Civil Action No. 3:16-cv-00567-PPS-MGG; Hanzhou Chic's litigation against Razor in the Central District of California, Civil Action No. 2:16-cv-06359-RGK-AJW, where Judge Klausner found Razor's inequitable conduct allegations to be "plausible"; Plaintiffs' and Counterdefendants' litigation against Hillo in Central District of California, Civil Action No. 2:19-cv-03028-JAK (AFMx); and now in the instant litigation.

80.    Nonetheless, Plaintiffs and Counterdefendants filed this suit asserting infringement of the '115, '802 and D'723 patents with no reasonable basis for doing so and with no purpose other than

to impermissibly extend the scope of the '115, '802 and D'723 patents with intended anticompetitive effect.

81.    Plaintiffs and Counterdefendants' assertion of the '115, '802 and D'723 patents was objectively baseless because no reasonable litigant could expect success on the merits. Specifically, no reasonable litigant could expect to successfully assert a patent that it knew was obtained through knowing, willful fraud on the USPTO and that it knew to be unenforceable and invalid.

82.    Upon information and belief, Plaintiffs and Counterdefendants' lawsuit is an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process as an anticompetitive weapon with no regard to the outcome of the lawsuit. Rather, Plaintiffs and Counterdefendants' law suit has been brought solely to harass or interfere directly with Golabs's business relations through the assertion of fraudulently obtained patents and invalid patents in an attempt to force Golabs out of the hoverboard market.

83.    Plaintiffs and Counterdefendants' assertion that Golabs infringes the '115, '802 and 'D723 patent constitutes sham litigation.  Through this sham litigation, and prior litigation and dealings with Amazon and Walmart asserting invalid, unenforceable and not infringed patents, Counterclaim-Defendants have engaged in anticompetitive or predatory conduct with the specific intent to monopolize in violation of 15 U.S.C. § 2.  As to the allegations contained in these Counterclaims, the relevant geographic market is the United States.

84.    There is a dangerous probability that Plaintiffs and Counterdefendants will achieve monopoly power in the hoverboard market.  Eliminating Golabs from the hoverboard market would remove one of the few remaining competitors in this market and assist Plaintiffs and Counterdefendants with achieving monopolistic power over the market.  This is especially true in

light of Plaintiffs and Counterdefendants' current market position, prior settlement of litigations against major players Razor and Swagway and their pending lawsuits in this District and in the Central District of California to eliminate small players Golabs and Hillo, respectively, from the hoverboard market.

85.   As a result of Plaintiffs and Counterclaimdefendants' unlawful, anticompetitive acts, Golabs and Walmart have suffered and will continue to suffer antitrust injury in an amount to be determined at trial.  Golabs and Walmart have had to expend a substantial amount of resources defending this action, and will continue to do so if Plaintiffs and Counterdefendants continue to assert the fraudulently obtained '115, '802 and D'723 patents.

86.   As such, Golabs and Walmart have suffered injury of the type forbidden under the antitrust laws of the United States.  Thus, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Golabs and Walmart may assert a private right of action for actual and treble damages as well as reasonable attorneys' fees.

## SIXTH COUNTERCLAIM: DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 9,376,155

87.   Golabs and Walmart incorporate by reference paragraphs 1 through 86 as though fully stated herein.

88.   Plaintiffs and Counterdefendants have asserted the '155 patent against Golabs and Walmart. Plaintiffs and Counterdefendants maintain—and Golabs and Walmart deny—that Golabs's and Walmart's use, sale, offer for sale, marketing, or importation of Golabs's Hoverfly Eco, Hoverfly XL, Hoverfly Ion, SRX and SRZ Pro hoverboards constitute infringement of any valid claim of the '155 patent.

89.   There is an actual controversy between Golabs and Walmart on the one hand, and Plaintiffs and Counterdefendants on the other, as to whether Golabs and Walmart infringe any valid and enforceable claim of the '155 patent.

90.   Golabs and Walmart have not infringed and do not infringe any valid and enforceable claim of the '155 patent.

91.   Claim 1 of the '155 patent recites, *inter alia*, a claim limitation of "an inner cover fixed between the top cover and the bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other" and another claim limitation of "a rotating mechanism fixed between the first inner cover and the second inner cover." Claim 1 of the '155 patent also recites, *inter alia*, "the bottom cover comprising a first bottom cover and a second bottom cover disposed symmetrically…." The remaining claims, claims 2-18, all depend from claim 1, and thus also require these claim limitations.

92.   The term "rotating mechanism" recited in claim 1 of the '155 patent is a means-plus-function term. *See Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) ("The term 'mechanism' standing alone connotes no more structure than the term 'means.'"); *see also Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1373 (Fed. Cir. 2015) ("We have never found that the term 'mechanism'— without more—connotes an identifiable structure; certainly, merely adding the modifier 'compliance' to that term would not do so either."). The function is "rotating" and the corresponding structure described in the patent specification consists of two bearings, a shaft sleeve, and two snap springs, wherein the two bearings are fixed to the inner ends of the first inner cover and the second inner cover, respectively, and the shaft sleeve is fixed inside the two bearings and is fixed to the inner cover by the two snap springs. '155 patent, col. 6, ll.14-24 ("the rotating mechanism 60 includes two bearings 61, a shaft sleeve 62,

and two snap springs 63.  The two bearings 61 are fixed to the inner ends of the first inner cover 21 and the second inner cover 22, respectively.  The shaft sleeve 62 is fixed inside the two bearings 61 and is fixed to the inner cover 2 via the two snap springs 63.  Thus, the left and right inner covers of the inner cover 2 can rotate under the cooperation of the rotating mechanism 60.  Due to the arrangement of the rotating mechanism 60, the two parts of the vehicle body of the electric balance vehicle 100 can rotate freely and relatively.")

93.   The accused Golabs's Hoverfly Eco, Hoverfly XL, Hoverfly Ion, SRX and SRX Pro hoverboards do not meet at least these claim limitations and thus do not infringe any claim of the '155 patent.

