# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNICORN GLOBAL, INC.,<br>HANGZHOU CHIC INTELLIGENT<br>TECHNOLOGY CO., LTD., AND<br>SHENZHEN UNI-SUN ELECTRONIC<br>CO., LTD., | §<br>§<br>§<br>§<br>§<br>§ | |
| | § | Civil Action No. 3:19-cv-00754 |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Jury Trial Demanded |
| GOLABS, INC. d/b/a GOTRAX, LLC,<br>WALMART INC., WAL-MART<br>STORES TEXAS, LLC, AND<br>WAL-MART.COM USA LLC, | §<br>§<br>§<br>§<br>§ | |
| Defendants. | § | |

## PLAINTIFFS/COUNTERDEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS AND BRIEF IN SUPPORT

Michael C. Wilson
mwilson@munckwilson.com
Texas Bar No. 21704590
S. Wallace Dunwoody
wdunwoody@munckwilson.com
Texas Bar No. 24040838
Kelly P. Chen
kchen@munckwilson.com
Texas Bar No. 24062664
**MUNCK WILSON MANDALA, LLP**
12770 Coit Road, Suite 600
Dallas, Texas 75251
Telephone: (972) 628-3600
Telecopier: (972) 628-3616

**ATTORNEYS FOR PLAINITFFS/
COUNTERDEFENDANTS**

## TABLE OF CONTENTS

I.   Introduction and Background ................................................................. 1

    A.   Nature of the Case ........................................................... 1

    B.   Defendants' Allegations Regarding "Bad Faith" ............................. 2

    C.   Patent Law Preemption and the *Noerr-Pennington* Doctrine ........................ 3

    D.   Tortious Interference with Contract ..................................... 4

    E.   Antitrust Allegations ........................................................ 4

II.   Arguments and Authorities ................................................................. 5

    A.   The pleading must allege facts showing a plausible claim for relief to avoid dismissal under Rule 12(b)(6) ................................................. 5

    B.   Defendants' inequitable conduct allegations do not support a reasonable inference that Mr. Ying knew of material information relevant to patentability, or that he withheld such information with intent to deceive. ........................................................ 5

        1.   Inequitable conduct is a serious charge requiring heightened pleadings. ...................................................... 5

        2.   Defendants' inequitable conduct counterclaim does not meet the *Exergen* and *Therasense* pleading standard. ....................... 7

    C.   Federal patent law and the *Noerr-Pennington* doctrine immunize patent owners from antitrust or tort liability for good faith assertions of patent rights. ...................................................................... 10

    D.   Defendants' tortious interference with contract claim fails because it does not allege an underlying breach of contract. ........................... 14

    E.   Defendants' antitrust claims fail to properly define the market or show a dangerous probability of attaining monopoly power. .......................... 15

III.   Conclusion ............................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800 Adept, Inc. v. Murex Sec., Ltd.,*
539 F.3d 1354 (Fed. Cir. 2008) ............................................................................12

*All Am. Tel., Inc. v. USLD Comm'ns, Inc.,*
291 S.W.3d 518 (Tex. App.—Fort Worth 2009, pet. denied) ..........................15

*Applera Corp. v. MJ Research Inc.,*
No. 98 Civ. 1201, 2004 WL 5683983 (D. Conn. Dec. 17, 2004) ......................18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................................5

*ATD Corp. v. Lydall, Inc.,*
159 F.3d 534 (Fed. Cir. 1998) ..............................................................................9

*Cedra Pharmacy Houston, LLC v. UnitedHealth Grp., Inc.,*
No. CV H-17-3800, 2019 WL 1433600 (S.D. Tex. Mar. 7, 2019) ....................19

*Clearplay, Inc. v. Nissim Corp.,*
555 F. Supp. 2d 1318 (S.D. Fla. 2008) ...............................................................14

*Coastal States Mktg., Inc. v. Hunt,*
694 F.2d 1358 (5th Cir. 1983) .............................................................................12

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.,*
944 F.2d 1525 (9th Cir. 1991) .............................................................................12

*Concrete Unlimited, Inc. v. Cementcraft, Inc.,*
776 F.2d 1537 (Fed. Cir. 1985) ...........................................................................11

*Delano Farms Co. v. Cal. Table Grape Comm'n,*
655 F.3d 1337 (Fed. Cir. 2011) .............................................................................7

*Dimmitt Agri Indus., Inc. v. CPC Int'l, Inc.,*
679 F.2d 516 (5th Cir. 1982) ...............................................................................16

*Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,*
732 F.2d 480 (5th Cir. 1984) ...............................................................................16

*Eagle Oil & Gas Co. v. TRO-X, L.P.,*
    416 S.W.3d 137 (Tex. App.—Eastland 2013, pet. denied)................................15

*El Paso Healthcare Sys. v. Murphy,*
    518 S.W.3d 412 (Tex. 2017)...........................................................................15

