## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNICORN GLOBAL, INC., HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., AND SHENZHEN UNI-SUN ELECTRONIC CO., LTD., | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| GOLABS, INC. d/b/a GOTRAX, LLC, WALMART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC, | § § § § § | Civil Action No. 3:19-cv-00754 |
| Defendants. | § | |
| GOLABS, INC. d/b/a GOTRAX, LLC, WALMART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC, | § § § § § § | Jury Trial Demanded |
| Counterclaimants. | § § | |
| v. | § § | |
| UNICORN GLOBAL, INC., HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., AND SHENZHEN UNI-SUN ELECTRONIC CO., LTD., | § § § § § § | |
| Counterdefendants. | § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO WALMART'S MOTION TO SEVER AND STAY

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................ 1

II.     BACKGROUND ................................................................................. 2

III.    ARGUMENTS AND AUTHORITIES ............................................... 3

        A.      The standard for severance is not met. ................................... 3

                1.      A stay would unduly prejudice and present a clear
                        tactical disadvantage to Plaintiffs. .............................. 3

                2.      A stay will not simplify the issues in the case or the
                        trial of the case. ........................................................... 5

                3.      A stay is not warranted based on the procedural
                        posture of the case. ...................................................... 6

        B.      The policy concerns underlying the customer-suit doctrine do
                not justify a stay or severance of the claims against Walmart. ............ 7

        C.      Walmart's arguments for a stay and severance and the cases
                it relies on are inapposite ......................................................... 9

IV.     CONCLUSION ................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Altair Instruments, Inc. v. Telebrands Corp.*,
   No. 2:19-cv-08967-SJO-JC, Order, [D.I. 138]  (C.D. Cal. Mar. 31,
   2020)................................................................................................... 9, 10, 11

*Andersons, Inc. v. Enviro Granulation, LLC*,
   No. 8:13-cv-3004-T-33MAP, 2014 WL 12621217 (M.D. Fla. July 21,
   2014).................................................................................................................. 13

*Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*,
   No. 5:13-cv-05430 EJD, 2014 WL 2759571 (N.D. Cal. June 17, 2014)................. 16

*Beck Sys., Inc. v. Marimba, Inc.*,
   No. 01 C 5207, 2001 WL 1502338 (N.D. Ill. Nov. 20, 2001).................................... 5

*Cal. Inst. of Tech. (Caltech) v. Broadcom Ltd.*,
   No. CV 16-3714-GW, 2019 WL 8807924 (C.D. Cal. Nov. 21, 2019)............. 6, 7, 12

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
   No. SACV 11-1011-JST, 2012 WL 12898803 (C.D. Cal. Mar. 6, 2012) ............... 15

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
   No. 6:13-cv-507, 2015 WL 11118110 (E.D. Tex. Mar. 27, 2015).............. 13, 14, 16

*Codex Corp. v. Milgo Elec. Corp.*,
   553 F.2d 735 (1st Cir. 1977)................................................................................. 7, 8

*In re Dell Inc.*,
   600 F. App'x 728 (Fed. Cir. 2015) .................................................................... 8, 10

*DSS Tech. Mgmt., Inc. v. Intel Corp.*,
   No. 6:15-cv-130, 2015 WL 12806514 (E.D. Tex. Nov. 12, 2015) ........... 3, 11, 12, 14

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co. (Uropep)*,
   No. 2:15-CV-1202-WCB, 2016 WL 1659924 (E.D. Tex. Apr. 26 2016) ........... 11, 12

*Kahn v. Gen. Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989)........................................................................... 8, 9

*Lifted Ltd., LLC v. Novelty Inc.*,
   16-cv-03135, 2018 WL 10911498 (D. Col. Feb. 6, 2018)......................................... 4

*Mirror Worlds Techs. LLC v. Dell, Inc.*,
No. 6:13-CV-941, 2014 WL 11268268 (E.D. Tex. Sept. 29, 2014)............... 4, 10, 12

