IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNICORN GLOBAL, INC., HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., AND SHENZEN UNI-SUN ELECTRONIC CO., LTD.,<br><br>*Plaintiffs*,<br><br>v.<br><br>GOLABS, INC., d/b/a GOTRAX, WALMART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC,<br><br>*Defendants*. | CIVIL ACTION NO. 3:19-CV-00754 |
| GOLABS, INC., d/b/a GOTRAX, WALMART INC., WAL-MART STORES TEXAS, LLC, AND WAL-MART.COM USA LLC,<br><br>*Counterclaimants*,<br><br>v.<br><br>UNICORN GLOBAL, INC., HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., AND SHENZEN UNI-SUN ELECTRONIC CO., LTD.,<br><br>*Counterdefendants*. | |

**WALMART'S REPLY BRIEF IN SUPPORT
OF ITS MOTION TO SEVER AND STAY**

**TABLE OF CONTENTS**

                                                                   **Page**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ..........................................................................................................1

      A. Contrary To Plaintiffs' Assertion, The Severance/Stay Standard Is Met ................1

           1. Severance/Stay Will Not Unduly Prejudice Nor Present Any
              Tactical Disadvantage To Plaintiffs ................................................................1

           2. Severance/Stay Will Simplify The Issues And Trial In This Case ..............3

           3. Severance/Stay Is Timely And Warranted Based On The
              Procedural Posture Of This Case ..................................................................4

      B. Severance/Stay Of The Claims Against Walmart Falls Squarely Within
         The Policy Concerns Underlying The Customer-Suit Exception ............................5

      C. Plaintiffs Fail To Distinguish The Controlling Case Authority ...............................6

III. CONCLUSION .......................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Altair Instruments, Inc. v. Telebrands Corp., DOES 1-10, and Walmart, Inc.*,
   No. 2:19-cv-08967-SJO-JC (C.D. Cal.) ..................................................................................7

*Anderson, Inc. v. Enviro Granulation, LLC*,
   2014 WL 12621217 (M.D. Fla. July 21, 2014) ......................................................................9

*Beck Sys., Inc. v. Marimba, Inc.*,
   2001 WL 1502338 (N.D. Ill. Nov. 20, 2001) .........................................................................4

*Caltech v. Broadcom Ltd.*,
   2019 WL 8807924 (C.D. Cal. Nov. 21, 2019) ....................................................................4, 9

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
   2012 WL 12898803 (C.D. Cal. Mar. 6, 2012) .....................................................................10

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
   2015 WL 11118110 (E.D. Tex. Mar. 27, 2015) .....................................................................9

*In re Dell Inc.*,
   600 F. App'x 728 (Fed. Cir. 2015) .........................................................................................7

*DSS Tech. Mgmt., Inc. v. Intel Corp.*,
   2015 WL 12806514 (E.D. Tex. Nov. 12, 2015) .....................................................................9

*Kahn v. General Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989) ..............................................................................................6

*Lifted Ltd., LLC v. Novelty Inc.*,
   2018 WL 10911498 (D. Col. Feb. 6, 2018) ...........................................................................2

*Mirror Worlds Techs. LLC v. Dell, Inc.*,
   2014 WL 11268268 (E.D. Tex. Sept. 29, 2014) .................................................................2, 9

*In re Nintendo of Am., Inc.*,
   756 F.3d 1363 (Fed. Cir. 2014) ......................................................................................6, 7, 8

*Richmond v. Forever Gifts, Inc. (Texas)*,
   2015 WL 11120883 (N.D. Tex. Mar. 18, 2015) .....................................................................8

*Richmond v. Lumisol Elec. Ltd.*,
   2014 U.S. Dist. LEXIS 59939 (D.N.J. April 30, 2014) ..........................................................7

*SAS Inst. Inc. v. World Programming Ltd.*,
  2019 WL 8331447 (E.D. Tex. Apr. 4, 2019) ................................................................. 6, 9, 10

*Ultravision Techs., LLC v. Lamar Advert. Co.*,
  2017 WL 823419 (E.D. Tex. Mar. 2, 2017) ....................................................................... 2, 9