94.   Labelled photographs showing the design of the internal frame of each of the accused Golabs's Hoverfly Eco (**Exhibit 7**), Hoverfly XL (**Exhibit 8**), Hoverfly Ion (**Exhibit 9**), SRX (**Exhibit 10**) and SRX Pro (**Exhibit 11**)  hoverboards are appended hereto.

95.   As shown by the labelled photographs of the accused Golabs's Hoverfly Eco (**Exhibit 7**), Hoverfly XL (**Exhibit 8**), Hoverfly Ion (**Exhibit 9**), SRX (**Exhibit 10**) and SRX Pro (**Exhibit 11**), in accordance with machine specifications, each of the accused products does not contain bearings, but rather contains a thrust washer which is not fixed to an inner cover and two snap rings that are also not fixed to an inner cover in the accused  products.  Therefore, each of the accused products does not have the claimed "rotating mechanism" because the rotating structure of each accused product is very different from the claimed "rotating mechanism" consisting of two bearings, a shaft sleeve and two snap rings, wherein the two bearings are fixed to the inner ends of the first inner cover and second inner cover, respectively, and the shaft sleeve is fixed inside the two bearings and is fixed to the inner cover via the two snap rings.  For at least these reasons alone, the accused products do not infringe any claim of the '155 patent.

96.     Additionally, the left and right sides of the inner cover are not "disposed symmetrically" as required by each of the '155 patent claims, at least because the shaft sleeve is press fit within the inner frame of one side of the inner cover and presses against a bushing within the opposite side of the inner cover. The left and right sides of the bottom cover are also not "disposed symmetrically" as required by each of the '155 patent claims, at least because only one side has cutouts for the power button and the charging port.   For at least these reasons alone, each accused product does not infringe any claim of the '155 patent.

97.     The Golabs's Hoverfly Eco, Hoverfly XL, Hoverfly Ion, SRX and SRX Pro hoverboards also do not infringe and have not infringed any claim of the '155 patent because the claims are invalid and/or unenforceable for inequitable conduct.   Golabs and Walmart incorporate by reference as though fully stated herein paragraphs 67-106 of their Affirmative Defenses and paragraphs 151-188 of these Counterclaims that the '155 patent claims are invalid and unenforceable for inequitable conduct.

98.     Moreover, at least Golabs's Hoverfly Eco and Hoverfly XL hoverboards do not infringe the '155 patent because they were manufactured by Zhejiang taotao vehicle Ltd. who compensated Hanzhou Chic for the manufacture of those products under a patent license from Hangzhou Chic for the '155 patent.

99.     Accordingly, Golabs and Walmart seek a judgment declaring that they do not infringe and have not infringed any claim of the '155 patent.

## SEVENTH COUNTERCLAIM : DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 9,452,802

100.   Golabs and Walmart incorporate by reference paragraphs 1 through 99 as though fully stated herein.

101. Plaintiffs and Counterdefendants have asserted the '802 patent against Golabs and Walmart. Plaintiffs and Counterdefendants maintain—and Golabs and Walmart deny—that Golabs and Walmart's use, sale, offer for sale, marketing, or importation of Golabs's Hoverfly Eco, Hoverfly XL, Hoverfly Ion, SRX and SRX Pro hoverboards constitute infringement of any valid claim of the '802 patent.

102. There is an actual controversy between Golabs and Walmart on the one hand, and Plaintiffs and Counterdefendants on the other, as to whether Golabs and Walmart infringe any valid and enforceable claim of the '802 patent.

103. Golabs and Walmart have not infringed and do not infringe any valid and enforceable claim of the '802 patent.

104. Claim 1 of the '802 patent recites, *inter alia*, a claim limitation of "an inner cover fixed between the top cover and the bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other" and another claim limitation of "a rotating mechanism fixed between the first inner cover and the second inner cover, the rotating mechanism having two bearings, a shaft sleeve, and two snap rings, the two bearings fixed to the first inner cover and the second inner cover, respectively, and the shaft sleeve fixed inside the two bearings and fixed to the inner cover via the two snap springs." Claim 1 of the '802 patent also recites, *inter alia*, "the bottom cover comprising a first bottom cover and a second bottom cover disposed symmetrically…." The remaining claims, claims 2-16, all depend from claim 1, and thus also require these claim limitations.

105. The accused Golabs's Hoverfly Eco, Hoverfly XL, Hoverfly Ion, SRX and SRX Pro hoverboards do not meet at least these claim limitations and thus do not infringe any claim of the '802 patent.

106. Labelled photographs showing the design of the internal frame of each of the accused Golabs's Hoverfly Eco (**Exhibit 7**), Hoverfly XL (**Exhibit 8**), Hoverfly Ion (**Exhibit 9**), SRX (**Exhibit 10**) and SRX Pro (**Exhibit 11**) hoverboards are appended hereto.

107.   As shown by the labelled photographs of the accused Golabs's Hoverfly Eco (**Exhibit 7**), Hoverfly XL (**Exhibit 8**), Hoverfly Ion (**Exhibit 9**), SRX (**Exhibit 10**) and SRX Pro (**Exhibit 11**), in accordance with machine specifications, each of the accused products does not contain bearings, but rather contains a thrust washer which is not fixed to an inner cover and two snap rings that are also not fixed to an inner cover in the accused  products.  Therefore, each of the accused products does not have the claimed "rotating mechanism" because the rotating structure of each accused product is very different from the claimed "rotating mechanism" consisting of two bearings, a shaft sleeve and two snap rings, wherein the two bearings are fixed to the inner ends of the first inner cover and second inner cover, respectively, and the shaft sleeve is fixed inside the two bearings and is fixed to the inner cover via the two snap rings.  For at least these reasons alone, the accused products do not infringe any claim of the '802 patent.

108.   Additionally, the left and right sides of the inner cover are not "disposed symmetrically" as required by each of the '802 patent claims, at least because the shaft sleeve is press fit within the inner frame of one side of the inner cover and presses against a bushing within the opposite side of the inner cover. The left and right sides of the bottom cover are also not "disposed symmetrically" as required by each of the '802 patent claims, at least because only one side has cutouts for the power button and the charging port.   For at least these reasons alone, each accused product does not infringe any claim of the '802 patent.