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009) .................................................................6, 7, 9

*Funes v. Villatoro,*
    352 S.W.3d 200 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) .........15

*Glass Equip. Dev., Inc. v. Besten, Inc.,*
    174 F.3d 1337 (Fed. Cir. 1999) ......................................................................12

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.,*
    362 F.3d 1367 (Fed. Cir. 2004) ......................................................................13

*Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.,*
    21 F.3d 1068 (Fed. Cir. 1994) ..........................................................................9

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,*
    488 F.3d 982 (Fed. Cir. 2007) ..........................................................................6

*In re Innovatio IP Ventures, LLC Patent Litig.,*
    921 F. Supp. 2d 903 (N.D. Ill. 2013)...............................................................14

*Islander Grp., Inc. v. Swimways Corp.,*
    954 F. Supp. 2d 1045 (D. Haw. 2013) .............................................................14

*John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.,*
    17 S.W.3d 721 (Tex. App.—Austin 2000, pet. denied) ...................................15

*Kingspan Insulated Panels, Inc. v. Centria, Inc.,*
    No. 1:15-CV-1023, 2016 U.S. Dist. LEXIS 102721 (W.D. Mich. Aug. 4,
    2016) ................................................................................................................14

*Mallinckrodt, Inc. v. Medipart, Inc.,*
    976 F.2d 700 (Fed. Cir. 1992) ........................................................................12

*Mary Kay, Inc. v. Dunlap,*
    No. 3:12-CV-0029-D, 2012 WL 2358082 (N.D. Tex. June 21, 2012) ...............19

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC,*
    695 F.3d 1322 (Fed. Cir. 2012) ......................................................................11

*McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*,
   01-18-00118-CV, 2018 WL 6377432 (Tex. App.—Houston [1st Dist.] Dec.
   6, 2018, no pet.) ...................................................................................................15

*McGuire Oil Co. v. Mapco, Inc.*,
   958 F.2d 1552 (11th Cir. 1992) ...........................................................................12

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011)................................................................................................13

*MicroUnity Sys. Eng'g, Inc. v. Acer Inc.*,
   2:10-CV-91-LED-RSP, 2012 WL 12892903 (E.D. Tex. Aug. 29, 2012) ..............8

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
   165 F.3d 891 (Fed. Cir. 1998) .......................................................................11, 12

*Molins PLC v. Textron, Inc.*,
   48 F.3d 1172 (Fed. Cir. 1995) ...............................................................................9

*N.Y. Life Ins. Co. v. Miller*,
   114 S.W.3d 114 (Tex. App.—Austin 2003, no pet.) ...........................................15

*Primetime 24 Joint Venture v. Nat'l Broad. Co.*,
   219 F.3d 92 (2d Cir. 2000) ...................................................................................12

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993)................................................................................................13

*Rimkus Consulting Grp., Inc. v. Cammarata*,
   688 F. Supp. 2d 598 (S.D. Tex. 2010) .................................................................15

*Sanitec Indus. Inc. v. Micro-Waste Corp.*,
   No. CV H-04-3066, 2005 WL 8168876 (S.D. Tex. June 15, 2005).....................14

*Serafine v. Blunt*,
   466 S.W.3d 352 (Tex. App.—Austin 2015, no pet.)............................................15

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ...............................................................................12

*Spectrum Sports v. McQuillan*,
   506 U.S. 447 (1993)..............................................................................................16

*Therasense, Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) .............................................................5, 6, 7, 10

*Tristar Inv'rs, Inc. v. Am. Tower Corp.*,
  No. 3:12-CV-0499-M, 2014 WL 1327663 (N.D. Tex. Apr. 3, 2014) .................................19

*U.S. Nutraceuticals, LLC v. Cyanotech Corp.*,
  No. 5:12-cv-366-Oc-10PRL, 2014 U.S. Dist. LEXIS 36009 (M.D. Fla. Mar.
  19, 2014) ................................................................................................................14

*Van Der Linden v. Khan*,
  535 S.W.3d 179 (Tex. App.—Fort Worth 2017, pet. denied) ...........................................15

*Virtue v. Creamery Package Mfg. Co.*,
  227 U.S. 8 (1913) ....................................................................................................11

*Wickfire, LLC v. Trimax Media, Inc.*,
  No. A-14-CA-34-SS, 2016 WL 4119917 (W.D. Tex. Mar. 25, 2016) ................................18

**Statutes**

15 U.S.C. § 2 .................................................................................................4, 15, 18, 19

35 U.S.C. § 103 ...........................................................................................................9

35 U.S.C. § 256 .........................................................................................................10

35 U.S.C. § 281 .........................................................................................................12

35 U.S.C. § 282(a) .....................................................................................................13

35 U.S.C. § 287(a) .....................................................................................................11

**Other Authorities**

Fᴇᴅ. R. Cɪᴠ. P. 8(a)(2) ................................................................................................5