*In re Nintendo Co.*,
544 F. App'x 934 (Fed. Cir. 2013) .......................................................... 13

*In re Nintendo of Am., Inc.*,
756 F.3d 1363 (Fed. Cir. 2014)............................................. 9, 10, 11, 14

*Nussbaum v. Diversified Consultants, Inc.*,
No. 15-600, 2015 WL 5707147 (D.N.J. Sept. 28, 2015)......................... 16

*Promethean Insulation Tech. LLC v. Sealed Air Corp.*,
No. 2:13-CV-1113-JRG-RSP, 2015 WL 12910768 (E.D. Tex. July 22,
2016)......................................................................................... 4, 6, 7

*Richmond v. Lumisol Elec. Ltd.*,
No. 13-1944 (MLC), 2014 WL 1716447 (D.N.J. Apr. 30, 2014) ................. 9, 10, 11

*SAS Inst. Inc. v. World Programming Ltd.*,
No. 2:18-CV-00295-JRG, 2019 WL 8331447 (E.D. Tex. Apr. 4, 2019) ..........*passim*

*Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*,
No. 3:05-CV-1560-G, 2006 WL 2642184 (N.D. Tex. Sept. 11, 2006) ...................... 3

*Soverain Software LLC v. Amazon.com, LLC*,
356 F. Supp. 2d 660 (E.D. Tex. 2005) .................................................... 7

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
458 F.3d 1335 (Fed. Cir. 2006)............................................................ 8

*Ultravision Techs., LLC v. Lamar Advert. Co.*,
No. 2:16-CV-374-JRG-RSP, 2017 WL 823419 (E.D. Tex. Mar. 2,
2017)................................................................................ 3, 5, 6, 14

## Other Authorities

FED. R. CIV. P. 45............................................................................. 5

FED. R. CIV. P. 21............................................................................. 3

# I.    INTRODUCTION

The Court should deny Walmart's motion to sever and stay Plaintiffs' patent infringement claims against Walmart "pursuant to the customer-suit exception rule." [D.I. 154] at 1. Not only are the requirements for the relief sought not met, granting the relief Walmart seeks would unnecessarily multiply the litigation, waste judicial resources, and risk potentially conflicting decisions. The very policy considerations that might justify a stay in other cases mandate denial of Walmart's motion in this case. The manufacturer is not a party to this suit. Golabs is a distributor. The manufacturer is a Chinese company that has not appeared or intervened in this action. This is not a situation where the "real" dispute is between the patent owner and the manufacturer. This is a situation where the patent owner is attempting to stop a downstream distributor and giant retailer from flooding the market with infringing products. Unlike a situation with multiple suits against multiple retailers in multiple venues, there is only one lawsuit at issue, so the risks of conflicting rulings and wasting judicial resources are not implicated here (unless the Court severs the claims against Walmart). This is also not a situation where local "mom and pop" retail defendants have been sued along with the manufacturer to hold venue in a preferred district. Walmart is a major seller of the accused products, and also sells add-on services (such as warranty plans) along with the accused products. It is important to keep Walmart in the case because Golabs has argued that this lawsuit has placed a heavy strain on it and that Golabs may go out of business. Moreover, a finding of infringement against Golabs would not resolve the dispute between Plaintiffs and Walmart because Walmart is willfully infringing Plaintiffs' patent rights and has

asserted counterclaims against Plaintiffs. When Plaintiffs notified Walmart of this suit and demanded that Walmart stop selling the infringing products, Walmart refused—basically forcing Plaintiffs to assert claims for willful infringement. Plaintiffs should not be required to litigate their claims twice—that would be wasteful and would provide Walmart with an unfair strategic advantage in this second suit. Walmart should not get a free pass on this suit. The motion should be denied.

## II.    BACKGROUND

In March 2019, Plaintiffs filed this action against Golabs for patent infringement relating to its importation, sales, and offers for sale of infringing hoverboard products.