*Wright v. E-Systems LLC*,
  2016 WL 7802996 (N.D. Tex. Dec. 20, 2016) ...................................................................... 2

**I.     INTRODUCTION**

Defendants Walmart hereby submit this Reply in support of their Motion to Sever and Stay. Plaintiffs, without basis, assert that the very policy considerations underlying the customer-suit exception that caution not to "unnecessarily multiply the litigation, waste judicial resources, and risk potentially conflicting decisions" mandate denial of Walmart's Motion. The opposite is true. Granting Walmart's Motion will: (1) streamline the litigation by narrowing this action to be between the real parties in dispute; (2) preserve judicial resources by focusing on the real parties and eliminate unnecessary and costly discovery and litigation with respect to Walmart; and (3) have no risk of potentially conflicting decisions because Walmart has agreed to be bound by this Court's final judgment or jury verdict on the relevant issues, and Plaintiffs will not be required to litigate twice. As set forth in more detail below, Walmart addresses each and every assertion in Plaintiffs' Response in Opposition to Walmart's Motion to Sever and Stay ("Resp.") (D.I. 160) and establishes that each and every such assertion is either not true, without basis, or not pertinent.

**II.    ARGUMENT**

    **A.     Contrary To Plaintiffs' Assertion, The Severance/Stay Standard Is Met**

Walmart should be severed/stayed because: (1) severance/stay will not unduly prejudice and present any tactical disadvantage to Plaintiffs; (2) severance/stay will simplify the issues for trial; and (3) discovery has just begun for Walmart and a trial date has not yet been set.

        **1.     Severance/Stay Will Not Unduly Prejudice Nor Present Any Tactical Disadvantage To Plaintiffs**

Contrary to Plaintiffs' assertion (Resp. at 3), Plaintiffs "will not need to separately try issues related to its infringement allegations against Walmart" because Walmart agrees to be bound by a final judgment or jury verdict on the issues of infringement, validity, and enforceability tried between Plaintiffs and Golabs, the real parties in dispute. Plaintiffs' reliance on their claim of

1

willful infringement against Walmart is a distinction without a difference. An award of enhanced damages for willful infringement is "reserved for egregious cases,"[1] unlike this case, and Walmart has agreed to be bound by the Court's decision on the issue of infringement. That decision is all that is necessary to determine Walmart's liability, and is a predicate for a determination of willful infringement. Plaintiffs have not cited (Resp. at 3-4) a single case that denied a motion to sever/stay on the grounds that a claim of willful infringement against a downstream customer will need to be adjudicated once the stay is lifted. Moreover, the cases cited by Plaintiffs are readily distinguishable because, unlike here, in each case the downstream retailer defendants involved distinct and non-overlapping claims of infringement and/or additional claims, and the downstream retailer defendants did not agree to be bound by the earlier judgment on the liability issues.[2]

Plaintiffs, without basis and support, assert (Resp. at 4) that a stay would impede their "ability to conduct meaningful discovery of relevant information from Walmart that is damaging to Golabs." As stated in Walmart's Brief (D.I. 154 at 7) and the Thornton Declaration (D.I. 154-1), Walmart has no information and witnesses relevant to the patent issues. Walmart is a downstream retailer who does not design, manufacture or import the Accused Products. Plaintiffs also argue (Resp. at 4) a stay would unfairly let Walmart "off the hook."[3] Nothing is further from