109.   The Golabs's Hoverfly Eco, Hoverfly XL, Hoverfly Ion, SRX and SRX Pro hoverboards also do not infringe and have not infringed any claim of the '802 patent because the claims are

invalid and/or unenforceable for inequitable conduct. Golabs and Walmart incorporate by reference as though fully stated herein paragraphs 67-106 of their Affirmative Defenses and paragraphs 151-193 of these Counterclaims that the '802 patent claims are invalid and unenforceable for inequitable conduct.

110. Moreover, at least Golabs's Hoverfly Eco and Hoverfly XL hoverboards do not infringe the '802 patent, because they were manufactured by Zhejiang taotao vehicle Ltd. who compensated Hanzhou Chic for the manufacture of those products under a patent license from Hangzhou Chic for the '802 patent.

111. Accordingly, Golabs and Walmart seek a judgment declaring that they do not infringe and have not infringed any claim of the '802 patent.

## EIGHTH COUNTERCLAIM : DECLARATORY JUDGMENT OF

## NONINFRINGEMENT OF U.S. PATENT NO. D737,723

112. Golabs and Walmart incorporate by reference paragraphs 1 through 111 as though fully stated herein.

113. Plaintiffs and Counterdefendants have only asserted the D'723 patent against Golabs's Hoverfly Eco hoverboard. Plaintiffs and Counterdefendants maintain—and Golabs and Walmart deny—that Golabs's and Walmart's use, sale, offer for sale, marketing, or importation of the Hoverfly Eco hoverboards constitute infringement of the D'723 patent.

114. There is an actual controversy between Golabs and Walmart on the one hand, and Plaintiffs and Counterdefendants on the other, as to whether the accused Golabs's Hoverfly Eco product infringes the D'723 patent.

115. Golabs and Walmart have not infringed and do not infringe the D'723 patent.

116.  As a general background, there were many similar designs in the field of the self-balancing vehicle.  For example, according to a video posted on YouTube on February 10, 2013, regarding the 2013 Toy Fair, at https://www.youtube.com/watch?v=w8rHKCjLAWI, and by a comment posted on a Kickstarter webpage no later than May 4, 2013, at:

https://www.kickstarter.com/projects/687658339/hovertrax/comments,  there  was  a  hoverboard called "Hovertrax" shown below:



117.  Hangzhou Chic itself also obtained two design patents, the D'723 patent and U.S. Patent No. D738,256 ("the D'256 patent"), as shown below:



118. The same Patent Examiner examined and allowed both the D'723 patent and the D'256 patent without issuing any double patenting rejection. In doing so, the Patent Examiner must have found that the designs of these two patents are patently distinct and not substantially similar.

119. Plaintiffs and Counterdefendants did not allege that Golabs's Hoverfly Eco hoverboard infringes the D'256 patent.

120. In view of the prior art and similar designs in the field, an ordinary observer, giving such attention as a purchaser usually gives, would find that Golabs's Hoverfly Eco hoverboard is not substantially similar to the claimed design of the D'723 patent.

121. As shown below, the Golabs's Hoverfly Eco hoverboard does not infringe the D'723 patent, because both the overall appearance and several elements of the Hoverfly Eco are

substantially different from the patented design, including its thread patterns and the size, shape and texture of its footpads, the fact that its footpads do not extend all the way to the wheel guards but rather end before the wheel guards and are moved in toward the center, its connecting portion, its LED light placement and shape, its wheel guards, its wheel threads, its overall body shape and size, and it does not include a crease design at the base of the wheel guards or the patented IO shape on the footpads.  The design differences between the Golabs Hoverfly Eco hoverboard and the D'723 patent are more apparent than the design differences between the D'723 patent and the D'256 patent.





122.  The Supreme Court has long held that "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871).

123.  An ordinary observer, giving such attention as a purchaser usually gives, would not find that Golabs's Hoverfly Eco hoverboard is substantially similar to the claimed design of the D'723

patent and certainly would not be confused so that he or she would purchase Golabs's Hoverfly Eco hoverboard supposing it to be the claimed design of the D'723 patent.

124.    The Golabs Hoverfly Eco also do not infringe and have not infringed the claim of the D'723 patent because the claim is invalid and/or unenforceable for inequitable conduct.  Golabs and Walmart incorporate by reference as though fully stated herein paragraphs 67-106 of their Affirmative Defenses and paragraphs 194-203 of these Counterclaims that the D'723 patent claim is invalid and unenforceable for inequitable conduct.

125.  Moreover, Golabs Hoverfly Eco hoverboard does not infringe the D'723 patent because it was manufactured by Zhejiang taotao vehicle Ltd. who compensated Hanzhou Chic for the manufacture of this product under a patent license from Hangzhou Chic for the D'723 patent.

126.  Accordingly, Golabs and Walmart seek a judgment declaring that they do not infringe and have not infringed the D'723 patent.

## NINTH COUNTERCLAIM : DECLARATORY JUDGMENT OF INVALIDITY Of U.S. PATENT NO. 9,376,155

127.  Golabs and Walmart incorporate by reference paragraphs 1 through 126 as though fully stated herein.

128.  Plaintiffs and Counterdefendants maintain—and Golabs and Walmart deny—that the claims of the '155 patent are valid.

129.  There is an actual controversy between Golabs and Walmart on the one hand, and Plaintiffs and Counterdefendants on the other, as to the invalidity of the '155 patent.

130.  The '155 patent, and all of its claims, are invalid for failure to comply with one or more of the requirements of patentability set forth in Title 35 of the United States Code or the rules,

regulations, and laws related thereto, including without limitation the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

131.  For example, all claims of the '155 patent are invalid as being anticipated or rendered obvious by the "Hovertrax" publicly disclosed by Shane Chen and his company Inventist, Inc. in the United States more than one year before the effective filing date of the '155 patent.