Fᴇᴅ. R. Cɪᴠ. P. 9(b) ...................................................................................................6

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6) ......................................................................................1, 5, 20

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs/Counter-defendants Unicorn Global, Inc. ("Unicorn"), Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic"), and Shenzhen Uni-Sun Electronic Co., Ltd. ("Uni-Sun") (collectively, "Plaintiffs" or "Counter-defendants") move to dismiss eight counterclaims asserted in the Answer, Affirmative Defenses and Counterclaims [D.I. 36] filed by Golabs, Inc. d/b/a GOTRAX ("Golabs" or "GOTRAX"), Wal-mart Stores Texas, LLC, and Wal-Mart.com USA LLC ("Walmart," for the latter two) (collectively "Defendants" or "Counterclaimants").

## I.   INTRODUCTION AND BACKGROUND

### A.   Nature of the Case

Plaintiffs brought suit against Defendants alleging infringement of U.S. Patent Nos. 9,376,155 (the "'155 Patent"), 9,452,802 (the "'802 Patent"), and D737,723 (the "'723 Patent") (collectively, the "Asserted Patents"), which are directed to electric balance vehicles commonly referred to as "hoverboards." [D.I. 12 ¶¶ 38-62].

On June 27, 2019, Golabs and Walmart filed their Answer and asserted fourteen Counterclaims. [D.I. 36]. The counterclaims subject to this motion to dismiss are the Lanham Act claim [D.I. 36 ¶¶ 46-49]; the common law unfair competition claim [D.I. 36 ¶¶ 50-55]; the tortious interference with contract claim [D.I. 36 ¶¶ 56-61]; the *Walker Process* antitrust claim [D.I. 36 ¶¶ 62-75]; the sham litigation antitrust claim [D.I. 36 ¶¶ 76-86]; and the three inequitable conduct claims [D.I. 36 ¶¶ 151-203].

**B.      Defendants' Allegations Regarding "Bad Faith"**

Defendants' counterclaims are a desperate effort to complicate an otherwise straightforward patent case. The crux of Defendants' argument is that Plaintiffs should not be allowed to assert their patent rights. That conclusion hinges on allegations that inventor Ying committed inequitable conduct by failing to disclose information concerning (1) a prototype created by Shane Chen; (2) the rejection of a Chinese patent application; and (3) inventorship of a Chinese patent application. [D.I. 36 ¶¶ 19, 36].

But those allegations are unsupported and unsupportable. First, Defendants admit that Mr. Chen's hoverboard patent, U.S. Patent No. 8,738,278, was reviewed and considered by the patent office. There are no well-pleaded facts showing that Mr. Ying knew of any non-cumulative information concerning the Chen prototype or the Kickstarter page. Defendants do not allege that Mr. Ying ever saw, analyzed, or considered those references, nor could they. As a result, there is no reasonable basis to infer that Mr. Ying knew of any "but for" material information concerning those references or that he withheld information with deceptive intent.

Second, although Defendants contend that Mr. Ying should have disclosed a rejection that appears in the prosecution history of a Chinese patent application, Defendants admit that the actual references underlying the rejection were disclosed to the U.S. patent office. In any event, there are no well-pleaded facts supporting that the Chinese prosecution history was "but for" material to patentability, especially given the differing patent requirements in the U.S. and China.

Third, there is no support for the notion that Mr. Ying intentionally misrepresented the inventors of the asserted design patent by identifying a co-inventor on the U.S. patent but not on the Chinese counterpart. He would have no reason to do so. Again, there are differing patent requirements in China, and the co-inventor was listed on the other asserted patents and executed an assignment. In short, these are exactly the type of inequitable conduct allegations the Federal Circuit has said should be dismissed at the pleading stage because they require unreasonable and unsupported inferences about materiality, knowledge, and intent to defraud.

C.    **Patent Law Preemption and the *Noerr-Pennington* Doctrine**

Federal patent law and the *Noerr-Pennington* doctrine immunize patent owners from antitrust or tort liability for good faith assertions of patent rights. The other counterclaims at issue in this motion—the Lanham Act claim, the tortious interference claim, the unfair competition claim, the *Walker Process* fraud claim, and the sham litigation antitrust claim—all require a threshold showing that Plaintiffs' assertion of patent rights was objectively baseless. In other words, Defendants must show that this lawsuit is a sham and that no reasonable litigant could expect success on the merits. That is a very high standard, and Defendants' flimsy inequitable conduct allegations fall well short of satisfying it. Accordingly, Defendants' claims for unfair competition, tortious interference, and attempted monopolization should be dismissed based on federal patent law preemption and the *Noerr-Pennington* doctrine.