In April 2019, Plaintiffs notified Walmart in writing of the asserted patents and that the accused products infringe the asserted patents and demanded that Walmart stop selling the infringing products. Walmart refused the demand.

In May 2019, Plaintiffs filed an amended complaint adding Walmart as a defendant and asserting claims against Walmart for willful patent infringement.

On June 27, 2019, Walmart filed an answer and asserted counterclaims against Plaintiffs, falsely accusing Plaintiffs of inequitable conduct, patent misuse, and violating antitrust laws, among other things.

Since then, the parties have engaged in significant discovery, including 10 depositions, multiple rounds of written discovery resulting in the production of 21,541 pages of documents, and substantial motion practice, including briefing on a temporary injunction, claim construction, and summary judgment. The Court issued a claim construction order on May 26, 2020. The summary judgment motion is still

pending. After all of that, Walmart filed a motion to sever and stay Plaintiffs' infringement claims against it on July 14, 2020. As discussed below, the requirements for a stay are not met and policy considerations dictate denial of the motion.

## III.    ARGUMENTS AND AUTHORITIES

### A.    The standard for severance is not met.

Under Rule 21, "the court may at any time, on just terms, add or drop a party," and "may also sever any claim against a party." FED. R. CIV. P. 21. A district court also has wide discretion to stay proceedings in order to manage its docket. *Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*, No. 3:05-CV-1560-G, 2006 WL 2642184, at *1 (N.D. Tex. Sept. 11, 2006). In deciding the propriety of a stay, courts consider "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id.* The rationale underlying a stay or severance "is the 'just, convenient, efficient, and less expensive determination' of the case." *DSS Tech. Mgmt., Inc. v. Intel Corp.*, No. 6:15-cv-130, 2015 WL 12806514, at *2 (E.D. Tex. Nov. 12, 2015).

### 1.    A stay would unduly prejudice and present a clear tactical disadvantage to Plaintiffs.

Plaintiffs have claims for willful patent infringement against Walmart. A judgment against Golabs will not resolve Plaintiffs' claims against Walmart. Plaintiffs would still need to separately try issues related to its infringement allegations against Walmart. This would be extremely prejudicial. *See Ultravision*

*Techs., LLC v. Lamar Advert. Co.*, No. 2:16-CV-374-JRG-RSP, 2017 WL 823419, at *5 (E.D. Tex. Mar. 2, 2017) (stating where the claims are distinct and non-overlapping, "any potential prejudice or tactical disadvantage to [plaintiff] is being able to effectively pursue those claims grows larger the longer the case is stalled"). First, a stay will require Plaintiffs to litigate two cases separately. *See Mirror Worlds Techs. LLC v. Dell, Inc.*, No. 6:13-CV-941, 2014 WL 11268268, at *3 (E.D. Tex. Sept. 29, 2014) ("Not only would a stay potentially delay resolution of [plaintiff's] claims against PC Manufacturers, it would also force [plaintiff] to litigate its infringement claims serially against Microsoft and the PC Manufacturers."); *Lifted Ltd., LLC v. Novelty Inc.*, 16-cv-03135, 2018 WL 10911498, at *3 (D. Col. Feb. 6, 2018) ("Contrary to Wal-Mart's assertion that a stay would promote 'just, speedy, and inexpensive determination' of this action, the Court finds that the granting of a stay would likely undermine the interests of judicial economy given that Wal-Mart may seek to re-litigate many of the same issues it had already resolved vis-à-vis Novelty."). Second, a stay would impede Plaintiffs' ability to conduct meaningful discovery of relevant information from Walmart that is damaging to Golabs. *Promethean Insulation Tech. LLC v. Sealed Air Corp.*, No. 2:13-CV-1113-JRG-RSP, 2015 WL 12910768, at *3 (E.D. Tex. July 22, 2016) (finding the retailer defendants' delayed filing of their motion while discovery was underway weighed against granting a stay). Third, a stay would force Plaintiffs to proceed against Golabs, an allegedly insolvent distributor, while allowing Walmart, "the largest retail chain in the world," off the hook. [D.I. 154] at 10. As potential creditors, Plaintiffs have a legitimate interest in the participation of