---

[1] *Wright v. E-Systems LLC*, 2016 WL 7802996, at *4 (N.D. Tex. Dec. 20, 2016).
[2] *See Ultravision Techs., LLC v. Lamar Advert. Co.*, 2017 WL 823419, *5 (E.D. Tex. Mar. 2, 2017) ("adjudication of Ultravision's patent infringement claims against LTI will not necessarily resolve Ultravision's varied claims against Irvin—which include false marking, false advertising, unfair competition, indirect infringement and induced infringement"); *Mirror Worlds Techs. LLC v. Dell, Inc.,* 2014 WL 11268268, at *3 (E.D. Tex. Sept. 29, 2014) ("If the stay is granted and Microsoft is found to indirectly infringe, the PC manufacturers may or may not also infringe directly or indirectly through the sale and configuration of accused products or inducement of infringing activity."); *Lifted Ltd., LLC v. Novelty Inc.*, 2018 WL 10911498, at *3 (D. Col. Feb. 6, 2018) (the retailer defendants did not agree to be bound by the liability of the manufacturers).
[3] Plaintiffs' argument that a stay would unfairly let Walmart "off the hook" pales in comparison to Plaintiffs' nefarious *quid pro quo* arrangement with Amazon letting Amazon "off the hook" by filing a motion to dismiss Amazon in exchange for the delisting of all Golabs hoverboard products.

2

the truth, as Walmart is not seeking a dismissal from this action, only severance/stay for the purposes of streamlining this lawsuit and preserving judicial resources.

Plaintiffs' concern (Resp. at 5) about not proceeding in this action against all defendants "so that they will be bound by any judgment," is unfounded, because again, Walmart has agreed to be bound by any liability judgment with respect to the asserted patents and Golabs's counterclaims. For this same reason, Plaintiffs' assertion (Resp. at 5) of a tactical disadvantage if the case is severed/stayed against Walmart because "it is harder to win a case if your opponent has seen your exact order of proof at trial and had extra time to prepare for it," is without basis.

### 2. Severance/Stay Will Simplify The Issues And Trial In This Case

Plaintiffs incorrectly assert (Resp. at 5) that '[t]his is not a case where a stay might result in certain issues disappearing altogether, particularly where there are non-overlapping claims distinctly asserted against Walmart." To the contrary, the only allegation of infringement asserted against Walmart is that it is "selling and offering to sell [Golabs's] Accused Products in the United States, including in Texas and in this District, without authorization." Amended Complaint (D.I. 12) ¶28. This allegation entirely overlaps with Plaintiffs' allegations of infringement against Golabs. Thus, a favorable liability adjudication with respect to the asserted patents for Golabs, will completely exonerate Walmart and provide no reason to proceed with the remaining accounting of damages and alleged willful infringement claim against Walmart.

Plaintiffs' assertion (Resp. at 5) that "a stay will introduce additional issues, add greater complexity, and result in two trials," and force Plaintiffs to "have to conduct" third part discovery of Walmart, increasing "transactional costs" and "the potential for inconsistent rulings,"[4] is not true. Severance/stay will not introduce additional issues, add greater complexity, result in third

---

[4] Later in their Response, Plaintiffs take the opposite position: "there is no danger that two courts will come to inconsistent conclusions about the infringement of Plaintiffs' patents." Resp. at 8.

party discovery of Walmart, or result in two trials with the potential for inconsistent rulings. If a stay is lifted and there is a need to proceed further against Walmart, Walmart has agreed to be bound by any judgment and to cooperate in an accounting of damages and discovery on the issue of willful infringement. There will be no additional cost, complexity or potential for inconsistent rulings. The cases cited by Plaintiffs (Resp. at 5-6) are inapposite.[5]

### 3. Severance/Stay Is Timely And Warranted Based On The Procedural Posture Of This Case

Plaintiffs assert (Resp. at 2, 6) that the procedural posture of this case does not warrant a stay, because "substantial discovery has been completed," the Court has construed the patents, and Golabs has filed a motion for summary judgment of non-infringement since commencement of this case about 14 months ago. However, this all involved the real parties in dispute, Plaintiffs and Golabs, and in particular, Golabs's motion for preliminary injunction requesting the relisting of its products on Amazon.com, which is not related at all to Walmart. Moreover, contrary to Plaintiffs' assertion (Resp. at 7), Walmart's "active participation" in discovery in this case only began on June 12 with its first document production, damages discovery has only recently begun, and the parties are awaiting the Court's Scheduling Order setting deadlines for remaining fact and expert discovery and a trial date. Walmart promptly sought severance/stay after its first document production, when Walmart attempted to reach a stipulation with Plaintiffs regarding severance/stay. When that failed, Walmart promptly apprised the Court that it planned on filing a Motion to Sever and Stay in the Joint Status and Scheduling Report (D.I. 146) filed on June 29,