132.  As explained earlier, the Hovertrax was shown in a video posted on YouTube on February 10, 2013, regarding the 2013 Annual American International Toy Fair, at https://www.youtube.com/watch?v=w8rHKCjLAWI, and referenced on Mr. Chen's Kickstarter webpage no later than May 4, 2013, at:

https://www.kickstarter.com/projects/687658339/hovertrax/comments.

133.  In an interview published in a Chinese-language newspaper, Sino US Times, on January 26, 2016, available on Chic's website at http://www.chic robot.com/index.php/news/info/54, Chic's Chair and General Manager, Jiawei Ying, who is listed as a co-inventor of the '155, '802 and D'723 patents, stated that Mr. Chen copied Chic's design in 2013.  Specifically, Mr. Ying claimed that Mr. Chen's product "was originated from us [Chic]" in the same interview.  Indeed, on information and belief, the Hovertrax contains all of the claim limitations of claim 1 of the '155 patent and thus anticipates at least claim 1 of the '155 patent, which has a priority date of June 13, 2014, more than a year after the Hovertrax was made public.

134.  As another example, all claims of the '155 patent are invalid as being obvious over Chinese patent applications CN 203158157U and CN 203381739U for similar reasons stated in the rejections of the Chinese Patent Office regarding the Chinese counterpart application to which the '155 patent claims priority.  Hanzhou Chic has since withdrawn and abandoned the Chinese counterpart application.

135.  Accordingly, Golabs and Walmart seek a judgment declaring that the '155 patent, and all of its claims, are invalid.

## TENTH COUNTERCLAIM : DECLARATORY JUDGMENT OF INVALIDITY Of U.S. PATENT NO. 9,452,802

136.  Golabs and Walmart incorporate by reference paragraphs 1 through 135 as though fully stated herein.

137.  Plaintiffs and Counterdefendants maintain—and Golabs and Walmart deny—that the claims of the '802 patent are valid.

138.  There is an actual controversy between Golabs and Walmart on the one hand, and Plaintiffs and Counterdefendants on the other, as to the invalidity of the '802 patent.

139.  The '802 patent, and all of its claims, are invalid for failure to comply with one or more of the requirements of patentability set forth in Title 35 of the United States Code or the rules, regulations, and laws related thereto, including without limitation the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

140.  The application that issued as the '802 patent is a continuation of the application that issued as the '155 patent, and includes the same disclosure and priority date.  For that reason some of the same reasons that establish the invalidity of the claims of the '155 patent also apply to the claims of the '802 patent.  For example, all claims of the '802 patent are invalid as being anticipated or rendered obvious by the "Hovertrax" publicly disclosed by Shane Chen and his company Inventist, Inc. in the United States more than one year before the effective filing date of the '802 patent.

141.  As explained earlier, the Hovertrax was shown in a video posted on YouTube on February 10, 2013, regarding the 2013 Annual American International Toy Fair, at

https://www.youtube.com/watch?v=w8rHKCjLAWI, and by reference on Mr. Chen's Kickstarter webpage no later than May 4, 2013, at:

https://www.kickstarter.com/projects/687658339/hovertrax/comments.

142.  In an interview published in a Chinese-language newspaper, Sino US Times, on January 26, 2016, available on Chic's website at http://www.chic robot.com/index.php/news/info/54, Chic's Chair and General Manager, Jiawei Ying, who is listed as a co-inventor of the '155, '802 and D'723 patents, stated that Mr. Chen copied Chic's design in 2013.  Specifically, Mr. Ying claimed that Mr. Chen's product "was originated from us [Chic]" in the same interview.  Indeed, on information and belief, the Hovertrax contains all of the claim limitations of claim 1 of the '802 patent and thus anticipates at least claim 1 of the '802 patent, which has a priority date of June 13, 2014, more than a year after the Hovertrax was made public.

143.  As another example, all claims of the '802 patent are invalid as being obvious over Chinese patent applications CN 203158157U and CN 203381739U for similar reasons stated in the rejections of the Chinese Patent Office regarding the Chinese counterpart application to which the '802 patent claims priority.  Hanzhou Chic has since withdrawn and abandoned the Chinese counterpart application.

144.  Accordingly, Golabs and Walmart seek a judgment declaring that the '802 patent, and all of its claims, are invalid.

## ELEVENTH COUNTERCLAIM – DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. D737,723

145.  Golabs and Walmart incorporate by reference paragraphs 1 through 144 as though fully stated herein.

146. Plaintiffs and Counterdefendants maintain—and Golabs and Walmart deny—that the D'723 patent is valid.

147. There is an actual controversy between Golabs and Walmart on the one hand, and Plaintiffs and Counterdefendants on the other, as to the invalidity of the D'723 patent.

148. The D'723 patent is invalid for failure to comply with one or more of the requirements of patentability set forth in Title 35 of the United States Code or the rules, regulations, and laws related thereto, including without limitation the requirements of 35 U.S.C. §§ 101, 102, 103, 112 and/or 171.

149. For example, the D'723 patent is invalid for improper inventorship. The D'723 patent lists Mr. Ying and Shaojun Cao as co-inventors. Upon information and belief, Mr. Cao is not an inventor of the D'723 patent. Specifically, the Chinese counterpart application that the D'723 patent claims priority to lists Mr. Ying as the sole inventor.

150. Accordingly, Golabs and Walmart seek a judgment declaring that the D'723 patent is invalid.

## TWELFTH COUNTERCLAIM – DECLARATORY JUDGMENT OF UNENFORCEABILITY OF U.S. PATENT NO. 9,376,155

151. Golabs and Walmart incorporate by reference paragraphs 1 through 150 as though fully stated herein.

152. Plaintiffs and Counterdefendants maintain—and Golabs and Walmart deny—that the claims of the '155 patent are enforceable.

153. There is an actual controversy between Golabs and Walmart on the one hand, and Plaintiffs and Counterdefendants on the other, as to the unenforceability of the '155 patent.

154.  The '155 patent is unenforceable under the doctrine of inequitable conduct because Mr. Ying committed fraud before the United States Patent and Trademark Office ("USPTO") during the prosecution of the '155 patent to obtain patent issuance.