**D.      Tortious Interference with Contract**

Another independent ground exists for dismissing Defendants' tortious interference claim. Under Texas law, a plaintiff asserting a claim for tortious interference with contract must show a breach of contract. Although Defendants complain that Plaintiffs' assertion of patent infringement caused Amazon to stop selling the accused products, [D.I. 36 ¶¶ 56-61; D.I. 39 at 16-17], Defendants do not allege that Amazon breached its contract with Golabs, nor could they, because Amazon is not required to sell the accused products. Because there was no breach of contract by Amazon (it merely acted within its rights under the contract), Defendants' claim for tortious interference with contract fails as a matter of law and should be dismissed.

**E.      Antitrust Allegations**

Another independent ground exists to dismiss Defendants' antitrust counterclaims—specifically, Defendants fail to plausibly define the relevant market and fail to show any probability of monopoly power. The counterclaims refer to at least three different markets without ever attempting to show that Plaintiffs control more than 10% of any market. The pleading is devoid of any allegations that might suggest monopoly power, such as special market conditions, anticompetitive pricing, harm to consumers, high barriers to entry, price-inelasticity, or non-suitable alternatives. Because Defendants have not alleged facts showing a dangerous probability of attaining monopoly power, the *Walker Process* and sham litigation claims under § 2 of the Sherman Act are defective and should be dismissed.

## II.        ARGUMENTS AND AUTHORITIES

### A.        The pleading must allege facts showing a plausible claim for relief to avoid dismissal under Rule 12(b)(6).

Rule 12(b)(6) authorizes dismissal of actions that fail to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### B.        Defendants' inequitable conduct allegations do not support a reasonable inference that Mr. Ying knew of material information relevant to patentability, or that he withheld such information with intent to deceive.

#### 1.        Inequitable conduct is a serious charge requiring heightened pleadings.

In its *en banc* decision in *Therasense*, the Federal Circuit recognized that "the habit of charging inequitable conduct in almost every major patent case ha[d] become an absolute plague" on the patent system. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (citation omitted). Under the pre-*Therasense* standard, litigants were quick to bring questionable inequitable conduct charges because these charges "cast a dark cloud over the patent's validity and paint the patentee as a bad

actor." *Id.* at 1288. Given these circumstances, the Federal Circuit was troubled that "[r]eputable lawyers seem[ed] to feel compelled to make the charge against other reputable lawyers on the slenderest grounds." *Id.* at 1289 (citation omitted). In an attempt to remedy this problem, the Federal Circuit "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290. The court did away with the "sliding scale" between intent and materiality, holding that "[i]ntent and materiality are separate requirements" and a "district court may not infer intent solely from materiality." *Id.* at 1290.

To plead inequitable conduct, a defendant must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). "[U]nder Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* (citations omitted). "[A]lthough 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29. "Information cumulative of other information already before the Patent Office is not material." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007); *see also Exergen*, 575 F.3d at 1329-30. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of

candor and good faith." *Exergen,* 575 F.3d at 1329 n.5. In other words, "[a] charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both **knew of invalidating information** that was withheld from the PTO **and withheld that information with a specific intent to deceive** the PTO." *Delano Farms Co. v. Cal. Table Grape Comm'n,* 655 F.3d 1337, 1350 (Fed. Cir. 2011) (emphasis added).

> **2.** **Defendants' inequitable conduct counterclaim does not meet the** *Exergen* **and** *Therasense* **pleading standard.**

Defendants' primary inequitable conduct theory relates to a prototype by Shane Chen and information on his Kickstarter page. [D.I. 36 ¶¶ 70-92]. Defendants allege that Mr. Chen filed an ITC complaint against Chic and others on March 31, 2016, and alleged in his complaint, as follows:

> Mr. Chen introduced the Hovertrax at the February 2012 Annual American International Toy Fair in New York City and again the following year at the February 2013 Annual American International Toy Fair. After receiving significant interest in the Hovertrax at the New York Toy Fair, Mr. Chen and Inventist launched a Kickstarter campaign in April 2013 to raise funding to support the further development and commercialization of the Hovertrax.

[D.I. 36 ¶ 93]. Defendants allege that Mr. Ying was aware of those allegations while the '155 and '802 patents were still in prosecution because he verified Chic's answer to the ITC action on June 15, 2016. [D.I. 36 ¶ 94]. The '155 patent issued on June 28, 2016, and the '802 patent issued on September 27, 2016. Importantly, it is undisputed that the sole patent asserted in the ITC action, U.S. Patent No. 8,738,278 to Chen, was reviewed and

considered by the USPTO during prosecution of the asserted '155 and '802 patents, as indicated on the face of the asserted patents. *See* [D.I. 1-1, 1-2].

The ITC complaint does not mention any material, non-cumulative, information about the Chen prototype or the Kickstarter page, and Defendants have not offered any well-pleaded facts showing that Mr. Ying was aware of any such information. For example, Defendants have not alleged that Mr. Ying ever saw, analyzed, or considered the prototype or the Kickstarter page. Defendants have not shown that Mr. Ying had any reason to believe that they were material when the '278 patent was already before the USPTO.