all infringing defendants in the litigation so they will be bound by any judgment awarded in this matter. *See SAS Inst. Inc. v. World Programming Ltd.*, No. 2:18-CV-00295-JRG, 2019 WL 8331447, at \*4 (E.D. Tex. Apr. 4, 2019) (denying stay where the other infringer's "present financial position and prior litigation positions make it far from certain that complete satisfaction would (or could) actually be made"). Finally, because it is harder to win a case if your opponent has seen your exact order of proof at trial and had extra time to prepare for it, a stay would present a tactical disadvantage for Plaintiffs.

**2.    A stay will not simplify the issues in the case or the trial of the case.**

This is not a case where a stay might result in certain issues disappearing altogether, particularly where there are non-overlapping claims distinctly asserted against Walmart. Instead, a stay would only postpone the lingering issues against Walmart and make this litigation less convenient and efficient, and ultimately more expensive. *See Ultravision Techs*, 2017 WL 823419, at \*5 ("[A] stay should not be entered here if the Court seeks to preserve judicial efficiency and the conservation of its resources."). Moreover, a stay will introduce additional issues, add greater complexity, and result in two trials. Plaintiffs would have to conduct discovery of Walmart under Federal Rule of Civil Procedure 45. That would increase transactional costs for all parties and the Court. Also, there is the potential for inconsistent rulings on the issues in separate proceedings. Thus, given that the same attorneys represent Golabs and Walmart and that Walmart would be subject to third-party discovery, the risk of two trials would undermine judicial efficiency. *See Beck Sys., Inc. v. Marimba,*

*Inc.*, No. 01 C 5207, 2001 WL 1502338, at *3 (N.D. Ill. Nov. 20, 2001) ("[G]iven that the same attorneys represent all four defendants, and that the customers will be subject to third-party discovery even if separated, it is difficult for the Court to conclude that a separate trial will promote judicial economy and convenience."); *Cal. Inst. of Tech. (Caltech) v. Broadcom Ltd.*, No. CV 16-3714-GW (AGRx), 2019 WL 8807924, at *10 (C.D. Cal. Nov. 21, 2019) ("[T]he Court continues to agree with Plaintiff that, even accepting Apple's asserting that it would be bound by non-infringement and invalidity determinations reached in a trial against only Broadcom, the possibility of two trials on this subject matter instead of one (even if the second might only relate to damages disputes and tangential issues) does not appear likely to advance concerns of judicial economy in this case.").

### 3.    A stay is not warranted based on the procedural posture of the case.

This case is more than a year old and has been hotly contested during that time. Substantial discovery has been completed and the case should be ready for trial by June 2021. To date, there have been 10 depositions, 21,541 pages of documents produced, and detailed interrogatories. Walmart has asserted counterclaims in this action. Additionally, the Court has construed the patents and Defendants' summary judgment motion is pending before the Court. Walmart did not file this motion until more than 14 months after it was named in this lawsuit. *Promethean Insulation Tech.*, 2015 WL 12910768, at *3 ("[T]he Court strains to understand why the Retailer Defendants' waited nearly six months to file their motion as discovery continued."); *Ultravision Techs*, 2017 WL 823419, at *4 (finding that the fact discovery was

underway, although not complete, weighed against entering a stay). Thus, any claim by Walmart that it would suffer undue hardship from undergoing discovery is belied by its active participation in this case, including the discovery process. *See Soverain Software LLC v. Amazon.com, LLC*, 356 F. Supp. 2d 660, 663 (E.D. Tex. 2005) (denying defendant's motion to stay where the parties had already produced "hundreds of thousands of pages of documents and millions of lines of source code" and the Court was "working on its order construing the claims at issue"); *Promethean Insulation Tech.*, 2015 WL 12910768, at *3 ("Indeed, by the date of the filing on the instant motion, the claim construction process had already begun as between the parties. . . . This weighs against granting a stay."); *Caltech*, 2019 WL 8807924, at *10 (stating it was relevant to the Court that "only very late in the game did they make this request for severance and stay" after dispositive and non-dispositive motions had been filed).