---

[5] *Beck Sys., Inc. v. Marimba, Inc.*, 2001 WL 1502338, at *3 (N.D. Ill. Nov. 20, 2001) (applied the old law pre-*Nintendo* (*infra* at 6-7) that the customer-suit exception "only applies when the second filed action [against the true defendant] would dispose of all claims in the first action [against the peripheral downstream retailers]"; *Caltech v. Broadcom Ltd.*, 2019 WL 8807924, at *10 (C.D. Cal. Nov. 21, 2019) ("only very late in the game" was the request for severance and stay made and the Court did not want to risk "the possibility of two trials on the subject matter.")

and filed its Motion on July 14. Thus, this case is unlike the cases cited by Plaintiffs (Resp. at 6-7) where a party requested severance/stay substantially after actively participating in discovery.

### B. Severance/Stay Of The Claims Against Walmart Falls Squarely Within The Policy Concerns Underlying The Customer-Suit Exception

Plaintiffs assert (Resp. at 7-8) that Zhejiang Taotao ("Zhejiang"), the manufacturer of the Accused Products, is the "true defendant" and complain that Zhejiang "is not a party to this lawsuit and has not intervened or appeared in this action." However, Plaintiffs fail to mention that Zhejiang is the parent of Golabs, the importer, supplier, marketer, and seller of the Accused Products, and that Plaintiffs have been informed that Golabs has produced and will continue to produce all relevant documents in the possession, custody and control of Zhejiang. *See* Walmart's Reply Appendix at DApp 1-2 (Jan. 2, 2020 correspondence). Golabs is the true defendant here.

Plaintiffs further mischaracterize Zhejiang as forcing Plaintiffs to seek assistance under the Hague Convention to obtain discovery for use in this case. As Plaintiffs are also aware, the discovery they seek under the Hague Convention is from third party source code supplier Jinhua Weili Technology Co. Ltd. ("Weili"), who required a formal discovery request under the Hague Convention. Moreover, the source code discovery Plaintiffs seek from Weili relates to information, if any, shared between the two controllers in certain Accused Products, which is not relevant to any issue in Golabs's Motion for summary judgment of noninfringement. *See* Golabs's Resp. in Opposition to Plaintiffs' Rule 56(d) Motion to Defer Judgment (D.I. 161).

With that aside, Plaintiffs misinform (Resp. at 8) the Court that the law of the customer-suit exception should not permit a stay and separate litigation against a downstream customer when it has been sued in the same litigation as the true defendant manufacturer or supplier, and that the customer-suit exception is "predominantly a choice-of-forum doctrine for deciding whether to enjoin a second proceeding in another jurisdiction." As pointed out in Walmart's Brief (D.I. 154)

5

at 6-8, the customer-suit exception first "arose in cases in which a patentee filed an action against the retailers of an accused product, after the manufacturer of the product filed a declaratory judgment action against the patentee in a different forum." More recently, the Federal Circuit in *In re Nintendo of Am., Inc.*, 756 F.3d 1363 (Fed. Cir. 2014) extended this doctrine to sever and stay the same case against mere peripheral, downstream customers so that the case proceeds against only the true defendant manufacturer or supplier. The customer-suit exception has been continually applied to cases, such as here, where the true defendant's liability is predicate to recovery from any of the downstream customer defendants, and thus, for purposes of judicial economy and efficiency, the cases are severed and stayed with respect to such downstream, peripheral customers pending the outcome of the litigation between the real parties in dispute.