155.  During prosecution of the '155 application, Mr. Ying breached his duty of candor to the USPTO by:  (1) misrepresenting the prior art and (2) intentionally withholding material information by (a) not disclosing a prior art "Hovertrax" prototype and (b) not disclosing the Chinese Patent Office's rejection of his corresponding Chinese priority application.  The Patent Examiner would not have allowed the '155 application if he was aware of any of these three pieces of material information.

### Misrepresentation Regarding '278 Patent Prior Art

156.  Shane Chen is the inventor of the hoverboard.  He was issued the hoverboard patent - U.S. Patent No. 8,738,278 (the "'278 patent") - based on a provisional application that he filed on February 12, 2012.  He displayed prototypes of his invention at a toy fair in New York in February 2012 and again in February 2013.  He disclosed information about his invention in a Kickstarter fundraising campaign beginning in April 2013.  Mr. Ying's '155 patent application was filed much later on June 13, 2014.  Mr. Ying knew about Mr. Chen's invention and failed to accurately and fully disclose what he knew to the USPTO to mislead the USPTO into issuing the '155 patent.

157.  The '278 patent, among other things, claims a two-wheel, self¬balancing vehicle with two foot placement sections that are "rotatably coupled."  The '278 patent is prior art to the '155 patent and is disclosed in the '155 patent application.  Even though the '278 patent claims and discloses "rotatably coupled" foot placement sections, Mr.Ying in the '155 patent application falsely stated that the foot platforms of existing prior art balance vehicles "cannot rotate relatively" and "[t]herefore, the user cannot control the balance vehicle merely through the feet." '155: Col.1; lns.

23-27.  But Mr. Ying knew that statement was not true, since he knew about Shane Chen's hoverboard which did exactly that - it allowed relative rotation of the foot platforms permitting user control of the balance vehicle "merely through the feet."  This misrepresentation was material because the Examiner focused on the issue of the two platforms being "rotatable relative to each other" in the '155 patent and he would not have allowed the patent otherwise.  Attached as Exhibit _ is a copy of the USPTO Notice of Allowance and Fee(s) Due for the '155 application which includes the Examiner's Reasons for Allowance.  But for the misrepresentation, the '155 patent would not have issued.

158.  The '155 application  was filed in the USPTO on December 9, 2015 in a national stage of a PCT application filed on December 2, 2014.  The '155 application claims priority to a Chinese patent application 201410262353 ("the CN '353 application") filed on June 13, 2014.  The CN '353 application therefore describes the same alleged invention as the '155 application.

159.  During the prosecution of the '155 patent, Mr. Ying, as a listed inventor and representative of the applicant Hangzhou Chic, had a duty of candor and was obligated to disclose material information to the Patent Examiner.  In an interview published on March 18, 2016 on a Chinese website, available at http://www.aiweibang.com/yuedu/98972239.html, according to a translation, Mr. Ying acknowledged this duty: "As required by U.S. law, if you want to apply for a patent in the U.S. Patent Office, you need to tell the U.S. Patent Office whether there were similar patented technologies in other countries prior to your invention.  A patent must have characteristics not present in similar patented technologies; or else the patent may be invalidated."

## HOVERTRAX PROTOTYPE

### The Hovertrax Prototype Was Material To The Patentability Of The '155 Patent

160.  As explained above, Mr. Ying knew Mr. Chen's invention claims "rotatably-coupled" foot placement sections but falsely claimed otherwise.  Compounding this misrepresentation was a failure to disclose information about the prototype hoverboards disclosed by Mr. Chen in 2012, 2013, and in connection with his Kickstarter campaign.

161.  Mr. Ying failed to disclose to the USPTO, with the intent to deceive, that Mr. Chen had publicly disclosed a prototype of a hoverboard called "Hovertrax" in the United States more than one year before the effective filing date of the '155 patent.

162.  Mr. Chen introduced the Hovertrax at the February 2012 Annual American International Toy Fair in New York City and again the following year at the February 2013 Annual American International Toy Fair.  After receiving interest in the Hovertrax, Mr. Chen launched a Kickstarter campaign in April 2013 to raise funding to further develop and to commercialize the Hovertrax.

163.  This timeline is supported by a video posted on YouTube on February 10, 2013, regarding the 2013 Toy Fair, at https://www.youtube.com/watch?v=w8rHKCjLAWI, and the timeline on Chen's Kickstarter webpage, at:

https://www.kickstarter.com/projects/687658339/hovertrax/updates.   Mr. Chen's Kickstarter webpage shows the prototype as follows:



164.  Mr. Chen's Kickstarter page also contains a 2013 video of the Hovertrax prototype in use, at https://www.kickstarter.com/projects/687658339/hovertrax/description.

165.  On May 27, 2014, the USPTO issued the '278 patent to Mr. Chen.  The '278 patent, issued two years before the '155 patent, contains similarities to the '155 patent.  For example, claim 1 of the '278 patent describes "A two-wheel, self-balancing vehicle device, comprising: a first foot placement section and a second foot placement section that are coupled to one another and are independently movable with respect to one another."  Similarly, claim 1 of the '155 patent describes "An electric balance vehicle, comprising: . . . a first top cover and a second top cover disposed symmetrically and rotatable relative to one another."  Claim 1 of both patents also recites parallel wheels on each side of the platforms, motors fixed to each wheel, sensors under each foot platform, and a control system that communicates between the sensors, motors, and wheels to make the device drive.  Claim 2 of the '278 patent is a dependent from claim 1 and recites "wherein the first foot placement section and the second foot placement section are rotatably coupled to one another."

166.  Kevin Hurley, Primary Examiner, Art Unit 3611, of the '155 patent application stated the following in the April 12, 2016 Examiner's Statement of Reasons for Allowance attached to the Notice of Allowance (with emphasis added) (**Exhibit 1**):

> The reason for the allowance of claim 1 is that the prior art fails to disclose an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover, respectively.