In an attempt to gloss over that glaring deficiency, Defendants baldly assert—with absolutely no factual support—that "Mr. Ying was aware of the Hovertrax Kickstarter page and the Hovertrax prototype." [D.I. 36 ¶ 95]. In so doing, Defendants falsely accuse an inventor of fraud without a single credible allegation that he ever even saw the prototype or the Kickstarter page. While knowledge and intent may be generally alleged, the pleading must contain sufficient factual allegations to make the truth of the allegations plausible. *See, e.g., MicroUnity Sys. Eng'g, Inc. v. Acer Inc.*, 2:10-CV-91-LED-RSP, 2012 WL 12892903, at *5 (E.D. Tex. Aug. 29, 2012) ("Because the facts alleged in the pleadings do not permit the Court to draw a reasonable inference that MicroUnity knew of the Intel/Phillips prior art, knew that the Intel/Phillips prior art was invalidating, and that MicroUnity withheld the Intel/Phillips prior art with the intent to deceive the PTO, it is recommended that the inequitable conduct defense based upon on the Intel/Phillips prior art be stricken."); *see also Exergen,* 575 F.3d at 1331 ("The mere fact that an applicant

disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct."). Because it is not reasonable to infer that Mr. Ying knew of material information or that he intended to defraud the USPTO, this inequitable conduct theory is defective and should be dismissed.

Apart from that primary allegation, Defendants also contend that Mr. Ying committed inequitable conduct by failing to disclose to the USPTO (1) a rejection of a Chinese patent application; and (2) inventorship information concerning the asserted '723 design patent. [D.I. 36 ¶¶ 101-106]. With respect to the Chinese patent office rejection, it is undisputed that the underlying references were disclosed to the USPTO. The Federal Circuit has explained that "it is the reference itself, not the information generated in prosecuting foreign counterparts, that is material to prosecution in the United States. The details of foreign prosecution are not an additional category of material information." *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998).[1] Moreover, Defendants have not shown that the Chinese office action included any additional, non-cumulative, material information, or that it was "but for" material to patentability. Defendants'

---

[1] *See also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 (Fed. Cir. 1995) (noting "the risk in relying on foreign patent prosecution in light of differences in disclosure requirements, claim practice, form of application, and standard of patentability."); *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1072 n.2 (Fed. Cir. 1994) ("The weight that the district court appeared to place on the European examiner's rejection was not appropriate. We take notice of the fact that the theories and laws of patentability vary from country to country, as do examination practices. Caution is required when applying the action of a foreign patent examiner to deciding whether the requirements of 35 U.S.C. § 103 are met under United States law, for international uniformity in theory and practice has not been achieved.").

pleading references *McKesson Info. Sols., Inc. v. Bridge Med.*, Inc., 487 F.3d 897, 919 (Fed. Cir. 2007), which did not deal with a foreign prosecution event and applied the old "reasonable examiner" standard for materiality. Post-*Therasense*, the party alleging inequitable conduct must show "but for" materiality. *Therasense*, 649 F.3d at 1291 ("the materiality required to establish inequitable conduct is but-for materiality."). Because Defendants have failed to do so, their inequitable conduct allegations are defective.

With respect to the design patent, Defendants contend that Mr. Ying intentionally misrepresented the inventorship of the patent by identifying himself as the sole inventor on the Chinese patent application and then listing Mr. Cao as a co-inventor on the U.S. patent application. It is undisputed that Mr. Cao was listed as a co-inventor on the other asserted patents and executed an assignment of the invention to Chic. Of course, the patent requirements in China and the U.S. are different. And even if Defendants could show a mistake in the identification of inventors on the design patent—by nonjoinder, misjoinder, or otherwise—35 U.S.C. § 256 allows for the correction of such errors. Because Defendants have not pleaded facts supporting a reasonable inference of fraud with respect to the inventorship of the design patent, this claim of inequitable conduct should also be dismissed.

**C.    Federal patent law and the *Noerr-Pennington* doctrine immunize patent owners from antitrust or tort liability for good faith assertions of patent rights.**

Defendants' first five causes of action (Lanham Act, common law unfair competition, tortious interference with contract, *Walker Process* antitrust, and sham litigation antitrust) are all premised on Plaintiffs' patents being unenforceable due to

inequitable conduct. But, as discussed in the previous section, Defendants' inequitable conduct allegations and theories are not plausible; thus, they cannot overcome the strong presumption that Plaintiffs' assertion of patent rights is protected activity under federal patent law and the *Noerr-Pennington* doctrine.

As explained by the Supreme Court, "[p]atents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts. Such action considered by itself cannot be said to be illegal." *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913); *see also Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1332-33 (Fed. Cir. 2012). "A patentee has the right to inform a potential infringer of the existence of the patent, whereby the recipient of the information may adjust its activities, perhaps seek a license, or otherwise act to protect itself." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998).