### B. The policy concerns underlying the customer-suit doctrine do not justify a stay or severance of the claims against Walmart.

The purpose of the customer-suit doctrine is to allow the "true defendant" in a patent suit—the manufacturer of the allegedly-infringing product—who "as a matter of contract, or good business" has a strong interest in defending its products to do so. *See Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977). Here, the manufacturer is not a party to the suit and has not intervened or appeared in this action. The manufacturer has refused to voluntarily provide information in this suit upon request, and relied on Chinese law in resisting provision of technical data regarding the accused products, forcing Plaintiffs to seek assistance from the Chinese

authorities under the Hauge Convention protocols to obtain discovery for use in this case. In any event, a district court is not required to stay an action against a customer in the very same litigation as the manufacturer where there is not, nor should there be, a separate litigation against the customer. *See In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015) (rejecting "the proposition that a district court must stay proceedings against a customer in the very same litigation that will, regardless of the requested stay, go forward against the supplier.").

In articulating the customer suit doctrine, the *Codex* court noted that "there is no possibility of consolidation or coordination to promote judicial economy." *Codex*, 553 F.2d at 739. Here, consolidation is occurring. Both defendants are before this Court simultaneously and are jointly represented, so Walmart's liability can be determined alongside Golabs' with a minimum of additional effort and expense. The relief Walmart seeks would undermine "the guiding principles in the customer suit exception cases" of promoting "efficiency and judicial economy." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

Moreover, the customer suit exception is predominantly a choice-of-forum doctrine for deciding whether to enjoin a second proceeding in another jurisdiction. *See Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). In this case, however, there is no danger that two courts will come to inconsistent conclusions about the infringement of Plaintiffs' patents. *See Dell*, 600 F. App'x at 730 (the purpose is "preventing parallel, active, duplicative proceedings.").

8

Most importantly, the determination of Golabs' liability will not entirely determine Walmart's liability—the issue of Walmart's willful infringement would still remain outstanding. The Federal Circuit has noted that "in those cases in which a customer suit exception has been held to favor the forum of the second-filed action, the second action would resolve *all charges* against the customers in the stayed suit." *Kahn*, 889 F.2d at 1081 (emphasis added); *see SAS Inst.*, 2019 WL 8331447, at *2 ("[E]ven in the patent context, the customer-suit exception does not apply when the claims against the manufacturer and non-manufacturer defendants are not identical[.]"). Because questions of liability would remain as to Walmart after Golabs' liability is established, applying the customer suit doctrine is inappropriate. More practically, there is no reason to defer until a second proceeding for consideration of any additional liability that Walmart may have.

## C.  Walmart's arguments for a stay and severance and the cases it relies on are inapposite.

Walmart cites *Nintendo*, *Altair*, and *Richmond* to support its position that courts apply the customer-suit exception to sever and stay claims in a single suit.[1] However, these cases are distinguishable and do not contain factors that frustrate judicial economy or unfairly prejudice a party. In *Nintendo*, for example, the Federal Circuit's primary reason for granting the motion was to alleviate the burden of having the manufacturer defendant litigate in a forum several thousand miles from its home

---

[1] *See* Walmart's Mot. at 6–7, [D.I. 154] (citing *In re Nintendo of Am., Inc.*, 756 F.3d 1363 (Fed. Cir. 2014); *Altair Instruments, Inc. v. Telebrands Corp.*, No. 2:19-cv-08967-SJO-JC, Order, [D.I. 138]  (C.D. Cal. Mar. 31, 2020); *Richmond v. Lumisol Elec. Ltd.*, No. 13-1944 (MLC), 2014 WL 1716447 (D.N.J. Apr. 30, 2014)).