Contrary to Plaintiffs' assertion (Resp. at 9), "the determination of Golabs's liability will [] entirely determine Walmart's liability," as Walmart agrees to be bound by the Court's decisions. Enhanced damages based on a finding of willful infringement is predicate upon a finding of infringement. Plaintiffs have not cited a single case that held sever/stay was inappropriate because the issue of willful infringement of a downstream customer remained.[6]

### C. Plaintiffs Fail To Distinguish The Controlling Case Authority

Plaintiffs mischaracterize Walmart's cited cases. Contrary to Plaintiffs' assertion (Resp. at 9), the primary reason for severing/staying the downstream defendants in *Nintendo* was because "Nintendo's liability is predicate to recovery from any of the defendants" (*id.* at 1366), and not to alleviate Nintendo's burden "to litigate in a forum several thousand miles from its home." Plaintiffs argue (Resp. at 10) that "*Nintendo* does not mandate an automatic stay or severance

---

[6] Both *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) and *SAS Inst. Inc. v. World Programming Ltd.*, 2019 WL 8331447, at *2 (E.D. Tex. Apr. 4, 2019) cited by Plaintiffs (Resp. at 9), denied sever/stay because of differences in the infringement issues between the manufacturer and non-manufacturer defendants, not because of the issue of willful infringement.

6

against a customer in the very same litigation as the manufacturer where there are no grounds for a separate litigation against the customer." However, in *Nintendo*, the Federal Circuit severed the true defendant manufacturer, Nintendo, in a combined manufacturer-retailer patent infringement suit, transferred the manufacturer to its home district, and stayed the remaining retailer defendants pending outcome of the manufacturer suit. *Nintendo*, 756 F.3d at 1365-66. The Court held: "[s]ince Nintendo's liability is predicate to recovery from any of the defendants, the case against Nintendo must proceed first, ***in any forum***." *Id.* at 1366 (emphasis added).[7]

As discussed in Walmart's Brief (D.I. 154) at 7-9, district courts have followed *Nintendo* and severed/stayed cases against peripheral, downstream customers, so as to allow the same case against the true defendant manufacturer or supplier to proceed. Plaintiffs attempt (Resp. at 10-11) to distinguish these cases, discussed below, is without support. Plaintiffs even go so far as to misstate (Resp. at 12-13) their pleaded infringement allegations against Walmart as beyond "merely reselling the products" in a strained attempt to characterize Walmart as more than just a peripheral, downstream customer warranting sever/stay.

Plaintiffs attempt to distinguish *Altair Instruments, Inc. v. Telebrands Corp., DOES 1-10, and Walmart, Inc.*, No. 2:19-cv-08967-SJO-JC (C.D. Cal.) by only arguing (Resp. at 10-11) that "the case is in the early stages where the customer defendant had not yet participated in the discovery process." However, as discussed *supra* at 4, Walmart is similarly situated in this case, having only participated in limited discovery. Plaintiffs also have no rebuttal to *Richmond v. Lumisol Elec. Ltd.*, 2014 U.S. Dist. LEXIS 59939 (D.N.J. April 30, 2014), agreeing (Resp. at 11)

---

[7] *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015), cited by Plaintiffs (Resp. at 10), is not pertinent, because "Petitioners did not ask to sever the claims against" downstream customer Microsoft. The Federal Circuit also did not reach the issue of whether "the complexity of the case could … be simplified by a stay of some aspects of the proceedings while others go forward."

7

that "the court there was persuaded by the 'peripheral nature' of the claims against the retailer defendants." Plaintiffs' infringement allegations against Walmart are similarly peripheral to the same allegations against Golabs, because Walmart merely resells the Accused Products. Plaintiffs fail to even mention *Richmond v. Forever Gifts, Inc. (Texas)*, 2015 WL 11120883, at *2 (N.D. Tex. Mar. 18, 2015), cited by Walmart in its Brief (D.I. 154) at 9, where Honorable Judge Kinkeade applied the customer-suit exception, and severed/stayed the case against "downstream defendant" Walgreens "based on fairness, judicial economy and efficiency."[8]

Notwithstanding the foregoing, Plaintiffs assert (11-12) that their claims of infringement, including willful infringement, are "predicated *only* on Walmart's conduct" (emphasis in original). However, Plaintiffs, once again, fail to mention that Walmart has agreed to be bound by the Court's decision. That decision is all that is necessary to determine Walmart's liability, and is a predicate for a determination of willful infringement. Walmart has also agreed to be bound by the Courts' decision regarding the counterclaims asserted by Golabs, and thus, contrary to Plaintiffs' assertion (Resp. at 12), severance/stay will not impede resolution of these issues as to Walmart.