167.  The Hovertrax prototype embodies all of the features of the '278 and '155 patents.  Like the claims of the '278 and '155 patents, the Hovertrax is comprised of two independently movable foot platforms, wheels, motors, sensors, and a control system that allows for self-balancing.

168.  The Hovertrax Kickstarter webpage has prominently displayed photos, video, schematics, and a narrative description of the Hovertrax prototype, as seen at https://www.kickstarter.com/projects/687658339/hovertrax/description.  This webpage originated in and is accessible in the United States.  Thus, these photographs, videos, and schematics constitute a public display of the prototype in the United States.  Attached as **Exhibit 7** is a screenshot of the Hovertrax Kickstarter webpage as it appeared on May 4, 2013.

169.  Mr. Chen's Kickstarter page shows a computer aided design of the Hovertrax while in development as follows:



170. The webpage also displays a 3D rendering of the Hovertrax as follows:



171. These images, which have been available on the webpage since 2013, show that the Hovertrax prototype contains an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and

rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover, respectively.





172. These features are material because the very basis for Examiner Hurley's determination that the '155 application was not obvious over the prior art was the incorrect belief that prior art did not contain the "inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other." Had Mr. Ying disclosed the Hovertrax prototype or drawings or pictures of the prototype, the Examiner would have seen that a product publicly displayed more than a year prior to the '155 application contained an inner cover.  As a result, the Examiner would have denied the '155 application as obvious over the prior art.  But for Mr. Ying's failure to disclose the Hovertrax product, the Examiner would not have issued the '155 patent.

173.   The Hovertrax prototype is not cumulative of the '278 patent because it provides additional detail.  Even though the prototype practices the '278 patent, it also contains the inner cover features described above which are not explicitly disclosed in the '278 patent.  This non-cumulative portion of the prototype is therefore material.

174.   The Hovertrax prototype is also not cumulative of the '278 patent because it is not subject to any of the exceptions set forth in 35 U.S.C. § 102(b) that could theoretically remove the '278 patent as prior art.  The '155 patent claims an earliest effective priority date of June 13, 2014.  The public use or sale of the Hovertrax prototype at the New York toys fair in February 2012 and February 2013, and in the Hovertrax Kickstarter page in March 2013, are prior art to the '155 patent under 35 U.S.C. §102(a)(1).  Because all of those dates are more than a year before the earliest effective filing date claimed by the '155 patent, the Section 102(b)(1) exception for disclosures made less than a year before the effective filing date of a patent does not apply.  Nor do the exceptions of Section 102(b)(2), which apply only to patents cited as prior art.  Thus, Plaintiffs and Counterdefendants cannot remove the Hovertrax prototype as prior art.  In contrast, if the '278

patent (issued May 27, 2014) is cited as prior art under Section 102(a)(1), the less than one year exception of Section 102(b)(1) might apply if Plaintiffs and Counterdefendants could prove that Mr. Chen obtained the subject matter from Mr. Ying. Similarly, if the '278 patent is cited as prior art under Section 102(a)(2), it could potentially be removed as a reference pursuant to Section 102(b)(2) if Plaintiffs and Counterdefendants could prove that Mr. Chen obtained the subject matter from Mr. Ying or that the '278 and '155 patent applications were commonly owned. However, on information and belief, Mr. Chen did not obtain the subject matter from Mr. Ying; rather Mr. Ying obtained the subject matter from Mr. Chen and the patent applications are not commonly owned.

### Mr. Ying Knew Of The Hovertrax Prototype, Knew It Was Material, And Made A Deliberate Decision To Withhold It From The USPTO

175. Mr. Ying knew of the Hovertrax prototype and the material information contained therein before the '155 patent issued. Mr. Chen (along with his licensee Razor) filed a First Amended Complaint against Hanzhou Chic and other respondents with the United States International Trade Commission ("ITC") in Inv. No. 337-TA-1000, Certain Motorized Self-Balancing Vehicles ("ITC 1000"), on March 21, 2016. Paragraph 56 of the First Amended Complaint states:

> Mr. Chen introduced the Hovertrax at the February 2012 Annual American International Toy Fair in New York City and again the following year at the February 2013 Annual American International Toy Fair. After receiving significant interest in the Hovertrax at the New York Toy Fair, Mr. Chen and Inventist launched a Kickstarter campaign in April 2013 to raise funding to support the further development and commercialization of the Hovertrax.

176. Mr.Ying was aware of this allegation as demonstrated by the fact that he verified  Hanzhou Chic's response to the ITC First Amended Complaint on June 15, 2016.

177. Mr. Ying was aware of the Hovertrax Kickstarter page and the Hovertrax prototype. The Kickstarter page clearly shows that the Hovertrax prototype contains features similar to those

accused of infringement in this case, including what Hanzhou Chic has characterized as an inner cover fixed between a top cover and a bottom cover, the inner cover comprising a first inner cover and a second inner cover disposed symmetrically and rotatable relative to each other; a rotating mechanism fixed between the first inner cover and the second inner cover; and two wheels rotatably fixed at two sides of the inner cover.

178.  Mr. Ying was also familiar with Mr. Chen's Hovertrax product independently of the ITC First Amended Complaint.  In an interview published in a Chinese-language newspaper, Sino US Times, on January 26, 2016, available on Hanzhou Chic's website at http://www.chic-robot.com/index.php/news/info/54, Mr. Ying stated that he believed Mr. Chen copied Hangzhou Chic's design in 2013 (which was before Mr. Ying filed his own application and after Mr. Chen filed his application).  Specifically, Mr. Ying claimed, based on a translation, that Mr. Chen's product "was originated from us [Chic]." Thus, Mr. Ying was familiar with Mr.  Chen's Hovertrax and recognized that it contained the same features as in the '155 application.

179.  Mr. Ying had met Mr. Chen and discussed Mr. Chen's invention.  They were not strangers.

180.  In addition to knowing that the prototype contained an inner cover, Mr. Ying was aware that the Hovertrax prototype was first displayed in February 2012, and thus, cannot be removed as prior art, while the '278 patent can theoretically only be removed as prior art under the Section 102(b)(1) and 102(b)(2) exceptions, if Mr. Chen obtained the subject matter from Mr. Ying or the '155 and '278 patent applications were commonly owned, which, on information and belief is not the case in both instances.