In fact, the Patent Act *requires* patent holders to "give notice" to infringers in certain circumstances; otherwise, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter." 35 U.S.C. § 287(a); *see Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985) (citing 35 U.S.C. § 281 and explaining that a patent owner has "the right to exclude others from making, using, and selling the invention and to enforce those rights . . . , and that includes threatening alleged infringers with suit."); *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 710 (Fed. Cir. 1992) ("It is not an actionable wrong for one in good faith to make plain to whomsoever that it is his purpose to insist upon what he believes to be his legal rights,

even though he may misconceive what those rights are.") (citation omitted and abrogated on other grounds). Thus, "federal authority makes clear that it is not improper for a patent owner to advise possible infringers of its belief that a particular product may infringe the patent." *Mikohn Gaming*, 165 F.3d at 897.

For these reasons, "[s]tate tort claims against a patent holder, including tortious interference claims, based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its patent." *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008). Similarly, under the *Noerr-Pennington* doctrine, asserting patent rights cannot give rise to antitrust or tort liability unless the assertion is made in bad faith and objectively baseless. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006); *Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92, 100 (2d Cir. 2000); *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1343-44 (Fed. Cir. 1999); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992); *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367-68 (5th Cir. 1983).

A claim is objectively baseless only if "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993) ("If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr* . . . . Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."); *see Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1377

12

(Fed. Cir. 2004) ("A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless.").

Defendants contend that Plaintiffs' assertion of patent rights was objectively baseless because "no reasonable litigant could expect to successfully assert a patent that it knew was obtained through knowing, willful fraud on the USPTO." [D.I. ¶ 81]. But, as discussed above, Defendants have not shown that any patentee committed inequitable conduct. Beyond that, each of the asserted patents is presumed valid. *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid."). Overcoming the presumption requires clear and convincing evidence that has never been offered against the patents. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). In that regard, the asserted patents have been litigated previously, licensed extensively, and never found to be invalid or unenforceable. Finally, there are no facts showing subjective bad faith. The only conduct complained about is the assertion of patent rights; there are no allegations of malice, predatory pricing, illegal tying, or other independently wrongful conduct.

For at least these reasons, Defendants' counterclaims are barred by federal patent law preemption and the *Noerr-Pennington* doctrine. *See, e.g., Kingspan Insulated Panels, Inc. v. Centria, Inc.*, No. 1:15-CV-1023, 2016 U.S. Dist. LEXIS 102721, at *21-22 (W.D. Mich. Aug. 4, 2016) (tortious interference claims dismissed for failure to adequately plead bad faith assertion of patent rights); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, No. 5:12-cv-366-Oc-10PRL, 2014 U.S. Dist. LEXIS 36009, at *20 (M.D. Fla. Mar. 19, 2014) (state-law unfair competition and Lanham Act claims dismissed for failure to adequately plead bad faith

13

assertion of patent rights); *Islander Grp., Inc. v. Swimways Corp.*, 954 F. Supp. 2d 1045, 1057 (D. Haw. 2013) (defamation, tortious interference, and unfair competition claims dismissed for failure to adequately plead bad faith assertion of patent rights); *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 922 (N.D. Ill. 2013) (RICO, unfair competition, civil conspiracy, intentional interference with prospective economic advantage, and unclean hands claims dismissed for failure to adequately plead bad faith assertion of patent rights); *Clearplay, Inc. v. Nissim Corp.*, 555 F. Supp. 2d 1318, 1323, 1331 (S.D. Fla. 2008) (tortious interference claims dismissed for failure to adequately plead bad faith assertion of patent rights); *Sanitec Indus. Inc. v. Micro-Waste Corp.*, No. CV H-04-3066, 2005 WL 8168876, at *5 (S.D. Tex. June 15, 2005) (Sherman Act claims dismissed for failure to adequately plead bad faith assertion of patent rights).

### D. Defendants' tortious interference with contract claim fails because it does not allege an underlying breach of contract.

Beyond the preemption and immunity issues raised above, the claim for tortious interference with contract fails for another independent reason—because Defendants do not allege that Plaintiffs caused Amazon to "breach its contract" with Golabs. To prevail on a tortious interference with contract claim, Defendants must show that Plaintiffs caused Amazon to "breach the contract" with Golabs. *See El Paso Healthcare Sys. v. Murphy*, 518 S.W.3d 412, 421-22 (Tex. 2017) ("To prevail on a claim for tortious interference with an existing contract, Murphy had to present evidence that El Paso Healthcare induced West Texas OB to 'breach the contract,' and thus interfered with

14

Murphy's "legal rights under the ... contract.") (citations omitted).[2] Defendants have not pleaded that Amazon breached its contract with Golabs. [D.I. 36 ¶¶ 56-61]. Accordingly, the tortious interference with contract counterclaim fails as a matter of law.