venue. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014). The Federal Circuit also recognized that the issues of infringement were common to both the manufacturer defendant and eleven retailers. *Id.*

Contrary to Walmart's contention, *Nintendo* does not mandate an automatic stay or severance against a customer in the very same litigation as the manufacturer where there are no grounds for a separate litigation against the customer. *See Dell*, 600 F. App'x at 730. Like *Dell*, Plaintiffs brought a single action of infringement against Defendants. Defendants answered Plaintiffs' First Amended Complaint, admitting that the Court has personal jurisdiction over both Golabs and Walmart and that venue is proper in this district.[2] Walmart also admits that it has transacted business in this district involving the accused products.[3] Thus, there is no risk of "parallel, active, duplicative proceedings." *See Dell*, 600 F. App'x at 730.

Walmart's reliance on *Altair* and *Richmond* is also misplaced. In *Altair*, unlike here, the customer defendant requested a stay and severance two months after being named as a defendant in that case. *See Altair Instruments*, Order, [D.I. 138] at 1–2. That case was in the early stages where the customer defendant had not yet participated in the discovery process and the court there had not issued a claim construction ruling.[4] Here, Walmart filed its motion 14 months into the litigation, after substantial discovery has been completed and after this Court has issued a claim

---

[2] *See* Defs.' Answer ¶¶ 19, 21–22.

[3] *Id.* ¶ 21.

[4] *See* Walmart's Mot. at 7.

construction order. Thus, the notion that this lawsuit places "an unnecessary strain on Walmart" is disingenuous, at best, and a predicament of its own making.

Furthermore, the *Richmond* case cited by Walmart does not support its position for a stay and severance. In *Richmond*, the district court faced issues related to the joinder of over eighty defendants named in twelve separate lawsuits. *See Richmond*, 2014 WL 1716447, at *1, *4. In granting the stay and severance, the court there was persuaded by the "peripheral nature" of the claims against the retailer defendants and that the interests of judicial economy would best be served if the claims of all defendants in all twelve cases were severed from one another. *See id.* at *6. Here, Defendants do not dispute joinder, nor do they seek to transfer the action to another forum as they admit venue is proper before the Court.

Indeed, unlike *Nintendo*, *Altair*, and *Richmond*, Plaintiffs' infringement claims, including willful infringement, are not common to Golabs and Walmart. *See SAS Inst.*, 2019 WL 8331447, at *2 (stating "the customer-suit exception does not apply when the claims against the manufacturer and non-manufacturer defendants are not identical"); *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co. (Uropep)*, No. 2:15-CV-1202-WCB, 2016 WL 1659924, at *3 (E.D. Tex. Apr. 26 2016) (same); *DSS Tech. Mgmt.*, 2015 WL 12806514, at *3 (finding that adjudication of manufacturer claims would not dispose of customer claims because "any subsequent litigation would nevertheless involve proof of infringing acts" by the customer defendants). In other words, Walmart's liability for willful infringement of the asserted products is predicated ***only*** on Walmart's conduct. Walmart does not contest and, in fact,

11

concedes this point in its motion.[5] Because the infringement allegations against Walmart are different from those asserted against Golabs, the claims against them are not peripheral.[6] *See Uropep*, 2016 WL 1659924, at *3; *SAS Inst.*, 2019 WL 8331447, at *3 (same).

At the same time, Walmart has asserted counterclaims in this litigation, falsely accusing Plaintiffs of inequitable conduct, patent misuse, and violating federal antitrust laws, among other things. Severance would not resolve Walmart's counterclaims against Plaintiffs. *See DSS Tech. Mgmt.*, 2015 WL 12806514, at *3 (finding "[s]everance does not potentially dispose of the Intel Customer Defendants' defenses and counterclaims of invalidity" where their agreement left "every statutory invalidity challenge at issue" in a subsequent trial).