Plaintiffs also mischaracterize (Resp. at 12-13) their infringement allegations against Walmart as extending beyond "merely reselling" the Accused Products. Plaintiffs contend, without basis, that "Walmart bundles the accused products with add-on services, such as its own protection plans" and "Walmart plays a critical role in bringing the infringing products to market."

---

[8] Judge Kinkeade severed/stayed the case against Walgreens, because, as in this case: (1) the "upstream defendant" and designer and manufacturer was the real party in interest and agreed to defend and indemnify Walgreens; (2) Walgreens "had no involvement in and no essential knowledge about the alleged infringement, which begins at the design and manufacture phases"; and (3) Walgreens could only be liable if the upstream defendant were found to infringe. Contrary to *Nintendo* and Judge Kinkeade's decision in *Richmond v. Forever Gifts*, Plaintiffs incorrectly assert (Resp. at 13) that the Federal Circuit has not extended the customer-suit exception to peripheral retail defendants and courts have only done so "where a party seeks to *transfer* to a more convenient forum" (emphasis in original).

8

However, Plaintiffs do not explain, let alone provide any proof, of these purported infringing activities. Nor did Plaintiffs plead any infringing activities by Walmart beyond reselling Golabs's accused hoverboard products or refer to any such activities in their infringement contentions. *See* D.I. 12 (Amended Complaint); D.I. 139-25 (Plaintiffs' Infringement Contentions).

The only cases cited by Plaintiffs (Resp. at 12 n.6, 13-14) where severance and stay were denied involve circumstances, unlike in this case, where the downstream retailers are involved in accused infringing activities beyond those of the upstream defendant and a second trial would involve substantially different issues.[9] Plaintiffs also assert (Resp. at 14) that because Zhejiang is located outside the United States and has not intervened in this action, this somehow weighs against a stay. Notwithstanding that Golabs's parent has cooperated in discovery, the *DSS* and *SAS* cases cited by Plaintiffs (Resp. at 14) do not support Plaintiffs' position.[10]

---

[9] *See DSS Tech. Mgmt., Inc. v. Intel Corp.*, 2015 WL 12806514, *4 (E.D. Tex. Nov. 12, 2015) ("severance and stay of Intel's customers would still leave substantial issues to determine in a second trial"); *Mirror Worlds*, 2014 WL 11268268 at *3 (*supra* at 2 n.2); *Caltech*, 2019 WL 8807924 at *10 (*supra* at 4 n.5); *Ultravision*, 2017 WL 823419 at *3-5 (*supra* at 2 n.2); *Cellular Commc'ns Equip. LLC v. HTC Corp.*, 2015 WL 11118110, at *7-8 (E.D. Tex. Mar. 27, 2015) (the Carrier-Retailers did not agree to be bound by the rulings in the action against the manufacturers and were not mere sellers because they "subsidize and bundle the accused products with cellular service plans" and have a "collaborative relationship" with the Manufacturers involving the patented technology); *Anderson, Inc. v. Enviro Granulation, LLC*, 2014 WL 12621217, at *1 (M.D. Fla. July 21, 2014) (Harrell's, a customer-retailer, "is a direct infringer with an active role in the events at issue" and discovery from Harrell's is relevant to other issues); *SAS*, 2019 WL 8331447 at *2 ("the customer-suit exception does not apply … when – as here – the manufacturer and non-manufacturer defendants are respectively accused of indirect and direct infringement of a method patent …. SAS alleges that their use of the WPS system itself infringes ….")