181.  Even though Mr. Ying was aware of Mr. Chen's Hovertrax prototype and its public use in the United States, he failed to disclose it to the USPTO during prosecution of the '155 patent.  Mr.

Ying was aware, as of April 12, 2016, that the patentability of the '155 patent was reliant on the Examiner's conclusion that the prior art failed to disclose an inner cover and rotatable coupling.

182.  When Mr. Ying became aware of the Hovertrax Kickstarter, he would have easily been able to recognize that disclosing the Hovertrax prototype would preclude Hangzhou Chic from securing the '155 patent.  As a result, Mr. Ying deliberately chose not to disclose the patent and allowed the Examiner to base his determination on incomplete information.  Further, Mr. Ying's affirmative misrepresentation of the prior art demonstrates Mr. Ying's intent to mislead the USPTO.

## REJECTION OF CN '353 APPLICATION CLAIMS

### Rejection Of CN '353 App Claims Was Material To The Patentability Of The '155 Patent

183.  Mr. Ying also failed to disclose to the USPTO, with the intent to deceive, that Mr. Ying and Hangzhou Chic had withdrawn and abandoned the CN '353 application on or before September 2, 2015, after the Chinese Patent Office rejected the claims of the CN '353 application as being obvious over prior art Chinese patent application nos. CN 203158157U and CN 203381739U around April 2015.

184.  Although Mr. Ying disclosed CN 203158157U and CN 203381739U to the USPTO, the rejection itself is also material because the CN '353 application is the priority application of the '155 application and has the same disclosure, and thus, is  not cumulative to the prior art on which the rejection is made.  *McKesson Info. Sols., Inc. v. Bridge Med., Inc*., 487 F.3d 897, 919 (Fed. Cir. 2007).  The Examiner would not have allowed the '155 application if he had known of the Chinese Patent Office's claim rejections and the reasons stated therein.

## Mr. Ying Knew Of The Rejection Of CN '353 App Claims, Knew It Was  Material, And Made A Deliberate Decision To Withhold It From The USPTO

185.  Mr. Ying intentionally withheld the Chinese Patent Office's claim rejections with the intent to deceive the USPTO.  Mr. Ying and Hangzhou Chic made references to the CN '353 application throughout the prosecution of the '155 application.  In fact, Mr. Ying relied on the CN '353 application as a priority date for the '155 application and to seek participation in the Patent Prosecution Highway for the '155 application.  For these reasons, and because Mr. Ying was a named inventor on the CN '353 application, Mr. Ying knew about the Chinese Patent Office's claim rejections.

186.   Mr. Ying made misrepresentations to the USPTO, and failed to disclose material information, with the intent to deceive.  But for Mr. Ying's misrepresentations and nondisclosure of material information, the USPTO would not have issued the '155 patent.

187.   Because Mr. Ying obtained the '155 patent by committing fraud before the USPTO, the '155 patent is unenforceable under the doctrine of inequitable conduct.

188.   Accordingly, Golabs and Walmart seek a judgment declaring that the '155 patent is unenforceable due to inequitable conduct.  Golabs and Walmart  reserve the right to seek attorneys' fees and costs against Plaintiffs and Counterdefentants for asserting the fraudulently obtained patents in this lawsuit in bad faith.

## THIRTEENTH COUNTERCLAIM – DECLARATORY JUDGMENT OF UNENFORCEABILITY OF U.S. PATENT NO. 9,452,802

189.  Golabs and Walmart incorporate by reference paragraphs 161 through 188 of their Twelfth Counterclaim – Declaratory Judgment of Unenforceability of U.S. Patent No. 9,376,155 as though fully stated herein.

190.  Plaintiffs and Counterdefendants maintain—and Golabs and Walmart deny—that the claims of the '802 patent are enforceable.

191.  There is an actual controversy between Golabs and Walmart on the one hand, and Plaintiffs and Counterdefendants on the other, as to the unenforceability of the '802 patent.

192.  The application that issued as the '802 patent ("the '802 application") is a continuation of '155 application, names the same inventors Messrs. Ying and Cao as the '155 application, includes the same prosecution history as the '155 application and claims priority to the same CN '353 application.  Because the '802 application is a continuation of the '155 application, the '802 patent is unenforceable under the same grounds of inequitable conduct that apply to the parent '155 patent under the doctrine of infectious unenforceability.  *See, e.g., Nilssen v. Osram Sylvania,* 504 F.3d 1223 (Fed. Cir. 2007) (inequitable conduct with respect to one or more patents in a family can infect related applications).  The '802 patent is unenforceable under the doctrine of inequitable conduct because Mr. Ying committed fraud before the United States Patent and Trademark Office ("USPTO") during prosecution of the '802 patent to obtain patent issuance for the same reasons discussed in connection with Golab's and Walmart's Twelfth Counterclaim -- Declaratory Judgment of Unenforceability of U.S. Patent No. 9,376,155, incorporated herein by reference.

193.  Accordingly, Golabs and Walmart seek a judgment declaring that the '802 patent is unenforceable due to inequitable conduct.  Golabs and Walmart reserve the right to seek attorneys' fees and costs against Plaintiffs and Counterdefendants for asserting the fraudulently obtained patents in this lawsuit in bad faith.

## FOURTEENTH COUNTERCLAIM – DECLARATORY JUDGMENT OF

## UNENFORCEABILITY OF U.S. PATENT NO. D737,723

194.  Golabs and Walmart  incorporate by reference paragraphs 1 through 193 as though fully stated herein.

195.  Plaintiffs and Counterdefendants maintain—and Golabs and Walmart deny—that the D'723 patent is enforceable.

196.  There is an actual controversy between Golabs and Walmart on the one hand, and Plaintiffs and Counterdefendants  on the other, as to the unenforceability of the D'723 patent.

197.  The D'723 patent is unenforceable under the doctrine of inequitable conduct because Mr. Ying committed fraud before the United States Patent and Trademark Office ("USPTO") during the prosecution of the D'723 patent to obtain patent issuance.