**E.    Defendants' antitrust claims fail to properly define the market or show a dangerous probability of attaining monopoly power.**

Another separate and independent ground exists for dismissing the attempted monopolization antitrust claims. Regardless of whether the claim is characterized as *Walker Process* fraud or sham litigation, a party asserting attempted monopolization under § 2 of the Sherman Act must plead facts showing "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize

---

[2] *See also McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 01-18-00118-CV, 2018 WL 6377432, at *14 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet.) ("To establish interference, 'the plaintiff must present evidence that some obligatory provision of a contract has been breached.'") (citations omitted); *Van Der Linden v. Khan*, 535 S.W.3d 179, 192 (Tex. App.—Fort Worth 2017, pet. denied) (same); *Serafine v. Blunt*, 466 S.W.3d 352, 362 (Tex. App.—Austin 2015, no pet.) (same); *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 416 S.W.3d 137, 149 (Tex. App.—Eastland 2013, pet. denied) ("The claimant must present evidence that there has been a breach of the agreement.") (citations omitted); *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("a plaintiff must produce some evidence that the defendant . . . induced one of the contracting parties to breach its obligations under a contract."); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674–75 (S.D. Tex. 2010) ("A plaintiff alleging tortious interference with contract must produce some evidence that the defendant knowingly induced one of the contracting parties to breach its contract obligations."); *All Am. Tel., Inc. v. USLD Comm'ns, Inc.*, 291 S.W.3d 518, 532 (Tex. App.—Fort Worth 2009, pet. denied) ("For a plaintiff to maintain a tortious interference claim, it must produce some evidence that the defendant knowingly induced one of the contracting parties to breach its obligations under a contract."); *N.Y. Life Ins. Co. v. Miller*, 114 S.W.3d 114, 125 (Tex. App.—Austin 2003, no pet.) ("because New York Life did not breach its agreement with Miller, Coffey is not liable for tortious interference with those agreements."); *John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730-31 (Tex. App.—Austin 2000, pet. denied) (tortious interference with contract requires a breach of contract).

and (3) a dangerous probability of achieving monopoly power" in the relevant market. *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456-58 (1993) (claimant must plead facts showing a dangerous probability that the accused will achieve monopoly power in the relevant market).

"[E]vidence of a defendant's market share is the principal tool used by courts to determine the existence of monopoly power." *Dimmitt Agri Indus., Inc. v. CPC Int'l, Inc.*, 679 F.2d 516, 521 (5th Cir. 1982). "While the exact market share percentage necessary to prove attempt to monopolize may vary under differing market conditions, absent a showing of special market conditions, a market share of less than ten percent, as a matter of law, usually will not support a finding of attempt to monopolize." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 491 (5th Cir. 1984).

Defendants never specifically define the relevant market but sometimes refer to the "hoverboard" and "personal transporter" markets, and also reference another party's attempt to define the market as "the 6.5-inch hoverboard category on amazon.com." [D.I. 36 ¶¶ 45, 73]. At various points in the pleading, Defendants refer to the U.S. market and the global market for hoverboards. [D.I. 36 ¶¶ 14-17, 73]. Defendants also allege on information and belief that "Chic controls a substantial amount of products in the 6.5-inch hoverboard category on amazon.com, and is attempting to monopolize at least that category." [D.I. 36 ¶ 17]. While it is not clear what Defendants contend is the relevant product market, Defendants do not allege that Plaintiffs control more than 10% of any relevant market.

16

Defendants also do not allege any special market conditions. For example, Defendants do not allege that the market is small, that there are only a few competitors, or that there are high barriers to entry. To the contrary, Defendants allege that the U.S. and global markets are large and growing. [D.I. 36 ¶¶ 14-17]. Defendants cite to two market reports suggesting that there are at least 15-20 key players in the market (not including Defendants). [D.I. 36 ¶¶ 14-15].[3] And Defendants' application for injunctive relief touts that Golabs was formed in 2017 and was already the #1 seller on amazon.com by 2018, [D.I. 40-1 ¶¶ 3, 14], which strongly suggests a low barrier to entry.

The counterclaim is also devoid of any allegations of anticompetitive prices or harm to consumers. And there are no allegations regarding the interchangability of products, cross-elasticity in the market, or the non-availability of substitute products. While the counterclaim mentions Chic's licensing activities, such licensing activities tend to increase competition in the market, not decrease it. *See Applera Corp. v. MJ Research Inc.*, No. 98 Civ. 1201, 2004 WL 5683983, at *9 (D. Conn. Dec. 17, 2004) ("Because patent owners