Additionally, Walmart's contention that it is merely a peripheral customer and reseller of the infringing products is inaccurate. Plaintiffs' infringement allegations against Walmart extend beyond the mere purchase of the products. Walmart is

---

[5] *See* Walmart's Mot. at 8 ("With respect to the issue of willfulness, Walmart agrees to take a deposition on this issue if Plaintiffs prevail on infringement against Golabs, the stay is lifted and Walmart is required to provide an accounting of sales of the Accused Products.").

[6] Although Walmart has offered to be bound by a decision on the merits against Golabs, that does not obviate the need to litigate Plaintiffs' willful infringement claims against Walmart. *See, e.g., DSS Tech. Mgmt.*, 2015 WL 12806514, at *4 ("While the Court appreciates Intel's agreement to indemnify its direct customers and the Intel's Defendants' Customers' stipulation regarding the prior art presented in the Intel trial, these stipulations simply leave too much unresolved for any subsequent litigation against Intel Customer Defendants."); *see Mirror Worlds Techs.*, 2014 WL 11268268, at *3 ("Although the PC Manufacturers agree to be bound by a determination against Microsoft, it is unclear how that agreement would resolve [plaintiff's] infringement theories against the PC Manufacturers."); *Caltech*, 2019 WL 8807924, at *10.

willfully infringing Plaintiffs' patents. Moreover, Walmart bundles the accused products with add-on services, such as its own protection plans. Walmart plays a critical role in bringing the infringing products to market and is seeking to continue profiting from infringing activities without being held accountable for its actions, despite receiving cease and desist notices from Plaintiffs. Thus, Walmart's conduct and its infringing activities rise above merely reselling the products. *See Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:13-cv-507, 2015 WL 11118110, at *7–8 (E.D. Tex. Mar. 27, 2015) (concluding the retailers were not mere sellers based on allegations that they "subsidize and bundle the accused products with cellular service plans" and due to "the collaborative relationship between the Carrier-Retailers and Manufacturers involving the patented technology"); *see also Andersons, Inc. v. Enviro Granulation, LLC*, No. 8:13-cv-3004-T-33MAP, 2014 WL 12621217, at *1 (M.D. Fla. July 21, 2014).

Furthermore, Walmart's assertion that the Federal Circuit has extended the customer-suit exception to a "peripheral defendant" is misleading.[7] Courts have not referred to staying or severing a case against a purported peripheral defendant. *See SAS Inst.*, 2019 WL 8331447, at *2 (stating in deciding whether to sever or stay, courts consider "whether the remaining *claims are peripheral to the severed claims*") (emphasis added). Rather, courts analyze the inclusion of a defendant peripheral to the alleged wrongdoing where a party seeks to *transfer* to a more convenient forum. *See In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("[T]he inclusion of

---

[7] *See* Walmart's Mot. at 6.

some retailer defendants only peripherally involved in the alleged wrongdoing could prevent a court from following binding precedent that requires transfer to a more convenient venue for trial."). The concerns that led to the severance and stay in *Nintendo* are not present here. Staying the claims against Walmart would prevent the full resolution of the claims and counterclaims in this case while working against the interests of improving judicial economy.

Even in cases where the claims against a retailer truly are peripheral, considerations of judicial efficiency may still dictate denying a stay. *See Ultravision Techs.*, 2017 WL 823419, at *3–4 (concluding judicial economy disfavors severance because the infringement allegations against the customer defendant "will involve facts, evidence, and analysis beyond those considered for" Plaintiff's infringement claims against the manufacturer)*; Cellular Comm'ns Equip. LLC v. HTC Corp.*, No. 6:13-cv-507, 2015 WL 11118110, at *9 (E.D. Tex. Mar. 27, 2015) ("[I]t is unclear at this juncture that the claims against Manufacturers could dispose of the case against Carrier-retailers, at minimum with respect to Plaintiff's willful infringement claims."). In addition, the fact that the manufacturer is outside the United States and has not intervened in this action weighs against a stay. *See DSS Tech. Mgmt.*, 2015 WL 12806514, at *2–3 (finding customer claims were not peripheral where the manufacturer could not be held liable for conduct that occurred outside the United States); *SAS Inst.*, 2019 WL 8331447, at *3 (concluding customer claims were not peripheral where, absent the sale of the infringing products in the United States, the manufacturer's conduct occurred in the United Kingdom).