[10] *See DSS*, 2015 WL 12806514 at *2-3 (Contrary to Plaintiffs' assertion, the court held that the downstream customer claims were not peripheral because upstream manufacturer Intel would not stipulate to liability for imported products containing Intel chips manufactured abroad.); *SAS*, 2019 WL 8331447 at *2 (Contrary to Plaintiffs' assertion, the court held the reseller and customer defendant claims are not peripheral because they are not identical to the manufacturer claims.)

9

Finally, Plaintiffs' reliance (Resp. at 15) on Golabs's financial position and ability to satisfy a judgment is not pertinent to Walmart's Motion to Sever and Stay.[11] *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 2012 WL 12898803, at *2 (C.D. Cal. Mar. 6, 2012) relied on by Plaintiffs applied the old law pre-*Nintendo* that the customer-suit exception only applies when there is a "first-filed suit in one district is against customers" followed by "a subsequent suit in another district .. against the manufacturer." The second case relied on by Plaintiffs, *SAS*, 2019 WL 8331447 at *4, denied sever and stay because of differences in the infringement issues to be adjudicated against the manufacturer and customer defendants, not because of the financial position of the manufacturer.

Plaintiffs incorrectly state (Resp. at 15, 16 n.9), without basis or support, that: "[k]eeping Walmart in the case increases the likelihood of a recovery;" "Walmart seeks to sever Plaintiffs' claims against it, thereby preventing any potential recovery against Walmart in this case;" and "Golabs' inability to satisfy a judgment would in effect curtail Plaintiffs' ability to collect from Walmart in the absence of a judgment against Walmart." First, Walmart is not seeking dismissal, but rather, only a sever/stay, so Walmart will remain in the case. Second, severance/stay does not prevent potential recovery against Walmart. Third, Golabs's purported inability to satisfy a judgment would not curtail Plaintiffs' ability to obtain a judgment against Walmart and Walmart satisfying that judgment. As addressed in Walmart's Brief (D.I. 154 at 4, 8), and acknowledged by Plaintiffs (Resp. at 16 n.9), any delay in Walmart's satisfying a judgment does not rise to the level of prejudice to justify denial of a sever/stay.

## III. CONCLUSION

For all the foregoing reasons, Walmart's Motion to Sever and Stay should be granted.

---

[11] Plaintiffs rely (Resp. at 15, n.8) on statements made in Golabs' Preliminary Injunction Brief at 8 (D.I.103) dated October 4, 2019, following the Amazon.com delisting. Golabs has since increased its sales of hoverboards through Walmart and its financial position has improved.

10

Dated:  August 18, 2020 **RESPECTFULLY SUBMITTED**,

By:  */s/ Tony Pezzano*
**Tony Pezzano**
New York Bar No. 2315547
*Admitted Pro Hac Vice*
tony.pezzano@us.dlapiper.com
**Michael Dougherty**
New York Bar No. 2079945
*Admitted Pro Hac Vice*
michael.dougherty@us.dlapiper.com
**Joel C. Lin**
joel.lin@us.dlapiper.com
New York Bar No. 2079945
*Pro Hac Vice Application Forthcoming*
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
(Tel) 212-335-4500
(Fax) 212-335-4501

**C. Michael Moore**
mike.moore@us.dlapiper.com
Texas Bar No. 14323600
**Marina Stefanova**
marina.stefanova@us.dlapiper.com
Texas Bar No. 24093200
**DLA PIPER LLP (US)**
1900 N. Pearl Street
Dallas, TX 75201
(Tel) 214-743-4500
(Fax) 214-743-4545

**William Chu**
SBOT:  04241000
wmchulaw@aol.com
**William Knisley**
SBOT:  24095728
knisley.wmchulaw@gmail.com
**LAW OFFICES OF WILLIAM CHU**
4455 LBJ Freeway, Suite. 1008
Dallas Texas, 75244
(Tel) 972-392-9888
(Fax) 972-392-9889

11

**ATTORNEYS FOR
DEFENDANTS/COUNTERCLAIM
PLAINTIFFS**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record on August 18, 2020 via the Court's ECF system, pursuant to the Federal Rules of Civil Procedure.

                                            */s/ Tony Pezzano*
                                            Tony Pezzano