198.  During the prosecution of the D'723 patent, Mr. Ying, as a listed inventor and representative of the applicant Hanzhou Chic, had a duty of candor and was obligated to disclose material information to the Patent Examiner.  Mr. Ying was fully aware of this duty of candor.  In an interview published on March 18, 2016 on a Chinese website, available at http://www.aiweibang.com/yuedu/98972239.html, Mr. Ying acknowledged this duty:  "As required by U.S. law, if you want to apply for a patent in the U.S. Patent Office, you need to tell the U.S. Patent Office whether there were similar patented technologies in other countries prior to your invention.  A patent must have characteristics not present in similar patented technologies; or else the patent may be invalidated."

199.  Yet, Mr. Ying failed to disclose material information, as further elaborated below, to the USPTO with the intent to deceive.  But for Mr. Ying's nondisclosure of material information, the USPTO would have not issued the D'723 patent.

200.  The application issued as the D'723 patent ("the D'723 application") was filed in the United States on December 15, 2014, claiming priority to a Chinese patent application 201430180556 ("the CN '556 application") filed on June 13, 2014.  In other words, the CN '556 application describes the same invention as the D'723 application.

201.  During prosecution of the D'723 patent, despite being fully aware of his duty of candor, Mr. Ying breached his duty of candor to the USPTO by intentionally withholding that he was listed as the sole inventor on the CN '556 application.  Instead, Mr. Ying and Mr. Shaojun Cao affirmatively declared that each is "an original joint inventor of a claimed invention in the application" on December 10, 2014.  Mr. Ying's and Mr. Cao's declarations are contradicted by the inventorship on the CN '556 App, which describes the same invention.  The Patent Examiner would not have allowed the D'723 patent if he had known of this inventorship issue because a patent is invalid if it has improper inventorship.

202.  Because Mr. Ying obtained the D'723 patent by committing fraud before the USPTO, the D'723 patent is unenforceable under the doctrine of inequitable conduct.

203.  Accordingly, Golabs and Walmart seek a judgment declaring that the D'723 patent is unenforceable due to inequitable conduct.  Golabs and Walmart reserve the right to seek attorneys' fees and costs against Plaintiffs and Countedefendants  for asserting the fraudulently obtained patents in this lawsuit in bad faith.

## PRAYER FOR RELIEF

WHEREFORE, Golabs and Walmart pray that this Court:

A.  Dismiss Plaintiffs' and Counterdefendants' Amended First Amended Complaint against Golabs and Walmart  with prejudice;

B.   Hold that Plaintiffs and Counterdefendants are not entitled to any relief, whether in law or equity or otherwise, from their suit against Golabs and Walmart;

C.   Declare that Golabs and Walmart have not infringed and do not infringe any claim of the '155, '802 and D'723 patents;

D.   Declare that the claims of the '155, '802 and D'723 patents are invalid;

E.   Declare that the '155, '802 and D'723 patents are unenforceable due to inequitable conduct;

F.   Permanently enjoin Plaintiffs and Counterdefendants, their successors and assigns, and anyone acting in concert therewith or on their behalf, from attempting to enforce the '155, '802 and D'723 patents against Golabs and Walmart or any parents, affiliates, or subsidiaries of Golabs and Walmart or their respective officers, agents, employees, successors, and assigns;

F. An award to Golabs and Walmart of compensatory damages and treble damages as provided by law;

G.   Disgorgement of Plaintiffs' and Counterdefendants' revenues or profits obtained by Plaintiffs and Counterdefendants as a result of Plaintiffs' and Counterdefendants' misconduct;

H.   Injunctive and other equitable relief requiring  Plaintiffs and Counterdefendants to take all necessary steps (1) to prevent further misrepresentations by Plaintiffs and Counterdefendants and any agents acting on their behalf, including but not limited to the misrepresentations to Amazon identified in the First through Third Counterclaims; (2) to correct any and all such misrepresentations already made; and (3) to prevent further harm to Golabs and Walmart as a result of Plaintiffs' and Counterdefendants' misconduct;

I.   Enter an order finding that this case is exceptional and awarding Golabs and Walmart their respective costs and expenses, including reasonable attorneys' fees, in accordance with the provisions of 35 U.S.C. § 285 or other statutes; and

J.   Award Golabs and Walmart any other relief, in law or in equity, to which the Court finds Golabs and Walmart are justly entitled.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Golabs and Walmart hereby demand a trial by jury on all issues that are triable of right to a jury in this action.

Dated: June 27, 2019

Respectfully submitted,

By: <u>*/s/ C. Michael Moore*</u>
Tony Pezzano
New York Bar No. 2315547
*Admitted Pro Hac Vice*
Michael Dougherty
New York Bar No. 2079945
*Pro Hac Vice Application Pending*
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 335-4500
Fax: (212) 335-4501
tony.pezzano@dlapiper.com
michael.dougherty@dlapiper.com

C. Michael Moore
Texas Bar No. 14323600
Marina Stefanova
Texas Bar No. 24093200
DLA Piper LLP (US)
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201
Telephone: (214) 743-4500
Facsimile:  (214) 743-4545
mike.moore@dlapiper.com
marina.stefanova@dlapiper.com

William Chu
Texas Bar No. 04241000
wmchulaw@aol.com
William Knisley
Texas Bar No. 24095728
knisley.wmchulaw@gmail.com
LAW OFFICES OF WILLIAM CHU
4455 LBJ Freeway, Suite. 1008
Dallas Texas, 75244
(Tel) 972-392-9888
(Fax) 972-392-9889

**ATTORNEYS FOR
DEFENDANTS GOLABS, INC.
d/b/a GOTRAX, WAL-MART
INC., WAL-MART STORES
TEXAS, LLC, AND WAL-
MART.COM USA LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on all

counsel of record on June 27, 2019 via the Court's ECF system, pursuant to the Federal Rules of

Civil Procedure.

*/s/ C. Michael Moore*
C. Michael Moore