---

[3] For example, one of the articles says, "Some of the players in the hoverboard market include Razor USA LLC, The White Chair Limited, Ninebot Limited, Hangzhou Chic Intelligent Technology Co., Ltd., Shenzhen Jialike Electronic Company Ltd., Wuyi Chuangxin Metal Tools Co., Ltd., Shenzhen Rooder Technology Co., Ltd., Inventist, Inc., Zhejiang Topso Technology Co., Ltd., Fosjoas Technology Co., Ltd., Airwheel Technology Holding (USA) Co., Ltd., Shenzhen Uwheel Technology Co., Ltd., Hoverboard Express, LLC, Shenzhen Freefeet Technology Co. Ltd., Swagway LLC, Phunkee Tree, Inc., PTX Performance Products USA, LLC, Soibatian Corporation d.b.a. IO HAWK, Zhengzhou F-wheel Industrial Co., Ltd. and Hama GmbH & Co KG among others." Available at https://www.acumenresearchandconsulting.com/hoverboard-market; *see also* https://www.rfdtv.com/story/40177079/hoverboard-scooters-market-2019-by-key-players-product-and-production-information-analysis-and-forecast-to-2024-with-geographic-segmentation (identifying about 20 "key players").

hold a lawful monopoly over the patented technology, the starting presumption must be that the licensing of that patent right is an activity that aids rather than impedes competition. . . . It is only when the patent holder exceeds the scope of that lawful patent monopoly, by conspiring with licensees to impose price restrictions on unpatented items that are not themselves subject to the patent grant, that the multiple licensing program may be deemed anticompetitive.").

In all of these ways, the counterclaims' allegations do not plausibly define the market and show a dangerous probability of attaining monopoly power. *See Wickfire, LLC v. Trimax Media, Inc.*, No. A-14-CA-34-SS, 2016 WL 4119917, at *6 (W.D. Tex. Mar. 25, 2016) ("Because the Court agrees Defendants have failed to allege a dangerous probability of attaining monopoly power, the Court grants WickFire's motion to dismiss Defendants' attempted monopolization claim and declines to reach WickFire's arguments concerning intent or anti-competitive conduct."); *Tristar Inv'rs, Inc. v. Am. Tower Corp.*, No. 3:12-CV-0499-M, 2014 WL 1327663, at *16 (N.D. Tex. Apr. 3, 2014) ("ATC presents evidence that it has a market share of approximately 17% of the current market for property rights. . . . Given the Court's definition of the market, ATC's share thus cannot implicate Section 2 as a matter of law."); *Mary Kay, Inc. v. Dunlap*, No. 3:12-CV-0029-D, 2012 WL 2358082, at *6 (N.D. Tex. June 21, 2012) ("[w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may

be granted."); *see also Cedra Pharmacy Houston, LLC v. UnitedHealth Grp., Inc.*, No. CV H-17-3800, 2019 WL 1433600, at *10-11 (S.D. Tex. Mar. 7, 2019), *adopted,* No. 4:17-CV-03800, 2019 WL 1426248 (S.D. Tex. Mar. 29, 2019) ("As for a claim of attempted monopolization, there must be factual allegations to support a conclusion that there is a dangerous probability of defendants' achieving monopoly power. Again, monopoly power does not exist unless the defendant's market share is generally 50% or more. . . . given that alleged 22% market share, there are no allegations of a plausible claim of attempted monopolization."). Accordingly, the counterclaims fail to allege a plausible claim for attempted monopolization under § 2 of the Sherman Act.

## III.   CONCLUSION

Because Defendants' counterclaims do not allege plausible claims for unfair competition under the Lanham Act, common law unfair competition, tortious interference with contract, *Walker Process* fraud, sham litigation antitrust violations, or inequitable conduct, Plaintiffs request that the Court dismiss those counterclaims pursuant to Rule 12(b)(6).

Dated:  July 18, 2019                              Respectfully submitted,

                                                   /s/ S. Wallace Dunwoody
                                                   Michael C. Wilson
                                                   mwilson@munckwilson.com
                                                   Texas Bar No. 21704590
                                                   S. Wallace Dunwoody
                                                   wdunwoody@munckwilson.com
                                                   Texas Bar No. 24040838
                                                   Kelly P. Chen
                                                   kchen@munckwilson.com
                                                   Texas Bar No. 24062664
                                                   **MUNCK WILSON MANDALA, LLP**
                                                   12770 Coit Road, Suite 600
                                                   Dallas, Texas 75251
                                                   Telephone: (972) 628-3600
                                                   Telecopier: (972) 628-3616

                                                   **ATTORNEYS FOR PLAINTIFFS/
                                                   COUNTERDEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on the below counsel of record via the Court's electronic filing system, on this 18th day of July, 2019.

William Chu
William Knisely
The Law Offices of William Chu
4455 LBJ Freeway, Suite 1008
Dallas, Texas 72544
wmchulaw@aol.com
knisley.wmchulaw@gmail.com

Tony Pezzano
Michael Dougherty
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
tony.pezzano@dlapiper.com
michael.dougherty@dlapiper.com

C. Michael Moore
Marina Stefanova
DLA Piper LLP (US)
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201
mike.moore@dlapiper.com
marina.stefanova@dlapiper.com

*s/ S. Wallace Dunwoody*
S. Wallace Dunwoody

803547

21