14

Finally, when an upstream party's solvency is in question, courts have recognized that "the patentee has a special interest in proceeding against [the] customer himself." *See Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, No. SACV 11-1011-JST (ANx), 2012 WL 12898803, at *2 (C.D. Cal. Mar. 6, 2012); *SAS Inst.*, 2019 WL 8331447, at *4 ("WPL's present financial position and prior litigation positions make it far from certain that complete satisfaction would (or could) actually be made."). Notably, none of the cases cited by Walmart involve concerns about an upstream party's ability to satisfy a judgment. Golabs has already admitted that its current liabilities exceed its current assets and that it may go out of business, which makes the prospect of collecting damages from Golabs uncertain.[8] Keeping Walmart in the case increases the likelihood of a recovery because Walmart is financially stable

---

[8] *See* Golabs' Preliminary Injunction Br. at 8, [D.I. 102] ("Golabs's current liabilities exceeds its assets. This is a sign of financial distress, showing its viability is questionable . . . . The vast majority of its current liabilities are to its supplier (which is also its parent company)[.]").

Walmart may be liable for damages beyond any sales by Golabs in this case—for example, in connection with Walmart's willful infringement and for ancillary sales relating to the infringing products. As such, liability and damages may be different for Golabs and Walmart.

and well-capitalized.[9] Accordingly, severance would not "facilitate just, convenient, efficient, and less expensive determination" of this litigation. *See Cellular Commc'ns Equip.*, 2015 WL 11118110, at *9.

## IV.    CONCLUSION

For these reasons, the Court should deny Walmart's motion to sever and stay Plaintiffs' claims against Walmart and allow the case to proceed to trial in the interests of promoting judicial economy and reaching a full, fair, and final decision on the merits of this case.

---

[9] The non-patent cases cited by Walmart—i.e., *Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, No. 5:13-cv-05430 EJD, 2014 WL 2759571, at *5 (N.D. Cal. June 17, 2014) and *Nussbaum v. Diversified Consultants, Inc.*, No. 15-600, 2015 WL 5707147, at *2 (D.N.J. Sept. 28, 2015)—do not support its position that Golabs' ability to pay a judgment is not relevant to the analysis for severance and stay. *Bay Area Surgical* involves parallel state court and federal court proceedings where the federal court stayed the case in favor of the state court proceedings, reasoning that "[a] delay in compensation for past harms does not equate to a strong showing of prejudice." *See Bay Area Surgical Grp.*, 2014 WL 2759571, at *6. In contrast, Walmart seeks to sever Plaintiffs' claims against it, thereby preventing any potential recovery against Walmart in this case. *Nussbaum* likewise is inapposite because Walmart's contention that Plaintiffs would only suffer delayed judicial resolution misses the mark. Golabs' inability to satisfy a judgment would in effect curtail Plaintiffs' ability to collect from Walmart in the absence of a judgment against Walmart.

Dated:  August 4, 2020

Respectfully submitted,

*/s/ S. Wallace Dunwoody*
Michael C. Wilson
mwilson@munckwilson.com
Texas Bar No. 21704590
S. Wallace Dunwoody
wdunwoody@munckwilson.com
Texas Bar No. 24040838
Kelly P. Chen
kchen@munckwilson.com
Texas Bar No. 24062664
Jordan C. Strauss
Texas State Bar No. 24088480
jstrauss@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251
Telephone:  972-628-3600
Telecopier:  972-628-3616

**COUNSEL FOR PLAINTIFFS/
COUNTERDEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on counsel of record via the Court's electronic filing system on August 4, 2020.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody

850231